# EXHIBIT

# 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | 1:03-CV-1513-SEB-VSS |
| vs. | ) ) ) | |
| JOHN L. MONTANA, JR., MELVIN R. LYTTLE, PAUL E. KNIGHT, VIOLET GAIL ELDRIDGE, WORLDWIDE T&P, INC., FIRST NATIONAL EQUITY, LLC, P.K. TRUST & HOLDING, INC., and UTA-BVI, LTD., | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| THE UNITED TRIBES OF THE AMERICAS, INC. and EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC., | ) ) ) ) ) | |
| Relief Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS UTA-BVI, LTD. AND VIOLET GAIL ELDRIDGE AND RELIEF DEFENDANTS UNITED TRIBES OF THE AMERICAS, INC. AND EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.'S MOTION TO DISMISS**

This matter comes before the Court on the Motion to Dismiss filed by Defendants UTA-BVI, LTD. ("UTA-BVI") and Violet Gail Eldridge ("Eldridge") and Relief

Defendants, the United Tribes of the Americas, Inc. ("United Tribes"), as well as Executive Bureau of Research and Recovery, Inc.'s ("Executive Bureau") (collectively the "Moving Defendants") directed towards Plaintiff United States Securities and Exchange Commission's (the "SEC") claims alleging that the Moving Defendants violated the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. § 80b-1 et seq. In two counts, the SEC claims that UTA-BVI, with the assistance of Eldridge, knowingly, willingly or recklessly defrauded its clients, in violation of the Advisers Act. The Moving Defendants moved to dismiss these claims under Rules 12(b)(1), (2), (3), and (6), F.R.Civ. P., for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and for failure to state a claim. For the reasons explained below, we agree venue is improper and to that extent <u>GRANT</u> Moving Defendants' Motion to Dismiss.

BACKGROUND

On October 14, 2003, the SEC filed an action against four individuals and four entities for their involvement in various schemes relating to the fraudulent sale of approximately $30 million in investment contract securities to approximately 29 investors in several states. The Complaint alleges that from August 1999 until April 2000, Defendants John L. Montana, Jr. ("Montana"), Melvin R. Lyttle ("Lyttle"), and Paul E. Knight ("Knight") sold interests in a bank trading program which purported to invest money in the trading of various instruments including medium term notes (the "Trading Program"). Montana, Lyttle and Knight raised funds for the Trading Program through the

entities that they controlled: Lyttle's First National Equity, LLC ("First National Equity"), Knight's P.K. Trust & Holding, Inc. ("P.K. Trust") and Montana's Worldwide T&P, Inc. ("Worldwide T&P"). The SEC contends that Montana, Lyttle and Knight told investors that they could earn significant returns risk-free through the Trading Program. Approximately $24 million of the investor funds raised by Montana, Lyttle and Knight were transferred to UTA-BVI, a British Virgin Islands corporation.

The SEC asserts that, in turn, UTA-BVI and Eldridge ("Eldridge"), President of UTA-BVI, defrauded First National Equity and P.K. Trust. The alleged fraud was perpetrated through "trust management agreements," whereby UTA-BVI agreed to serve as trustee over the $24 million in investor funds transferred to it from First National Equity and P.K. Trust. Under the trust agreements, UTA-BVI was to receive compensation for services rendered plus a 0.50% participation fee in the profits generated from the trust property. Additionally, the trust agreements identified First National Equity and P.K. Trust as beneficiaries of the trust and provided that UTA-BVI would manage the trust funds for the benefit of the beneficiaries. The SEC asserts that the only investment instruction provided by the trust agreements was that UTA-BVI was to either hold uninvested trust property or invest trust property in any manner deemed in the best interest of the trust.[1]

---

[1] The trust agreements did not include provisions discussing, for example, a return on investor funds, the security of investor funds or any of the assurances that Montana, Lyttle and Knight had given to investors.

The SEC contends that UTA-BVI used its discretionary authority under the trust agreements to distribute the $24 million in investor funds among several UTA-BVI brokerage accounts controlled by Eldridge and gave sole trading authority to a broker who used the funds to engage in highly leveraged stock trading in margin accounts. The Complaint alleges that instead of managing the funds for the benefit of First National Equity and P.K. Trust, UTA-BVI used the trust funds to pay Eldridge's personal expenses and transferred funds to several bank accounts including ones she controlled in the name of the Relief Defendants, United Tribes and Executive Bureau, who the SEC asserts had no right to receive these funds.

## Legal Analysis

A.  *Subject Matter Jurisdiction.*

Moving Defendants seek to dismiss this action with respect to themselves only. Before we consider the issues of personal jurisdiction and venue, we address the Moving Defendants' challenge to this court's subject matter jurisdiction. Cook v. Winfrey, 141 F.3d 322, 324 (7th Cir.1998) (finding that "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action"). The Moving Defendants argue that this court lacks subject matter jurisdiction because the SEC has failed to allege sufficient facts to constitute a violation of the Advisers Act.

In ruling on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), we accept as true all material allegations of the complaint and draw all reasonable inferences

4

in the plaintiff's favor. <u>Retired Chicago Police Assoc. v. City of Chicago</u>, 76 F.3d 856, 862 (7th Cir. 1996). The plaintiff, here the SEC, bears the burden of establishing that it meets the required elements of standing. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). The Advisers Act confers jurisdiction on the district courts of the United States to resolve "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this subchapter or the rules, regulations, or orders thereunder." 15 U.S.C. § 80b-14. To determine subject matter jurisdiction, therefore, we examine the Complaint to determine whether it has adequately pled a violation of the Advisers Act; in this case we conclude it has.

Moving Defendants assertion that the Advisers Act does not apply to them as trustees is unavailing. We agree with the reasoning of the Second Circuit in <u>Abrahamson v. Fleschner</u> that "the SEC Report, together with the House and Senate Reports, make it clear that [in the Advisers Act] Congress intended to reach persons who receive compensation for investing funds of their clients. 568 F.2d 862, 871 (2d Cir. 1977).[2] The allegations in the Complaint indicate that the trust arrangement between UTA-BVI and National Equity Trust and P.K. Trust was established to allow UTA-BVI to manage and invest the funds of National Equity Trust and P.K. Trust and that UTA-BVI would receive compensation for performing this service. Consequently, this relationship falls

---

[2] The Second Circuit found that several provisions of the Advisers Act "reflect the fact that many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds." <u>Id.</u>

5

within the type of arrangements that Congress intended to conclude under the Advisers Act. See Id. The Complaint also alleges that by diverting funds from the trust for personal use, UTA-BVI/Eldridge violated their duty to manage the trust funds for the benefit of First National Equity and P.K. Trust, thus committing fraud under the Advisers Act.[3] Accordingly, we find that the Complaint adequately pleads violations of the Advisers Act with respect to UTA-BVI and Eldridge, effectively establishing our subject matter jurisdiction over this dispute.

B.   *Venue.*

We next address whether the Southern District of Indiana constitutes a proper judicial venue in which the SEC can bring charges under the Advisers Act against UTA-BVI and Eldridge. To determine proper venue, we first look to the language of the Advisers Act, which provides that a civil suit "may be brought [in the district wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is an inhabitant or transacts business." 15 U.S.C. § 80b-14.[4]

As there are no allegations that Moving Defendants either inhabit or transact

---

[3] We also find that the facts alleged in the Complaint, if true, indicate UTA-BVI and Eldridge acted knowingly and with scienter.

[4] The Advisers Act venue provision is nearly identical to the venue provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a-43, and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and the meaning of the phrase, "wherein any act or transaction constituting the violation occurred" has been construed to be the same in all the Acts. Abramson v. INA Capital Management Corp., 459 F. Supp. 917, 919 n.2 (E.D.N.Y. 1978) (Citing Zorn v. Anderson, 263 F.Supp. 745, 747 (S.D.N.Y. 1966)). Accordingly, we look for guidance in the cases interpreting this same language in the Securities Exchange Act. Id.

business in the Southern District of Indiana, venue in this district is proper only if "an act or transaction constituting the violation occurred" in this district. Under the Advisers Act, all that is necessary to confer venue on a district court is one act or transaction "within the district which represents more than an immaterial part of the allegedly illegal events." Securities and Exchange Commission v. Diversified Industries, Inc., 465 F.Supp. 104, 111 (D.D.C. 1979) (citing Securities and Exchange Commission v. National Student Mktg. Corp., 360 F.Supp. 284, 293 (D.D.C.1973)). Proper venue can also be established through the acts of co-conspirators such that "any allegation of a securities act violation is sufficient for venue purposes even as to a defendant who did not commit an act within the district if that defendant is *in league* with a defendant who did act within the district." Levin v. Great Western Sugar Co., 274 F.Supp. 974, 978 (D.N.J. 1967) (emphasis added) (citing Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey, 226 F.Supp. 972 (S.D.N.Y. 1964); Clapp v. Stearns & Co., 229 F.Supp. 305 (S.D.N.Y. 1964); Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del.1962)); see also Securities and Exchange Commission v. Wallace, 94 F.Supp.2d 1, 2 (D.D.C. 2000) (affirming that "any material act committed by one defendant . . . in furtherance of a multi-defendant fraudulent scheme satisfies venue under the Securities Exchange Act of 1934 as to all defendants whether or not the other defendants ever committed a violation in the district").

Since the Complaint omits any allegation of an act committed within the Southern District of Indiana which was a material part of the scheme by UTA-BVI /Eldridge to

defraud First National Equity and P.K. Trust, the only basis on which this district constitutes proper venue with respect to the Moving Defendants is through the co-conspirator theory. The SEC argues that venue is proper because defendant Lyttle resides in the Southern District[5] and, through the co-conspirator theory, acts committed by Lyttle can establish venue with respect to the Moving Defendants. The Moving Defendants argue that the Complaint does not indicate that UTA-BVI/Eldridge were ever "in league" with any of the other defendants, including Lyttle, and therefore on the face of the pleading the co-conspirator theory is not applicable in this case. We agree with the Moving Defendants' analysis.

The Complaint reveals that, between and among the separate groups of defendants, there was no overarching scheme to defraud investors; instead, the Complaint alleges that there were two distinct fraudulent schemes. The first scheme involves efforts by Montana, Lyttle, and Knight, through their respective companies,[6] to defraud investors. The second scheme implicates UTA-BVI and Eldridge in defrauding First National Equity and P.K. Trust. The Complaint contains no allegations that the Moving Defendants conspired or were "in league" with the other defendants with respect to either scheme; indeed, it appears that the defendants from the first fraudulent scheme were, in

---

[5] Also, Lyttle's company, First National Equity, is an Indiana corporation.

[6] Montana's Worldwide T&P, Lyttle's First National Equity, and Knight's P.K. Trust.

turn, defrauded by the Moving Defendants in the second scheme.[7] Indeed, the Complaint acknowledges that the two schemes were separate and only related to each other through the tenuous connection of the funds that were allegedly embezzled during each scheme having been taken from the same investors.[8] The link between these two schemes, as argued by the SEC – that the common thread is the investors' funds – is even more attenuated in light of the fact that the investors, themselves, were not the victims of the second scheme.[9] Under these facts, we conclude there is no basis for applying the co-conspirator theory to establish venue over the Moving Defendants. We conclude that the Complaint contains no allegations of acts or transactions taking place in the Southern District of Indiana which constitute a material part of the purported scheme by UTA-BVI/Eldridge to defraud First National Equity and P.K. Trust and, therefore, proper venue over the claims against the Moving Defendants does not lie here.

Conclusion

---

[7] The SEC, paradoxically, appears to the argue that the Moving Defendants were "in league" with the other defendants, essentially claiming that Lyttle/First National Equity Trust conspired with the Moving Defendants to defraud First National Equity. See Pl.'s Surreply Brief at 4. This novel argument turns the concept of fraud on its head. See United States v. Bates, 96 F.3d 964, 969 (7th Cir. 1996) (explaining that to "act with the intent to defraud means to act with an intent to deceive or cheat someone, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to oneself") (citation omitted).

[8] The Complaint explains: "The two phases of this scheme were united through the use of investor funds. Most of the investor funds solicited by Montana, Lyttle, and Knight ended up at brokerage accounts in the name of UTA-BVI and controlled by Eldridge." Compl. ¶ 29.

[9] The Complaint makes clear that under the trust agreement between UTA-BVI and First National Equity/P.K. Trust the funds that UTA-BVI and Eldridge allegedly mismanaged were "owned by First National Equity and P.K. Trust and not by the investors who had provided the funds to First National Equity and P.K. Trust for investment." Compl. ¶ 46.

Because the Southern District of Indiana is not a proper venue to resolve the claims against the Moving Defendants, we <u>GRANT</u> the Moving Defendants' Motion to Dismiss without prejudice.[10]

Date: 02/15/2005

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:

John E. Birkenheier
SECURITIES AND EXCHANGE
COMMISSION
birkenheierj@sec.gov

Steven Lee Klawans
US SECURITIES & EXCHANGE
COMMISSION
klawanss@sec.gov

Boris Parad
PARAD LAW OFFICES P.C.
goto@paradfirm.com

Jason Yonan
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
yonanj@sec.gov

PAUL E. KNIGHT
917 Palmer Court
Kodak, TN 37764

MELVIN R. LYTTLE
FIRST NATIONAL EQUITY, LLC
502 Fifth Street
P.O. Box 007
Aurora, IN 47001-0007

PAUL E. KNIGHT
917 Palmer Court
Kodak, TN 37764

---

[10] Because we grant the Motion to Dismiss on the basis of improper venue, we decline to address the other grounds for dismissal raised by the Moving Defendants.