Exhibit B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | CIVIL ACTION |
| v. | : | FILE NO. |
| | : | 1:03-CV-1513SEB-VSS |
| **JOHN L. MONTANA, JR.,** | : | |
| **MELVIN R. LYTTLE,** | : | |
| **PAUL E. KNIGHT,** | : | |
| **VIOLET GAIL ELDRIDGE,** | : | |
| **WORLDWIDE T&P, INC.,** | : | |
| **FIRST NATIONAL EQUITY, LLC,** | : | |
| **P.K. TRUST & HOLDING, INC., and** | : | |
| **UTA-BVI, LTD.,** | : | |
| | : | |
| **Defendants,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **THE UNITED TRIBES OF THE AMERICAS, INC. and EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.,** | : | |
| | : | |
| **Relief Defendants.** | : | |

## MOTION TO DISMISS

Defendants, Violet Gail Eldridge, UTA-BVI, Ltd., and Relief Defendants, the United Tribes of the Americas, Inc., and Executive Bureau of Research and Recovery, for these defendants only, and separately from the remaining defendants named herein, by their undersigned attorney, and pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure, move the court:

1

## Failure to State a Claim

### I

To dismiss the compliant as to the moving defendants on the ground that it fails to state a claim against these defendants upon which relief can be granted. The Complaint is insufficient on its face because the proposed violations of the above-referenced defendants are presented as conclusions of law and are not arrived at by any process of natural reasoning from alleged facts or combination of facts, but by the application of the artificial rules of law to the facts pleaded.

### Jurisdiction and Venue

### II

To dismiss the complaint or in the alternative to quash the return of service of summons upon these defendant, on the ground that the court is without jurisdiction over the moving defendants.

a.

Plaintiff has failed to allege any acts, practices and courses of business constituting the violations alleged to have been committed by the Defendants making this motion.

b.

No facts have been alleged in the complaint that the Defendants making this motion are domiciled within the Southern District of Indiana.

c.

No alleged facts in the complaint support the conclusion of law made in the complaint, to attempt to circumvent venue and jurisdictional requirements, that the defendants making this motion have had any transactions, acts, practices or courses of business in the Southern District of

2

Indiana. Venue is laid in the wrong district in that the moving Defendants did not participate in any transaction whose nexus was located in the Southern District of Indiana, as more particularly appears from the affidavit of Violet Gail Eldridge, attached as Exhibit A

### III

To dismiss the complaint as to these defendants on the ground that the court is without jurisdiction over the subject matter of the complaint in that:

### a.

The matter in controversy herein, as shown by the allegations of the complaint with respect to the moving defendants, does not arise under the Constitution or any law or treaty of the United States.

### b.

The matters set forth and alleged in the complaint are insufficient to confer jurisdiction of the court over the subject matter under the provisions of Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(e) and 27 of the Exchange Act [15 U.S.C. § 78u(e), 78aa] and Sections 209(d), 209(e)(1) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1), 80b-14] , and

### c.

The allegations of the complaint, on their face, attempt to circumvent jurisdictional requirements of this court to bring the matter under the provisions of the above cited statutes, and are insufficient to confer such jurisdiction

**Exhibit B**

This motion is made and based on the records and files of this action and on the attached affidavit of Violet Gail Eldridge, defendant herein.  A memorandum of points and authorities in support of this motion and each ground thereof is hereto attached.

<u>Certification of Service</u>

The undersigned certifies that a copy of this motion and exhibits and brief and motion for appearance were delivered  to US Mail Service addressed to plaintiff at U.S. Securities and Exchange Commission, Steven L. Klawans, Esq., 175 W. Jackson Blvd., Suite 900, Chicago, Illinois 60604

Katherine Crase, Attorney at Law
Florida Bar No. 881510
Appearing Pro Hac Vice
2804 Aquilla Street
Tampa, Florida 33629
813.251.2684
fax 813.251.2688

4

**Exhibit B**

## Affidavit

I, Violet Gail Eldridge, being of sound mind and body and over the age of 18 do hereby swear to the following statements under penalty of perjury:

1. I am the President of UTA-BVI, Ltd, a corporation organized under the laws of the British Virgin Islands

2. To the best of my knowledge, UTA-BVI, Ltd., does not now have, nor has it ever had or maintained a place of business within the State of Indiana.

3. To the best of my knowledge, UTA-BVI, Ltd has never done business within the State of Indiana, either permanently or temporarily.

4. The acts, practices and courses of business of UTA-BVI and Violet Gail Eldridge alleged within the complaint did not occur within the State of Indiana. Specifically, the Trust Agreements were drafted and signed by all parties in New Jersey. Activities of UTA-BVI, as trustee were in New York or New Jersey, and trustee brokerage accounts were in New York.

5. I am not a resident of Indiana, and have not visited the State of Indiana for several years, and have not conducted any act, practices and courses of business in Indiana.

Signed and attested by:

*Violet G Eldridge*
Violet Gail Eldridge

```
LEAH M. FLORES
Commission # DD011108
Expires 4/22/2006
Bonded through
(800-432-4254)   Florida Notary Assn., Inc.
```

I, _LEAH M FLORES_, am a notary public in the State of Florida. Violet Gail Eldridge appeared before me, showing a drivers licence as proof of identity, and signed this affidavit in my presence.

*Leah M Flores*
Signature

Memorandum of Points and Authorities
In Support of Motion to Dismiss

### Jurisdiction

Plaintiff fails to allege facts that either Ms. Eldridge or UTA-BVI, Ltd acted as an "Investment Adviser" within the meaning of the Act, and therefore cannot claim jurisdiction over Ms. Eldridge, UTA-BVI, or relief defendants based on appearance of violation of the Act.

Plaintiff asserts in Paragraph 6 of the Complaint that the Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. § 78u(e), 78aa]. The cited statutes state that they are specifically relevant only to, respectively, actions involving the Securities Act and the Exchange Act. These jurisdictional statutes are not applicable to Defendants Violet Gail Eldridge and UTA-BVI. Ltd., nor Relief Defendants the United Tribes of the Americas, Inc. and Executive Bureau of Research and Recovery, Inc., because the only counts alleged against these particular Defendants are Counts VII and VIII, alleging violations of the Advisers Act. The prayer for relief from the above Defendants also arises solely from alleged violations of the Investment Advisers Act. Because there are no alleged violations of the Securities Act, nor the Exchange Act, the above referenced statues confer no jurisdiction of the Court over the above-described Defendants.

The Plaintiff also asserts in Paragraph 6 of the Complaint that the Court has jurisdiction pursuant to Sections 209(d), 209(e)(1) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) and 80b-14]. 15 U.S.C. § 80b-9(d) confers jurisdiction solely for actions for injunction

1

regarding the Advisers Act. U.S.C. § 80b-9(e)(1) confers jurisdiction solely for actions for money

penalties in civil actions.  15 U.S.C. § 80b-14 confers jurisdiction of violations of the Advisers

Act. Plaintiff has substantiated no allegation that any of the above-listed Defendants "appear to

the Commission" to have "violated" or  "engaged, is engaged, or is about to engage in any act or

practice constituting a violation of any provision" of the Investment Advisers Act.


Paragraph 5 of the Complaint, under the heading "Summary", makes a conclusion of law,

but makes no reference to any alleged facts.  In Paragraph 5, the Commission does not assert any

"appearance" that the above-listed Defendants violated the Investment Advisers Act.  Conclusions

of law are again made in paragraphs 77-80 and 81-83.


Allegations of fact regarding the above-listed defendants are referenced in the Complaint

in paragraphs 29 - 33 and 46-50. None of the alleged facts refer to any action which could

possibly appear to be a violation of any portion of the Investment Advisers Act.:


1.      The Commission alleges transfer of funds owned by First National Equity and P.K. Trust

into trusts, for which UTA-BVI served as Trustee. Transfer of funds into the legal title of

a Trustee is not an action in violation of the Investment Advisers Act.


2.      Alleged descriptions of how UTA-BVI invested funds, as Trustee, is presented.  A

Trustee investing trust corpus is not in violation of the Investment Advisers Act.


2

3.      Allegations that the Trustee did not manage funds for the benefit of beneficiaries (First

National Equity and P.K. Trust) is made, and is referred to pejoratively as a "fraud". Even

assuming that this allegation may be true, it is not a violation of the Investment Advisers

Act, and is nowhere alleged to be a violation of same.


        There is no appearance of a violation of the Investment Advisers Act.  Without an

appearance of such violation, there is no jurisdiction pursuant to the statutes asserted by plaintiff.

An essential element to violating the Investment Advisers Act is for a party to meet the definition

of an "Investment Adviser."   If the Commission does not allege facts supporting an appearance

that a party is acting as an "investment adviser", then there is no jurisdiction established under 15

U.S.C. §§ 80b-9(d), 80b-9(e)(1) or 80b-14 .


        According to pertinent portions of Section 202(a)(11) of the Act, the basic elements for an

"investment adviser" are

        (1.) A party engages in the business of advising,

        (2.) Others,

        (3.) For compensation,

        (4.) As to the value of securities or as to the advisability of investing in, purchasing, or

selling securities.


The Commission does not allege facts that indicate any of the above-referenced Defendants

engaged in the business of advising.  There is no "other" alleged to have received any advice of

**Exhibit B**

any type.  There is no allegation of compensation for advice of any type, and there is no allegation

that any party made any statements as to the value of any securities, or the advisability of

investing in, purchasing or selling securities.

Pleadings should contain only allegations of fact, and not conclusions of law. *Levins v.*

*Rovegno*, 71 Cal.273, 12 P. 161; *Iron Co. v. Vanderworrt*, 164 Pa. 572, 30 A.491; *Clark v.*

*Railway co.*, 28 Minn. 69, 9 N. W. 75 The assertion by plaintiff that the court has jurisdiction

over this matter is not arrived at by any process of natural reasoning from a fact or combination of

facts alleged, but by the application of the artificial rules of law to the facts pleaded. .

Without alleging any supportive facts, the Commission has failed to assert that there

appears to be a violation of the Investment Advisers Act, and therefore has failed to meet the

minimum standard for conferring the jurisdiction of the Court.

## Failure to State a Claim

Nothing in the alleged facts support plaintiffs conclusion that Ms. Eldridge or UTA-BVI, Ltd

acted as an "investment adviser" within the meaning of the Act.

Plaintiff has cited two Section 206 violations.  Section 206 applies only to "investment

advisers" Section 202(a)(11) elements of investment adviser were not met, as described above.

Rather than repeat the arguments above, they are herein reiterated.

Plaintiff alleges that UTA-BVI, was a trustee, and that Ms. Eldridge was an officer of UTA-BVI.  Plaintiff inexplicably charges UTA-BVI as violating Section 206 and charges Ms. Eldridge with aiding and abetting the alleged violations.

In *Selzer v. Bank of Burmuda, Ltd* SDNY 1974, 385 F. Supp 415, the court dismissed an action for violation of the Investment Adviser's Act by a trustee for failure of plaintiff to state a claim.  The court explains that a trustee is not an investment adviser within the meaning of the Investment Advisers Act, and affirms *In re Loring*, 11 S. E. C. 885 (1942):  "A trustee is historically the legal owner of the trust corpus, while the beneficiary is the equitable owner.  The trustee does not advise the trust corpus, which then takes action pursuant to his advice;  rather, the trustee acts himself as principal."  The same facts are applicable in this case.  A party acting as a trustee, whose duties involved no advising of any party, is not an investment adviser.

A party who does not engage in the business of giving others investment advice about securities is not an "investment adviser" under Section 202(a)(1) *Wang v. Gordon*, 715 F.2d 1187 (7th Cir. 1983, *Zinn v. Parrish*, 644 F.@d 360, 364 (7th Cir. 1981).  There is in the complaint no assertion that any of the moving defendants were engaged in the business of giving others investment advice about securities.  Because there are no factual allegations supporting the claims of violation, there is no statement of claim upon which relief can be granted, with respect to the moving defendants.

5

**Exhibit B**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | Case Number: 1:03-CV-1513SEC-VSS |
| vs. | ) ) ) | Judge Sarah Evans Barker |
| JOHN L. MONTANA, JR., MELVIN R. LYTTLE, PAUL E. KNIGHT, VIOLET GAIL ELDRIDGE, WORLDWIDE T&P, INC., FIRST NATIONAL EQUITY, LLC, P.K. TRUST & HOLDING, INC., and UTA-BVI, LTD., | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| THE UNITED TRIBES OF THE AMERICAS, INC. and EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC., | ) ) ) ) ) | |
| Relief Defendants. | ) | |

### PLAINTIFF SECURITIES & EXCHANGE COMMISSION'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS UTA-BVI, LTD. AND VIOLET GAIL ELDRIDGE

Plaintiff, Securities and Exchange Commission ("SEC" or "Commission"), respectfully submits this memorandum in opposition to the Motion of UTA-BVI, Ltd. and Violet Gail Eldridge ("Moving Defendants") to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim

("Motion to Dismiss").[1]  The Motion to Dismiss is based on the Moving Defendants' arguments that the Commission has failed to allege sufficient facts to establish that the Moving Defendants violated the Investment Advisers Act of 1940 and are investment advisers.

## BACKGROUND

On October 14, 2003, the Commission filed an action in this Court against four individuals and four entities for their involvement in the fraudulent sale of approximately $30 million in investment contract securities to approximately 29 investors in several states. The Complaint alleged that from August 1999 until April 2000, Defendants John L. Montana, Jr. ("Montana"), Melvin R. Lyttle ("Lyttle"), and Paul E. Knight ("Knight") sold interests in a bank trading program which purported to invest money in the trading of various instruments including medium term notes ("trading program").  (Compl., ¶1.)   Montana, Lyttle and Knight raised funds for the Trading Program through the entities that they controlled: Lyttle's First National Equity, LLC ("First National Equity"), Knight's P.K. Trust & Holding, Inc. ("P.K. Trust") and Montana's Worldwide T&P, Inc. ("Worldwide T&P").  (Compl., ¶1.)  Montana, Lyttle and Knight told investors that they could earn significant returns, risk-free through the trading program.  (Compl., ¶2, 36, 37, 39, 42.)  Approximately $24 million of the investor funds raised by Montana, Lyttle and Knight were transferred to UTA-BVI, Ltd ("UTA-BVI"), a British Virgin Islands corporation.  (Compl., ¶30, 31.)

The Complaint alleges that in turn, UTA-BVI and Violet Gail Eldridge ("Eldridge"), President of UTA-BVI, defrauded First National Equity and P.K. Trust.  (Compl., ¶ 4, 12.)

---

[1]The Moving Defendants state that they are brining their Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure without citing any specific subsection of the Rule.  Moving Defendants presumably bring their Motion to Dismiss based on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because they allege that the Court lacks jurisdiction and that the Commission's Complaint fails to state a claim.  If the Moving Defendants intended to bring this Motion to Dismiss under another subsection of Rule 12(b), the Commission requests an opportunity to respond to that argument.  In addition, counsel for the Moving Defendants failed to sign her Memorandum in Support of its Motion to Dismiss, in violation of Fed. R. Civ. P. 11 and Local Rule 5.1(b).

Through "trust management agreements," UTA-BVI agreed to serve as trustee over the $24 million in investor funds transferred to it from First National Equity and P.K. Trust. (Compl., ¶¶ 4, 30, 31, 32.) Under the agreements UTA-BVI was to receive compensation for services rendered plus a 0.50% participation fee in the profits generated from the trust property. (Compl., ¶47.) Additionally, the agreements identified First National Equity and P.K. Trust as beneficiaries of the trust and provided that UTA-BVI would manage the trust funds for their benefit. (Compl., ¶ 32, 47.) The agreements, however, did not provide for how the trust funds would be invested, for a return on investor funds, for the security of investor funds or for any of the assurances that Montana, Lyttle and Knight had given to investors. (Compl., ¶32.) The only investment instruction provided by the agreements was that UTA-BVI was to either hold uninvested trust property or invest trust property in any manner deemed in the best interest of the trust. (Compl., ¶47.)

UTA-BVI used its discretionary authority granted by the trust agreements to distribute the $24 million in investor funds among several UTA-BVI brokerage accounts controlled by Eldridge and gave sole trading authority to a broker who used the funds to engage in highly leveraged stock trading in margin accounts. (Compl., ¶48.) Instead of managing the funds for the benefit of First National Equity and P.K. Trust, UTA-BVI used the trust funds to pay Eldridge's personal expenses and transferred funds to several bank accounts including ones she controlled in the name of the Relief Defendants, The United Tribes of the Americas, Inc. ("United Tribes") and Executive Bureau of Research and Recovery, Inc. ("Executive Bureau"). (Compl., ¶ 4, 33, 49.) Eldridge never disclosed to First National Equity and P.K. Trust that UTA-BVI would use the trust funds in this manner. (Compl. ¶ 49.) Consequently, the Complaint alleges that UTA-BVI, through Eldridge, defrauded First National Equity and P.K.

Trust and that Relief Defendants United Tribes and Executive Bureau had no right to receive the ill-gotten gains transferred to them. (Compl., ¶ 4, 49, 50.)

On January 5, 2004, UTA-BVI and Eldridge filed this Motion to Dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, alleging that this Court lacks subject matter jurisdiction over this action and that the Complaint failed to state a claim against them for violations of the Investment Advisers Act of 1940 ("Advisers Act"). Because the Commission has alleged sufficient facts in its Complaint asserting that UTA-BVI and Eldridge violated the Advisers Act, the Commission has properly invoked this Court's jurisdiction and has stated a claim against Eldridge and UTA-BVI. Thus, this Court should deny the Moving Defendants' Motion to Dismiss.

## STANDARD GOVERNING MOTION TO DISMISS

"A party moving for dismissal under Rules 12(b)(1) and 12(b)(6) must show that 'the pleadings themselves fail to provide a basis for any claim for relief under any set of facts." *Baker v. Indiana Family & Social Servs. Admin.*, 260 F. Supp.2d 731, 734 (S.D. Ind. 2003) (*quoting Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F. Supp.2d 948 (S.D. Ind. 2001)). "Under this analysis, [this court must] examine only the sufficiency of the complaint, not the merits of the lawsuit." *Estate of Norman Norris v. Putnam County Sheriff*, IP 01-0509-C-B/S, 2002 WL 31243421 at *4 (S.D. Ind. Oct. 1, 2002) (*quoting Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Accordingly, "[d]ismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts that would entitle him to the relief sought." *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Applying this standard, this court must "treat all well-pleaded factual allegations as true and . . . construe all inferences that reasonably may be drawn from those facts in a light most favorable to

the party opposing the motion. *Szumny v. American Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

## ARGUMENT

Moving Defendants, UTA-BVI and Eldridge, bring their motion to dismiss based on two principal arguments that: (1) this Court lacks subject matter jurisdiction over this action because the Complaint does not allege sufficient facts to show that UTA-BVI and Eldridge have violated the Advisers Act; and (2) the Commission has failed to state a claim against UTA-BVI and Eldridge because neither of them meets the definition of an investment adviser. Because the Commission's Complaint adequately alleges facts to support that UTA-BVI and Eldridge violated the Advisers Act, this Court has jurisdiction over this action and the Commission has not failed to state a claim. Therefore, this Court should deny the Moving Defendants Motion to Dismiss.

I.     **This Court has Subject Matter Jurisdiction over this Action because the Commission Alleges Sufficient Facts in its Complaint to State a Claim against the Moving Defendants for Violations of the Advisers Act.**

Section 214 of the Advisers Act confers jurisdiction to district courts of the United States over violations of the Advisers Act and suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of the Advisers Act where a defendant resides or transacts business.[2] 15 U.S.C. 80b-14. Accordingly, a district court has jurisdiction "so long as the plaintiff alleges that defendant's actions violate the requisite federal law." *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 897-98 (3d Cir. 1987).

---

[2] The Moving Defendants assert that the Commission does not have subject matter jurisdiction over this action against them pursuant to Sections 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v(a), and Sections 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(e), 78aa. Because the Commission is not charging UTA-BVI or Eldridge with violations of the Securities Act or Exchange Act, however, the Commission is not invoking this Court's jurisdiction over this action against the UTA-BVI and Eldridge based on these provisions.

In the instant case, the Commission's complaint alleges that the UTA-BVI, through Eldridge, violated Sections 206(1) and 206(2) of the Advisers Act which prohibit an investment adviser from engaging in fraudulent conduct with respect to any client or prospective client. 15 U.S.C. §80b-6(1), (2). Specifically, the Complaint alleges that UTA-BVI violated Sections 206(1) and 206(2) of the Advisers Act and that Eldridge aided and abetted UTA-BVI's violations of those provisions. Thus, this Court's jurisdiction was properly invoked because the Complaint alleges "violations" of the Advisers Act.

### A.  The Commission's Complaint Sufficiently Alleges Facts to Establish that UTA-BVI Violated the Advisers Act

Sections 206(1) and 206(2) of the Advisers Act prohibit investment advisers from (1) using the mails or other instruments of interstate commerce to employ any device, scheme or artifice to defraud any client or prospective client; and (2) engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 198-99 (1963). Scienter is an element of Section 206(1) but not Section 206(2). *See id.* at 195 (holding scienter not an element of Section 206(2)); *See SEC v. Steadman*, 967 F.2d 636, 641 n.3 (D.C. Cir. 1992) (predicting that the Supreme Court would deem scienter an element of Section 206(1)). Thus, to state a claim that UTI-BVI directly violated these antifraud provisions of the Advisers Act, the Commission must allege that UTA-BVI was: (1) an investment adviser (2) that engaged in fraudulent conduct and (3) acted with scienter. As demonstrated below, the Commission has properly stated a claim against Defendant UTA-BVI for fraud under the Advisers Act.

Exhibit B

## 1. **UTA-BVI meets the Definition of an Investment Adviser.**

Moving Defendants' assertion that the Complaint fails to allege that UTA-BVI is an investment adviser is erroneous.[3]  In order to meet the definition of an investment adviser under Section 202(a)(11) of the Advisers Act a person must satisfy two requirements:  (1) the person must be "engage[d] in the business of advising others" with respect to securities; and (2) the person must be advising others "for compensation."  *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir.), *cert. denied*, 436 U.S. 905 (1978).  In addition, entities which receive compensation for their discretionary investment of the funds of their clients in securities are included within the definition of investment adviser under the Advisers Act.  *See id.*

Construing the allegations in the Complaint in the light most favorable to the Commission, UTA-BVI fits the definition of an investment adviser because it received compensation for its discretionary investment of the funds of First National Equity and P.K. Trust in securities.  First, the Complaint sufficiently alleges that UTA-BVI "engaged in the business of advising others."  Specifically, the Complaint asserts that UTI-BVI executed trust management agreements, through Eldridge, with First National Equity and P.K. Trust.  (Compl., ¶¶ 32, 46.)  Under these agreements UTA-BVI received $24 million in trust funds from First National Equity and P.K. Trust.  (Compl., ¶¶ 32, 46.)  The Complaint also alleges that UTA-BVI, as trustee, was charged with managing the trust assets for the benefit of First National Equity and P.K. Trust and provided that it was to either hold uninvested trust property or invest trust property in any manner deemed in the best interest of the trust.  (Compl., ¶ 47.)  Further, the Complaint states that UTA-BVI did use its discretionary authority granted by the trust

---

[3] In the Memorandum in support of its Motion to Dismiss, the Moving Defendants also assert that Eldridge is not an investment adviser.  The Moving Defendants misunderstand the allegations in the Commission's Complaint because the Commission is not asserting that Eldridge directly violated the Advisers Act.  Rather, the Commission is alleging that Eldridge aided and abetted UTA-BVI's violations of the Advisers Act, which does not require the Commission to establish that Eldridge is an investment adviser.

management agreements to distribute the $24 million in trust funds among several UTA-BVI

brokerage accounts controlled by Eldridge and gave sole trading authority to a broker who used

the funds to engage in highly leveraged stock trading in margin accounts.  (Compl., ¶ 48.)

Second, the Complaint alleges that UTA-BVI received compensation for its discretionary

investment of funds.  Under the terms of the "trust management agreements," UTA-BVI was to

receive "compensation for services rendered plus a 0.50% participation fee in the profits

generated from the trust property.  (Compl., ¶47.)  In addition, the compensation element of the

definition of investment adviser can be satisfied by establishing that the defendant diverted

investor funds for personal use.  *In the Matter of Ira William Scott*, 1998 WL 611726 at *3; *In

the Matter of Alexander v. Stein*, Initial Decision No. 52, 1994 SEC LEXIS 1904 (June 20,

1995).  Accordingly, the Complaint sets forth facts that Eldridge, through UTA-BVI, transferred

trust funds to bank accounts that she controlled and used funds to pay personal expenses.

(Compl., ¶¶ 4, 49.)

The Defendants' assertion that UTA-BVI is not an investment adviser because it was a

trustee is mistaken.  Section 202(a)(11) of the Advisers Act, 15 U.S.C.§80b-2(11), expressly

exempts several categories of persons from the definition of investment adviser.  That list of

exempted persons, however, does not include "trustees."  "Under the principle of statutory

construction 'expresio unius est exclusio alterius' the absence of an exception . . . indicates that

Congress did not intend to permit [that] exception for that reason."  *Martin v. Hamil*, 608 F.2d

725, 728 (7th Cir. 1979).  Consequently, the Seventh Circuit has held that "[w]here a statute lists

exceptions to its general application, other exceptions not explicitly mentioned are excluded."

*U.S. v. Jimenez*, 897 F.2d 286, 287 (7th Cir. 1990).  It follows that because the Advisers Act does

not include trustees among the classes of persons expressly exempted from the definition of investment adviser, Congress did not intend to exclude trustees from that definition.

The SEC thus has long interpreted the Advisers Act to mean that "'… a person, who for compensation, engages in the business of investment management with the discretionary power to buy and sell securities is an investment adviser even if the business is conducted through trusts.'" *SEC v. Smith*, No. 92 C 0811, 1992 WL 67832, at *3 (N.D. Ill. March 26, 1992), *quoting Joseph J. Nameth*, SEC No-Action Letter, 1983 WL 30256, at *5, [1982-83 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 77, 372 at 78, 374 (Jan. 31, 1983).

The Moving Defendants erroneously rely on *In re Loring*, 11 S.E.C. 885, Release No. IC - 33, (July 20, 1942), and *Selzer v. Bank of Bermuda, Ltd.*, 385 F. Supp. 415 (S.D.N.Y. 1974), for the proposition that a trustee cannot be an investment adviser. In the *Loring* case, the Commission merely ruled that a trustee whose business was primarily conducted as a court-appointed fiduciary was not an investment adviser within the intent and meaning of the Advisers Act. 11 S.E.C. 885. No reasonable reading of the Commission's order in *Loring* can stretch the Commission's logic in the limited circumstances of that case to apply to the Moving Defendants in this case. Moreover, the court in the *Selzer* case did not reach the correct conclusion. Citing the Commission's holding in *Loring*, the court in *Selzer* found that the Advisers Act was not applicable to a trustee of a private trust which was created to invest in securities. 385 F. Supp. at 420. Simply put, the *Selzer* decision was based on the court's mistaken belief that in *Loring* the Commission had ruled that the Advisers Act is never applicable to trustees. *See Nameth*, 1983 WL 30256, at *5. *Loring* stands for nothing more than the proposition that court-appointed trustees are not investment advisers under the Act. Neither *Loring* nor *Selzer* support the general position that a trustee cannot be an investment adviser.

In sum, the Commission has sufficiently alleged that UTA-BVI is an investment adviser because it received compensation for its discretionary investment of the funds of First National Equity and P.K. Trust in securities.

### 2. UTA-BVI Engaged in a Fraud by Misusing Investor Funds in Violation of its Fiduciary Duties.

Contrary to the Moving Defendant's assertion, the Complaint alleges facts that, if taken to be true, establish that UTA-BVI, through Eldridge, defrauded First National Equity and P.K Trust by violating its fiduciary duties to them as an investment adviser. Investment advisers are fiduciaries under the Advisers Act and as such, they have "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients." *SEC v. Blavin*, 760 F.2d 706, 711-12 (6th Cir.1986). The Complaint alleges that UTA-BVI, as trustee, was charged with managing the trust assets for the benefit of First National Equity and P.K. Trust, as beneficiaries. (Compl., ¶ 46.) However, UTA-BVI used the trust funds to engage in highly leveraged stock trading which resulted in a total loss of at least $3 million. (Compl., ¶33.) Instead of managing the funds for the benefit of the beneficiaries, UTA-BVI used the funds for its own and Eldridge's benefit. (Compl., ¶¶ 4, 49.) For instance, Eldridge transferred at least $700,000 of trust funds to bank accounts that she controlled in the name of the Relief Defendants, United Tribes and Executive Bureau, and also used funds to pay personal expenses. (Compl., ¶¶ 4, 49.) Further, UTA-BVI, through Eldridge, used the funds in this manner without disclosing these actions to First National Equity or P.K. Trust. (Compl., ¶¶4, 49.) Thus, the Complaint adequately pleads that UTA-BVI committed fraud when it alleges that UTA-BVI used trust funds for its own benefit rather than for the benefit of First National Equity and P.K. Trust.

### 3. UTA-BVI Acted with Scienter

The facts alleged in the Complaint, if taken to be true, establish that UTA-BVI, through Eldridge, acted with the requisite scienter. Recklessness satisfies the requirement of scienter under Section 206(1) of the Advisers Act. *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1126 (7th Cir.1990); *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 792 (7th Cir.1977). Also a company may have imputed to it the scienter of the individuals who control it. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089, n. 3, 1097, n. 18 (2d Cir.1972). The Complaint alleges that UTA-BVI, through Eldridge, executed "trust management agreements" with First National Equity and P.K. Trust. (Compl., ¶¶ 32, 46.) In addition, Eldridge knowingly transferred the $24 million in investor funds received by UTA-BVI from First National Equity and P.K. Trust to several brokerage accounts that she controlled. (Compl., ¶ 48.) Further, the complaint details that Eldridge deliberately used a large portion of the trust funds for her personal expenses and diverted the remainder of the $24 million in trust funds into bank accounts she controlled. (Compl., ¶¶ 33, 49.) In sum, the Commission has sufficiently alleged that UTA-BVI, through Eldridge acted at least recklessly by diverting large portions of the trust funds into bank accounts and brokerage accounts she controlled and using trust funds to pay for her personal expenses.

### B. Eldridge Aided and Abetted UTA-BVI's Violations of the Investment Advisers Act

To state a claim that Eldridge aided and abetted UTA-BVI's violations, the Commission must allege that: (1) UTA-BVI violated the Advisers Act; (2) Eldridge was generally aware that her role was part of an overall activity that was improper; and (3) Eldridge knowingly and substantially assisted UTA-BVI's violation. *See SEC v. Bilzerian*, 29 F.3d 689, 694 (D.C. Cir. 1994). Viewing the allegations in the complaint in a light most favorable to the Commission, the

Commission has alleged sufficient facts to establish that Eldridge aided and abetted UTA-BVI's violations of the Advisers Act.

First, as discussed above in Section I. A, the Complaint alleges facts demonstrating that UTA-BVI violated Section 206(1) and 206(2) of the Advisers Act. Second, the Complaint sets forth sufficient facts that establish that Eldridge was "generally aware that her role was part of an overall activity that was improper." For instance, the "trust management agreements" signed by Eldridge, on behalf of UTA-BVI, provided that UTA-BVI was responsible for managing the trust assets for the benefit of First National Equity and P.K. Trust. (Compl. ¶¶ 32, 46-47). These agreements further detailed that UTA-BVI was to either hold uninvested trust property or invest trust property . . . in any manner deemed in the best interest of the trust. (Compl. ¶ 47.) Despite this agreement, the Complaint details that Eldridge knowingly misused trust funds by transferring trust funds to bank accounts she controlled in the name of the Relief Defendants and using trust funds to pay her personal expenses. (Compl., ¶¶ 4, 33, 49.) Third, the Complaint alleges sufficient facts to show that Eldridge substantially assisted UTA-BVI's violations of the Advisers Act. Specifically, the Complaint states that Eldridge provided substantial assistance to UTA-BVI's fraud by executing the trust management agreements, controlling the UTA-BVI brokerage accounts into which trust funds were deposited and using trust funds for her own expenses. (Compl., ¶50.)

Therefore, the Commission has sufficiently alleged that Eldridge aided and abetted UTA-BVI's violations of the Section 206(1) and 206(2) of the Advisers Act.

II.    **The Facts in the Complaint Demonstrate that UTA-BVI is an Investment
       Adviser and Thus, the Commission has not Failed to State a Claim Under the
       Advisers Act.**

As discussed in further detail above in Section I.A.1, the Commission has sufficiently

alleged that UTA-BVI meets the definition of an investment adviser under the Advisers Act.

Specifically, the Complaint alleges that UTA-BVI was to receive compensation for its

discretionary investment of the funds of First National Equity and P.K. Trust.  (Compl., ¶¶ 47,

48)  Further, UTA-BVI's status as a trustee does not exclude it from being an investment adviser

under the Advisers Act.

## CONCLUSION

For the forgoing reasons, the moving defendants' motion to dismiss should be denied.

Dated:                                      Respectfully Submitted,


                                            s/ Faye Hizon Nybo

                                            John E. Birkenheier
                                            e-mail: birkenheirj@sec.gov
                                            Faye Hizon Nybo
                                            e-mail: hizonf@sec.gov
                                            ATTORNEYS FOR PLAINTIFF
                                            THE UNITED STATES SECURITIES AND
                                            EXCHANGE COMMISSION
                                            175 W. Jackson Boulevard, Suite 900
                                            Chicago, Illinois 60604
                                            Telephone: (312) 353-7390

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certified that a copy of Plaintiff Securities and

Exchange Commission's Opposition to the Defendants' Motion to Dismiss was served upon the

following:

Katherine Crase
2804 Aquilla Street
Tampa, Florida 33629

Melvin R. Lyttle
502 Fifth Street
Post Office Box #007
Aurora, Indiana 47001-0007

Paul E. Knight
917 Palmer Court
Kodak, Tennessee 37764

John Montana
49 Caswell Avenue
Stanten Island, NY 10314


By first class mail, postage prepaid, this 23rd day of January 2004.


<u>s/ Faye Hizon Nybo</u>

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,<br><br>       Plaintiff<br><br>       v.<br><br>JOHN L. MONTANA, JR.,<br>MELVIN R. LYTTLE,<br>PAUL E. KNIGHT,<br>VIOLET GAIL ELDRIDGE,<br>WORLDWIDE T&P, INC.,<br>FIRST NATIONAL EQUITY, LLC,<br>P.K. TRUST & HOLDING, INC., and<br>UTA-BVI, LTD.,<br><br>       Defendants,<br><br>       and<br><br>THE UNITED TRIBES OF THE<br>AMERICAS, INC. and<br>EXECUTIVE BUREAU OF RESEARCH AND<br>RECOVERY, INC.,<br><br>       Relief Defendants. | CIVIL ACTION<br>FILE NO.<br>1:03-CV-1513SEB-VSS |

## DEFENDANTS UTA-BVI, LTD, VIOLET GAIL ELDRIDGE AND RELIEF DEFENDANTS THE UNITED TRIBES OF THE AMERICAS, INC., AND EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.,'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants UTA-BVI, Ltd, Violet Gail Eldridge and relief defendants the United Tribes of

the Americas, Inc., and Executive Bureau of Research and Recovery, Inc.,("Moving Defendants")

1

respectfully submit this memorandum in support of their Motion to Dismiss, and responding to the Plaintiff's memorandum opposing their Motion to Dismiss.

Plaintiff has failed in its Opposition to Motion brief to address the Motion to Dismiss under the Federal Rules of Civil Procedure Rule 12(b)(2); lack of jurisdiction over the person, and Rule 12(b)(3) improper venue.  These motions were properly made, and supported by affidavit According to *Ohio-Midland Light & Power Co. v. Ohio Brass Co.*, D.C. Ohio 1962, 221 F.Supp. 405, facts disclosed by an uncontroverted affidavit submitted by one of the defendants in support of motions to dismiss the actions on the ground that venue was improper would be accepted as true by the federal district court. Plaintiff has not attempted to controvert the facts presented by affidavit, nor to present any facts supporting Plaintiff's allegations that the District Court in the Southern District of Indiana is the proper venue for the Moving Defendants.  Neither does the Plaintiff provide any facts that that this court has jurisdiction over the person of the Moving Defendants.

## VENUE

28 U.S.C.§.1391(b) describes venue for a civil action where jurisdiction is not founded on diversity of citizenship.  Proper venue for the Moving Defendants should be in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred

Plaintiff's Complaint clearly separates the alleged activities of the Moving Defendants from the other defendants. There are two distinct "schemes" alleged, and the location of the nexus of one claim is not the nexus of the other claim. Plaintiff is attempting to bring the two alleged "schemes" under one venue, and disguise it as one claim, when in fact, by the very Complaint, it is clear that there are two claims.

2

Plaintiff alleges, under the heading <u>Background</u> in its opposition brief, that Plaintiff "filed an action against four individuals and four entities for their involvement in the fraudulent sale of securities to 29 investors in several states." Yet the Moving Defendants are nowhere in the Complaint alleged to have been involved in this sale of securities, nor to have had any knowledge whatsoever of the alleged fraudulent activities of the other defendants.

Under the heading <u>Summary,</u> the Complaint refers to the Moving Defendants activities as solely related to the management of funds transferred into trust pursuant to "trust management agreements"(Compl., ¶ 4.) Complaint ¶ ¶19-28 are entitled "<u>The Scheme by Montana, Lyttle and Knight to Defraud Investors</u>" and do not reference any of the Moving Defendants. Complaint ¶¶ 29-35 are entitled "<u>Use of Investor Funds</u>" and again reference the Moving Defendants activities as being limited to the "trust management agreements." In Complaint ¶ 32., Plaintiff alleges that the "trust management agreements" stated that the funds transferred into trust were owned by First National Equity and P.K. Trust and not by any of the investors. Complaint ¶ ¶36 - 45 are entitled "<u>Montana, Lyttle and Knight made Fraudulent Statements to Investors About the Trading Program.</u>" Finally, Complaint ¶ ¶46-50 are under the title "<u>The Scheme by Eldridge and UTA-BVI to Defraud First National Equity and P.K. Trust.</u>" This is a separate and distinct "scheme" from the alleged scheme by Montana, Lyttle and Knight to defraud investors.

The entire alleged "scheme" involving Moving Defendants revolved around the "trust management agreements," the investments made by the trusts, and transfer of funds out of the trusts. Nowhere is it alleged by Plaintiff that any activity by Moving Defendants took place in Indiana. Nowhere is it alleged that the Moving Defendants were part of the separate alleged "scheme" of Montana, Lyttle and Knight. The claim against Moving Defendants is clearly and

3

## STANDARD GOVERNING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

The requirements under Federal Rules of Civil Procedure Rule 12(b)(1) - subject matter jurisdiction and Rule 12(b)(6) - failure to state a claim with respect to Section 214 of the Advisers Act, are linked, except for residency or place of business, as in *Selzer v. Bank of Bermuda, Ltd.,* 385 F.Supp 415 (S.D.N.Y. 1974). Federal Rules of Civil Procedure Rule 12(h)(3) states that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Court's function on Motion to Dismiss is not to weigh evidence which might be presented at trial, but merely to determine whether complaint itself is legally sufficient. *Duncan v. Santaniello,* D.Mass. 1995, 900 F.Supp. 547. On Motion to Dismiss, district court is not constrained by legal characterizations that plaintiff places on allegations. *Fernando v. Rush-Prsebyterian-St. Luke's Medical Center,* N.D.Ill. 1995, 882 F.Supp. 119. Conclusory allegations in complaint are insufficient to state claim for relief, where no facts are alleged to support conclusions or where allegations are contradicted by facts themselves. *Golyar v. McCausland,* W.D. Mich. 1990, 738 F.Supp. 1090. In considering dismissal for failure to state a claim, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Columbus, Cuneo, Cabrini Medical Center v. Travelers Ins. Co.,* N.D. Ill. 1989, 725 F. Supp.396. General conclusionary allegations unsupported by facts are insufficient to constitute a cause of action, and where claims in a compliant are insufficiently supported by factual allegations, these claims may properly be disposed of by summary dismissal. *Harper v. U.S.,* D.C.S.C. 1976, 423 F.Supp. 192.

5

obviously a separate claim from the fraudulent sale of securities to 29 investors in several states.

With respect to the Moving Defendants, the affidavit supporting the Motion to Dismiss clearly states that the trust agreements were executed outside of Indiana, that the brokerage accounts were outside of Indiana, and no activity by any of the Moving Defendants took place in Indiana. According to the Complaint, the facts in the affidavit, and the application of 28 U.S.C. § 1391, the District Court in the Southern District of Indiana is not the proper venue for the Moving Defendants.

## JURISDICTION OVER PERSONS

Section 214 of the Advisers Act confers jurisdiction to district courts where a defendant resides or transacts business. 15 U.S.C. § 80b-14. Moving Defendants do not reside, nor have they transacted any business in Indiana, nor has Plaintiff made any allegations to that fact or controverted the Motion to Dismiss based on lack of jurisdiction over persons, supported by affidavit. Plaintiff argues that a district court has jurisdiction "so long as the plaintiff alleges that defendant's action violate the requisite federal law." *Kulick v. Pocono Downs Racing Ass'n, Inc.* 813 F.2d 895, 897-98 (3d Cir. 1987). This case involved a civil rights claim and state law, and does not address the jurisdictional requirements of the Advisers Act. *Kulick* offers no support for plaintiff's attempt to circumvent meeting the jurisdictional requirements of 15 U.S.C. § 80b-14. The District Court of Southern Indiana does not have jurisdiction over the Moving Defendants and the Court's jurisdiction was improperly invoked by Plaintiff.

# THE COMPLAINT FAILS TO ALLEGE FACTS TO ESTABLISH THAT UTA-BVI VIOLATED THE ADVISER'S ACT

If Court determines it has venue over Moving Defendants, the following are the elements which must be supported by alleged facts in Complaint. All elements must be met. Plaintiff has failed to allege facts that meet *any* of the below described necessary elements. Therefore, this Court should grant the Moving Defendants Motion to Dismiss.

15 U.S.C. 80b-14 elements:

A. Plaintiff must allege facts that defendant's action violated the Investment Adviser's Act

B. Plaintiff must allege facts that this action was brought in a district where defendant is an inhabitant or transacts business.

To meet item A, above, Plaintiff must allege facts that support the following to back its assertion that defendant UTA-BVI Violated Sections 206(1) and 206(2) of the Advisers Act:

1. Plaintiff must allege facts that show UTA-BVI meets the definition of an investment adviser;

To meet the requirements of item 1, Plaintiff must allege facts that meet the definition of Investment Adviser as defined in Section 202(a)(11) of the Advisers Act:

    A. Plaintiff must allege UTA-BVI

        (1) engages in the business of advising

        (2) others

        (3) either directly or through publications or writings

6

(4) as to the value of securities or as to the advisability of investing in, purchasing,

or selling securities

(5) for compensation

To meet the additional requirements of 206(1):

2. Plaintiff must allege facts that show UTA-BVI

(A) used the mails or instrumentality of interstate commerce, directly or indirectly

(B) to employ any device, scheme, or artifice to defraud

(C) any client or prospective client


To meet the additional requirements of 206(2):

3. Plaintiff must allege facts that show UTA-BVI

(A) used the mails or instrumentality of interstate commerce, directly or indirectly

(B) to engage in any transaction practice or course of business which operates as a fraud

or deceit

(C) upon any client or prospective client

4. Plaintiff must allege scienter


<u>Plaintiff made no factual allegation that this action was brought in a district where defendant is an
inhabitant or transacts business.</u>

Item B, above, was not met by Plaintiff because Plaintiff failed to allege any facts that this

action was brought in a district where Moving Defendants are inhabitants or transact business.

Under the heading <u>Jurisdiction and Venue,</u> the Plaintiff makes two conclusory statements in

7

Complaint ¶ 7 and ¶ 8.  Neither of these statements are supported by factual allegations with respect to the Moving Defendants.  Conclusory allegations are insufficient to state claim for relief, if unsupported by factual allegations, according to *Golyar*   The Complaint fails to make any factual allegations, and Plaintiff has failed to provide any supporting affidavit asserting any such facts.

Plaintiff did not allege an "other" or a "client" which are items 1(A)(1), 2(C), and 3(C) of essential elements described above.

Plaintiff states in its opposition brief that all it must allege is that UTA-BVI was (1) an investment adviser (2) that engaged in fraudulent conduct and (3) acted with scienter.  Plaintiff ignores the critical component included in the definition of an investment adviser, and is also a required element in section 206(1) and 206(2) of the Adviser's Act - there must be an "other" in the form of a client or a prospective client. Plaintiff simply ignores this essential requirement.

Plaintiff, the Securities and Exchange Commission, is undoubtedly aware of the importance of identifying a "client" as it has promulgated Rule 203(b)(3)-1 "Definition of 'client' of an Investment Adviser" to clarify this critical element.  There is no provision in the Rule for a trust to be the client of a trustee.  There is no provision in the Rule for a beneficiary of a trust to be a client of a trustee.  According to this rule, a beneficiary of a trust is a client if the investment adviser provides investment advisory services to the beneficiary separate and apart from the investment advisory services provided to the trust. In this case, UTA-BVI as trustee, had a broker, (Compl., ¶ 48) who was a licensed investment adviser who made discretionary investments for the trust.  The only party who meets the definition of "client" is UTA-BVI.  There

8

is no allegation whatsoever in the Complaint that UTA-BVI offered any advisory services to any party, whether or not it was termed a "client" Neither the Complaint nor the opposition brief identifies a client, and without this critical element, the Complaint fails to allege facts to establish that UTA-BVI violated the Adviser's Act.

Plaintiff cites *Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir.), cert. denied, 436 U.S. 905 (1978) as offering an alternative definition for an investment advisor to be "entities which receive compensation for their discretionary investment of the funds of their clients in securities are included withing the definition of investment adviser under the Adviser Act." In this revised definition, a "client" remains an essential requirement. Plaintiff relies solely on its interpretation of the *Abrahamson* decision for a definition of an investment adviser, but still ignores the necessity of identifying a client.

Because Plaintiff fails to allege or identify a client, it fails to meet the minimal requirements for stating a claim that UTA-BVI violated the Investment Advisers Act. Without a client, UTA-BVI cannot be defined as an Investment Adviser. Unless UTA-BVI is an Investment Adviser, it cannot have violated § 206(1) or § 206(2) of the Advisers Act. Additionally, both § 206(1) or § 206(2) of the Advisers Act specifically require a client.

Plaintiff did not make factual allegations in the Complaint that UTA-BVI engaged in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, and therefore Plaintiff failed to meet the required elements A(1), A(3) and A(4), above.

Plaintiff ignores the statutory definition of investment advisor and replaces elements A(1),

9

A(3) and A(4), above, with its interpretation of the findings of the *Abrahamson* court.  Plaintiff

takes this phrase from the *Abrahamson* decision which states "entities which receive

compensation for their discretionary investment of the funds of their clients in securities are

included withing the definition of investment adviser under the Adviser Act."  Plaintiff fails to

provide the full findings and conclusion of the court in *Abrahamson*, or to distinguish said case

from the current set of facts.  The Court in *Abrahamson* found that the defendants issued regular

reports to the limited partners of an investment limited partnership, and these reports were

considered by the Court as advice, a necessary element to the definition of an Investment Advisor.

Also, the defendants in *Abrahamson* had identifiable clients as that term is defined by Plaintiff's

promulgated Rule 203(b)(3)-1. Finally, the defendants were doing the discretionary investments

themselves, had not hired an investment advisor and broker to do the investments, as UTA-BVI

did, as Trustee.  *Abrahamson* addressed all elements required to be met under the statute, and did

not merely make a redefinition of the term "Investment Adviser".  When it stated that certain

entities are included under the definition, it was making the point that if the entity otherwise meets

the definition of investment adviser, it should not be excluded from that definition merely because

the entity is compensated for discretionary investment of funds.  Plaintiff erred in relying upon its

interpretation of the Abrahamson ruling as an avenue to avoid meeting the critical statutory

elements of an Investment Advisor, namely the act of providing advice regarding securities.

On page 7 of its opposition brief, Plaintiff attempts to show that the Complaint alleged

facts that UTA-BVI "engaged in the business of advising others." It describes trust agreements,

transferring of funds into trust, the duties of the Trustee under the trust agreements, and the

investment of the trust funds pursuant to the trust agreements.  There is no description of any

10

activity that shows UTA-BVI was "engaged in the business of advising others." It appears that Plaintiff is attempting to assert that the normal activities of a Trustee are equivalent to being engaged in the business of advising others, despite the fact that there is no advice given, and no "others" to whom it is given.

15 U.S.C 80b-2(11) exempts several categories of persons from the definition of investment advisor  The exemptions describe **occupations or business activities**. The exemptions do not describe **legal entities** which could own or control these businesses. For example, individuals, corporations, limited liability companies, trusts and partnerships are not described as "exempt". According to the logic of Plaintiff, that makes every legal entity an investment adviser. The statute  does not mean that all legal entities or the persons controlling them are investment advisers, nor does it mean that any of these entities which opens a brokerage account, as a principal, is an investment adviser.  Plaintiff errs in asserting that a Trustee is an investment adviser merely because it is not listed as an exempted person under the statute.

Moving Defendants do not propose that a trustee cannot be an investment adviser. Moving Defendants merely propose that the action of a  trustee investing trust assets in securities does not make the trustee an investment adviser. *Selzer v. Bank of Bermuda, Ltd.*, 385 F. Supp 415 (S.D.N.Y. 1974) is precisely on point with the facts of this case.  Plaintiff states that the court in *Selzer* erred.  Plaintiff asserts that *Selzer* ruled that the Adviser's Act is never applicable to trustees, when in fact, the *Selzer* court ruled that the role of "trustee who deals in securities for its trust" does not meet "the common sense meaning of the word 'adviser' nor a comparison with other situations to which the 1940 Act has been held applicable." The *Selzer* Court found that "the Investment Advisers Act is not available in a suit against a trustee in these circumstances."

11

A trustee investing trust assets in securities does not meet the definition of investment adviser. That is not stating that a trustee can never be an adviser. An individual investing his own funds in securities is not by that act an investment adviser, but that does not mean that an individual cannot do other acts which would qualify him as an investment adviser. If a trustee violates the provisions of a trust agreement, there are centuries of law governing available remedies.. There is no need to involve the SEC in every private and family trust that invests trust corpus in any security. This would be a radical change to trust law. Plaintiff has erred in attempting to cast the action of a trustee dealing in securities for its trust as an investment adviser.

By failing to allege facts that UTA-BVI provided advice regarding securities, Plaintiff has failed to create subject matter jurisdiction and has failed to state a claim against the Moving Defendants.


<u>Plaintiff failed to allege that UTA-BVI received compensation for advising others regarding securities, which is required element A(5), above.</u>.

Plaintiff asserts that under the terms of the trust agreements, UTA-BVI, as trustee, was to receive compensation for services rendered. (Compl., ¶ 47). The Complaint does not assert that UTA-BVI received any compensation pursuant to the trust agreements. The Complaint does not assert that any of the "services rendered" included advising others regarding securities.

Plaintiff, in its Opposition Brief, never makes an attempt to state that compensation was received by UTA-BVI for advising others. Instead, Plaintiff attempts to twist alleged facts and inapplicable law to meet the required compensation element. In order to meet the scienter element, Plaintiff has characterized all transfer of funds from the trust corpus to bank accounts

12

controlled by Eldridge, and all trust corpus funds used to pay personal expenses as "ill gotten gains", and "fraud". (Compl ¶¶ 4, 49, 50) By doing so, Plaintiff cannot claim the same transfers to be compensation, therefore, the compensation element cannot be met. It seems that by the pleadings in the Complaint, the sceinter and compensation elements in the facts alleged are mutually exclusive.

Plaintiff asserts in its opposition motion that the "compensation element of the definition of investment adviser can be satisfied by establishing that the defendant diverted investor funds for personal use," and cites determinations made by Plaintiff but not court tested.  In this case, however, defendant did not divert "investor funds". These funds were no longer the funds of First National Equity and P.K. Trust. Under Trust law, the trust corpus is legally titled to the Trustee. Once the funds were transferred to the UTA-BVI, the funds became trust property and the funds were legally titled to UTA-BVI.  Plaintiff failed to allege facts that UTA-BVI was compensated for advice regarding securities..

<u>Plaintiff fails to allege facts that support the fraud requirements, elements 2(B) and 3(B) nor the scienter requirement, element 4, above.</u>.

In its opposition brief, Plaintiff asserts that UTA-BVI, through Eldridge, defrauded Frist National Equity and P.K. Trust by violating its fiduciary duties as an investment adviser.  This fiduciary duty requires that UTA-BVI meet the description of investment adviser, and also that the fiduciary duty be to clients.  Because Plaintiff fails to allege facts that indicate UTA-BVI meets any element of the definition of investment adviser, and because Plaintiff fails to allege any clients, there arises no fiduciary duty of UTA-BVI as an investment adviser It is impossible for

13

UTA-BVI to have violated a duty that does not exist.

In its opposition brief, Plaintiff states that the "Complaint details that Eldridge deliberately used a large portion of the trust funds for her personal expenses and diverted the remainder of the $24 million in trust funds into bank accounts she controlled. Compl., ¶¶33,49)." This is emphatically NOT what is alleged in the Complaint. The "large portion" is specifically alleged in the Complaint as $700,000 which represents less than 3% of the trust principal. To call this a "large portion" is deliberately misrepresenting the alleged facts. Additionally, the remainder of the $24 million was not alleged in the Complaint to have been diverted. This deliberate misrepresentation of the allegations in the Complaint may indicate scienter, but not on the behalf of UTA-BVI or Eldridge. The Complaint does not allege that any of UTA-BVI's activities were outside of the scope of the trust agreements.


Plaintiff made no factual allegation that UTA-BVI used the mails or instrumentality of interstate commerce, directly or indirectly.

Items 2(B) and 2(C), above, were not met by Plaintiff because Plaintiff failed to allege any facts that describe the use of mails or instrumentality of interstate commerce. Under the heading Jurisdiction and Venue, the Plaintiff makes two conclusory statements in Complaint ¶ 7 and ¶ 8. Neither of these statements are supported by factual allegations with respect to the Moving Defendants. Conclusory allegations are insufficient to state claim for relief, if unsupported by factual allegations, according to *Golyar* The Complaint fails to make any factual allegations regarding use of mails or interstate commerce

14

## CONCLUSION

For the foregoing reasons, the moving defendants' Motion to Dismiss should be granted.

Dated: February 5, 2004

Respectfully Submitted,

Katherine Crase
Attorney for Defendants
UTA-BVI and Eldridge
and Relief Defendants
2804 Aquilla Street
Tampa Florida 33629
Telephone: 813-251-2684

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of Defendants Uta-bvi, Ltd, Violet Gail

Eldridge and Relief Defendants the United Tribes of the Americas, Inc., And Executive Bureau of

Research And Recovery, Inc.,'S Reply Brief in Support of Motion to Dismiss was served upon

the following

John E. Birkenheier
Faye Hizon Nybo
Securities and Exchange Commission
175 W. Jackson Boulevard, Suite 900
Chicago, Illinois 60604

Melvin R. Lyttle
502 Fifth Street
Post Office Box #007
Aurora, Indiana 47001-0007

Paul E. Knight
917 Palmer Court
Kodak, Tennessee 37764

John Montana
49 Caswell Avenue
Stanten Island, NY 10314

By first class mail, postage prepaid, this 5th day of February 2004.

Katherine Crase

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | **Case Number:** |
| | ) | **1:03-CV-1513SEB-VSS** |
| | ) | |
| | ) | |
| vs. | ) | **Judge Sarah Evans Barker** |
| | ) | |
| JOHN L. MONTANA, JR., | ) | |
| MELVIN R. LYTTLE, | ) | |
| PAUL E. KNIGHT, | ) | |
| VIOLET GAIL ELDRIDGE, | ) | |
| WORLDWIDE T&P, INC., | ) | |
| FIRST NATIONAL EQUITY, LLC, | ) | |
| P.K. TRUST & HOLDING, INC., and | ) | |
| UTA-BVI, LTD., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE UNITED TRIBES OF THE | ) | |
| AMERICAS, INC. and | ) | |
| EXECUTIVE BUREAU OF RESEARCH AND | ) | |
| RECOVERY, INC., | ) | |
| | ) | |
| Relief Defendants. | ) | |

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S PROPOSED SURREPLY TO REPLY BRIEF OF DEFENDANTS UTA-BVI, LTD. AND VIOLET GAIL ELDRIDGE AND RELIEF DEFENDANTS THE UNITED TRIBES OF THE AMERICAS, INC., AND EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this

surreply in response to the reply brief (Doc. #41) of Defendants UTA-BVI, Ltd. and Violet Gail

Eldridge and Relief Defendants The United Tribes of the Americas, Inc. and Executive Bureau of Research and Recovery, Inc. (the "Moving Defendants") in support of their motion to dismiss (Doc. #27).

In their reply brief the Moving Defendants argue that the Commission's Complaint should be dismissed because the Court lacks personal jurisdiction and because venue does not lie in this District. However, under applicable statute and case law this Court does in fact have personal jurisdiction over the Moving Defendants and venue is proper in this District. This Court should therefore reject the Moving Defendants' arguments and deny their motion to dismiss.

## I.    This Court has Personal Jurisdiction over the Defendants Based on the Nationwide Service of Process Provision Contained in the Investment Advisers Act of 1940.

This Court properly has exercised personal jurisdiction over the Moving Defendants pursuant to Section 214 of the Investment Advisers Act of 1940 ("Advisers Act"), [15 U.S.C. §80b-14], which confers jurisdiction on federal district courts over claims of violations of the Advisers Act. Section 214 of the Advisers Act provides that "process. . . may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found," thereby authorizing nationwide service of process. The same provision is found in Section 22(a) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. §77v(a)], and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. §78aa], and the provisions have been held to have identical meanings. *See Abramson v. INA Capital Management Corp.*, 459 F. Supp. 917, 919 n.2 (E.D.N.Y. 1978).

The Moving Defendants assertion that this Court does not have personal jurisdiction over

2

them because they do not reside or transact any business in Indiana is misplaced.  In applying the

identical provision of the Exchange Act, the Court in *Securities Investor Protection Corp. v.*

*Vigman*, 764 F.2d 1309, 1313-16 (9th Cir. 1985), ruled that "[w]here a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, 'the question becomes

whether the party has sufficient contacts *with the United States*, not any particular state.'"

*Vigman*, 764 F.2d at 1315 (emphasis added)(citations omitted).  The *Vigman* court held that "so

long as a defendant has minimum contacts with the United States, Section 27 of the [Exchange]

Act confers personal jurisdiction over the defendant in *any* federal district court.  *Id.* at 1316.

There is no reason to read Section 214 of the Advisers Act any differently.

It is undisputed that the violations of the Moving Defendants, as alleged in the Complaint,

occurred within the United States.  The Complaint alleges that UTA-BVI is headquartered in

New York, that Eldridge is a resident of New York and Georgia, and that Eldridge and UTA-BVI

made use of the mails and instrumentalities of interstate commerce to defraud First National

Equity and P.K. Trust.  (Compl., at ¶¶ 4, 79.)  These facts provide a sufficient basis for this

Court's exercise of personal jurisdiction over each of these defendants pursuant to Section 214 of

the Advisers Act.

II.     **Applicable Case Law Provides that Venue is Proper in a District Where Any
        Defendant Committed an Act of Material Importance to Consummation of the
        Scheme.**

Section 214 of the Advisers Act provides that venue is proper in any district where,

among other things, "any act or transaction constituting the violation occurred."  [15 U.S.C.

§80b-14]   As with personal jurisdiction, identical provisions occur in Section 22(a) of the

3

Securities Act, [15 U.S.C. §77v(a)], and Section 27 of the Exchange Act of 1934, [15 U.S.C. §78aa].

In the case of a multiple defendant securities fraud, "any allegation of a securities act violation is sufficient for venue purposes even as to a defendant who did not commit an act within the district if that defendant is in league with a defendant who did act within the district." *SEC v. Diversified Indus., Inc.*, 465 F. Supp. 104, 111 (D.D.C. 1979)(citation omitted); *see also Vigman*, 764 F.2d at 1317-18; *SEC v. Wallace*, 94 F. Supp. 2d. 1, 2 (D.D.C. 2000) ("Any material act committed by one defendant in [a] district in furtherance of a multi-defendant fraudulent scheme satisfies venue under the Securities Exchange Act of 1934 as to all defendants whether or not the other defendants ever committed a violation in the District.").

In this case, the Complaint alleges that Defendant Lyttle resides in the Southern District of Indiana and that he raised money from investors, signed contracts with investors, and diverted investor money to his personal uses including the purchase of real estate for himself and his family. (Compl., ¶¶ 1, 22, 34.) The Complaint further alleges that part of Lyttle's scheme consisted of the transfer of investor money he had raised to Defendant Eldridge's company, Defendant UTA-BVI, Ltd. (Compl., ¶ 30.) As to the Moving Defendants, the Complaint alleges that they defrauded Defendants First National Equity and P.K. Trust by misappropriating a portion of the investor money that had been raised, in part, through Lyttle's acts. (Compl., ¶¶ 4, 33, 49.) These alleged acts are sufficient to establish venue in the Southern District of Indiana. *See SEC v. Wallace*, 94 F. Supp. 2d at 1-2.

This approach to venue serves "to avoid unnecessary multiplicity of suits and fragmentation of issues." *Frank E. Basil, Inc. v. Leidesdorf*, 713 F. Supp. 1194, 1197 (N.D. Ill.

1989) (citing *Burkhart v. Allson Realty Trust*, 363 F. Supp. 1286, 1292-93 (N.D. Ill. 1973)).  In

addition, courts have recognized that:

The Securities Exchange Act of 1934 is designed to put an end to interstate fraud in the sale and
trading of securities.  It would be difficult, if not impossible, to accomplish this purpose if, when a
complex scheme is alleged involving defendants from many states, venue for a particular district
would have to be established as to each alleged participant in the illegal plan by proving that his
illegal acts in furtherance of the fraud were committed in that district.  An unnecessary multiplicity
of suits and fragmenting of the issues involved would be the result of such a venue requirement.

*Adair v. Hunt Intern. Resources Corp.,* 526 F.Supp. 736, 741 (N.D. Ill. 1981) citing *In Re Penn*

*Central Securities Litig.*, 338 F. Supp. 438, 440 (E.D. Pa. 1972).

Accordingly, in this case venue is proper in this District as to all the Defendants and the

Moving Defendants' motion to dismiss should be denied.

Respectfully submitted,

s/ Faye Hizon Nybo

John E. Birkenheier
e-mail: birkenheierj@sec.gov
Faye Hizon Nybo
e-mail: hizonf@sec.gov
ATTORNEYS FOR PLAINTIFF
THE UNITED STATES SECURITIES
AND EXCHANGE COMMISSION
175 W. Jackson Boulevard, Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390

Dated: February 18, 2004

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of Plaintiff Securities and Exchange Commission's Proposed Surreply Brief to Reply Brief of Defendants UTA-BVI, Ltd. and Violet Gail Eldridge and Relief Defendants The United Tribes of the Americas, Inc. and Executive Bureau of Research and Recovery, Inc. was served upon the following pro se defendants and counsel of record:

Katherine Crase, Esq.
2804 Aquilla Street
Tampa, Florida 33629

Melvin R. Lyttle, pro se
502 Fifth Street
Post Office Box #007
Aurora, Indiana 47001-0007

Paul E. Knight, pro se
917 Palmer Court
Kodak, Tennessee 37764

John Montana, pro se
49 Caswell Avenue
Staten Island, NY 10314

By U.S. Mail, postage prepaid, this 18th day of February 2004.

s/ Faye Hizon Nybo

Faye Hizon Nybo
E-mail: hizonf@sec.gov
One of the Attorneys for Plaintiff
Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604-2615
Phone: (312) 353-7390

**Exhibit B**

Facsimile: (312) 353-7398

Exhibit B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION FILE NO. 1:03-CV-1513SEB-VSS |
| JOHN L. MONTANA, JR., MELVIN R. LYTTLE, PAUL E. KNIGHT, VIOLET GAIL ELDRIDGE, WORLDWIDE T&P, INC., FIRST NATIONAL EQUITY, LLC, P.K. TRUST & HOLDING, INC., and UTA-BVI, LTD., | : | |
| Defendants, | : | |
| and | : | |
| THE UNITED TRIBES OF THE AMERICAS, INC. and EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC., | : | |
| Relief Defendants. | : | |

### DEFENDANTS UTA-BVI, LTD, VIOLET GAIL ELDRIDGE AND RELIEF DEFENDANTS THE UNITED TRIBES OF THE AMERICAS, INC., AND EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.'S REPLY TO PLAINTIFF'S SURREPLY.

Defendants UTA-BVI, Ltd, Violet Gail Eldridge and relief defendants the United Tribes of

the Americas, Inc., and Executive Bureau of Research and Recovery, Inc., ("Moving

1

Defendants") respectfully submit this reply brief in support of their Motion to Dismiss, and responding to the Plaintiff's surreply (Doc. #47).

Plaintiff argues in its surreply that this Court has personal jurisdiction over the Moving Defendants and that venue is proper in this District. However, under statute and applicable case law, and according to the uncontroverted facts provided in the Affidavit attached as an exhibit to the Motion to Dismiss, this Court does not have personal jurisdiction over the Moving Defendants, and venue is not properly laid in this District.

**I.      This Court does not have Personal Jurisdiction over the Moving Defendants Based on the Service of Process Provision Contained in the Investment Advisers Act of 1940.**

In lieu of adhering to the personal jurisdiction provisions of Section 214 of the Investment Advisers Act of 1940 ("Advisers Act"), [15 U.S.C. §80b-14],  Plaintiff argues that the Court should ignore the statutory requirements, due process requirements and applicable case law and should instead interpret Section 214 of the Advisers Act as conferring personal jurisdiction over any defendant in *any* federal court.  There is absolutely no precedence for this request.   Plaintiff has been unable to cite a single case which supports Plaintiff's proposition that the service of process provision of Section 214 of the Advisers Act confers personal jurisdiction over Moving Defendants in *any* federal district court.  There is, however, case law supporting Moving Defendant's position that the statutory requirements under Section 214 of the Advisers Act must be met for conferring personal jurisdiction under the Advisers Act, and that the controversy or defendant must have sufficient contact with the forum to give the court the right to exercise judicial power over the defendant. *SEC v. Myers,* 285 F.Supp. 743 (Md., 1968).

Plaintiff's argument for the Court to constre the Advisers Act service of process provision

and thereby obliterate any personal jurisdiction requirements is reliant upon Plaintiff's

misapplication of case law and misstatements of facts.

Plaintiff's Misapplication of Case Law

Plaintiff misquotes Section 214 of the Advisers Act on page 2 of the surreply, ("other" is

mysteriously inserted) and claims that the same provision is found in Section 27 of the Securities

Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78aa]. Plaintiff then cites *Abramson v.*

*INA Captial Management Corp.*, 459 F.Supp. 917, 919 n.2 (E.D.N.Y.1978) as stating the service

of process provision of the Advisers Act has the identical meaning as the similar phrase contained

in the Exchange Act. This is a blatant misrepresentation of *Abramson*.

First, the provisions actually shared by the Advisers Act and the Exchange Act which

Abramson deemed to be nearly identical in interpretation is the jurisdiction and venue phrase,

"wherein any act or transaction constituting the violation occurred." *Abramson*, 919 n.2. Second,

*Abramson* only addresses venue under the Advisers Act. It does not address personal jurisdiction

at all, as Plaintiff implies. The footnote cited by Plaintiff in the *Abramson* case actually supports

Moving Defendants' argument that in order to establish venue, as will be shown ins Section

II., below. Plaintiff must allege an act or transaction regarding the alleged scheme of Moving

Defendants occurred in Indiana. Plaintiff has failed to make any such allegation.

Plaintiff is making no effort to show connections between Moving Defendants and

Indiana. Rather, Plaintiff is attempting to show contacts between Moving Defendants and the

United States. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, is cited by

Plaintiff for its holding that the nationwide service of process provision of the Exchange Act (not

the Advisers Act) confers personal jurisdiction over a defendant in *any* federal district, if the

3

defendant has sufficient contacts with the United States. *Vigman* limited its broad interpretation of

personal jurisdiction to Exchange Act Section 10(b) and Rule 10b-5 claims, and bases this

interpretation on the underlying policies of these laws. *Vigman*, 1313. Other districts have

considered the same multi-defendant securities fraud jurisdiction issue as *Vigman*, and come to

opposite conclusions, deciding that the provision in the Exchange Act providing for nationwide

service of process does not confer personal jurisdiction in *any* federal district court. *Poling V.*

*Farrah*, 131 F.Supp.2d 191 (D.C., 2001)

Vigman* relates jurisdiction only to violations of Section 10(b) of the Exchange Act and in

no way relates to the Advisers Act. In *Vigman* there were 75 defendants in diverse jurisdictions,

all of whom were alleged to have been involved in the same securities fraud scheme. Often

securities fraud cases brought under Section 10(b) of the Exchange Act involve multiple

defendants located in diverse jurisdictions. *Vigman* interpreted personal jurisdiction broadly in

order to avoid "duplicitous litigation and inconsistent results," *Vigman*.1317. The possible

multiplicity of suits in different jurisdictions based on the same issues, same parties, same scheme,

and same facts is not an issue in this case. In fact, none of the *Vigman* factors are present with

respect to Moving Defendants, or the Advisers Act.  Moving Defendants are not alleged to have

violated Section 10(b) of the Exchange Act.  There are not multiple defendants in diverse

jurisdictions alleged to have violated the Advisers Act.  Only one Defendant, UTA-BVI, is alleged

to have violated the Advisers Act. (Compl. ¶ 80.) The other Moving Defendants are alleged to

have "aided and abetted" or are relief defendants only. (Compl. ¶ 83.)  A claim against UTA-BVI

for violation of the Advisers Act should be brought in a court which has personal jurisdiction over

UTA-BVI. There is no compelling reason to ignore personal jurisdiction requirements in order to

4

file a suit against Moving Defendants in the same jurisdiction as the remaining defendants. There are completely separate alleged schemes, separate violations alleged for different Acts, and entirely independent and distinct issues of fact. Plaintiff has made no showing the District Court in Southern Indiana has personal jurisdiction over Moving Defendants.

*GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C.Cir.2000) considered whether Section 12 of the Clayton Act [15 U.S.C. § 22] (which contains language similar to the service of process language of Section 27 of the Exchange Act), allows a court to exercise nationwide personal jurisdiction over a defendant. The court of appeals rejected an interpretation that would allow a court to exercise nationwide personal jurisdiction. This decision upholds the limitation of a broad venue interpretation to the Exchange Act. There is no precedence for expanding the occasionally broad interpretation of the Exchange Act to other Acts, including the Advisers Act, and therefore this Court should reject Plaintiff's argument that there is a sufficient basis for the Court to exercise personal jurisdiction over Moving Defendants.

<u>Plaintiff's Misstatements of Fact</u>

Plaintiff, in its surreply, page 3, states that, "it is undisputed that the *violations* of the Moving Defendants, as alleged in the Complaint, occurred within the United States." (emphasis added.) That is a misstatement of fact. Moving Defendants vehemently dispute that the Complaint alleges any acts, practices or courses of business which are *violations* of the Advisers Act, and clearly elucidated this dispute in their Motion to Dismiss, II.a., page 2. Because there is no act alleged in the Complaint which is a violation, it is impossible to state that this non-existent act occurred in the United States. The issue that Plaintiff failed to allege an act which violates the Advisers Act is a critical element to personal jurisdiction, venue, subject matter jurisdiction and

5

failure to state a claim

Plaintiff makes another false statement when is asserts in its surreply, page 3, the "Complaint alleges ... that Eldridge and UTA-BVI made use of the mails and instrumentalities of interstate commerce to defraud First National Equtiy and P.K. Trust (Compl., at ¶¶ 4, 79.)" Paragraph 79 of the Complaint is a conclusory statement that UTA-BVI (not Eldridge) "while acting as an investment adviser," used the mails or instrumentalities of interstate commerce to defraud its "clients or prospective clients." The Complaint does not allege that P.K. Trust or First National Equity were clients of UTA-BVI. Paragraph 4 does not describe any actions by which UTA-BVI (nor Eldridge), as an investment adviser, used mails or instrumentalities of interstate commerce to defraud First National Equity and P.K. Trust.

Plaintiff in its surrpely, page 3, second paragraph, follows its two misstatements described above, with the following: "These facts provide a sufficient basis for this Court's exercise of personal jurisdiction over each of these defendants pursuant to Section 214 of the Advisers Act." The "facts" are clearly misstatements, and are therefore insufficient basis for the Court to exercise personal jurisdiction over Moving Defendants.

### Conclusion

Plaintiff has provided no basis in fact, policy, statute or case law for the Court to exercise personal jurisdiction over Moving Defendants, therefore the Motion to Dismiss for lack of personal jurisdiction should be granted.

**II.    Venue Is Not Proper in a District Where No Act of Material Importance to Consummation of a Scheme was Committed by Any Defendant.**

Plaintiff has alleged in its Complaint two separate and distinct "schemes" or claims, based

6

on two separate Acts. There is no cross-over of defendants. None of the defendants in one "scheme" are also defendants in the other "scheme." Plaintiff offers no justification for filing its claim against Moving Defendants in the same Complaint as it has filed its claim against the remaining Non-moving Defendants. The two causes of action need not and should not have been filed together. Plaintiff seems to be asserting in its surreply that the mere action of Plaintiff filing two separate actions in one Complaint should transform an improper venue for Moving Defendants into a proper venue. Plaintiff's act of filing two separate cases on one Complaint should not be a consideration, and certainly not the sole determining factor, for deciding whether venue for Moving Defendants is properly laid in the Southern District of Indiana.

Plaintiff cites case law under Section II of its surreply. All the cases cited there have common aspects. They all relate solely to venue under the Exchange Act; they all involve several defendants from different jurisdictions; and the defendants whose venue is at issue are all alleged co-conspirators in securities fraud violations of Section 10(b) of the Securities Act. None of the cases use the "co-conspirator" theory of venue to determine venue under the Advisers Act. There is no allegation in the Complaint that Moving Defendants are co-conspirators in a multiple defendant securities fraud scheme, or any multi-defendant scheme. There is no indication in the Complaint, or in the surreply, that Moving Defendants were in any way "in league" with the remaining defendants in this case. There is no basis for applying these cases or the "co-conspirator theory of venue" to Moving Defendants or to the Advisers Act.

Plaintiff is borrowing cases relating to the Exchange Act rather than the Advisers Act, and is asking the Court to consider cases using a co-conspirator theory of venue relating only to the Exchange Act as being more relevant than cases which actually address the venue issues of the

Advisers Act, such as *Abramson,* 919 . The *Abramson* Court provides that venue for the Advisers

Act is proper in a civil suit in the district where (1) any act or transaction constituting the violation

occurred; (2) the defendant is an inhabitant; or (3) a defendant transacts business. Plaintiff has

made no effort to assert that any of the venue requirements are met by Moving Defendants.

     In this matter, Plaintiff is attempting to join together two entirely separate actions into one

suit, and to borrow the venue from one claim to create a venue for the other claim. Plaintiff

advocates this co-conspirator approach to venue "to avoid unnecessary multiplictiy of suits and

fragmentation of issues." There is no issue in this case of fragmentation of issues, or unnecessary

multiplicity of suits. Two separate "schemes" are still two separate "schemes" whether they are

both included in one Complaint, or are separated into two Complaints. There is no policy issue in

this case which justifies Plaintiff's argument that this Court should create a new theory of venue

for the Advisers Act.

     Plaintiff again misrepresents in its surreply allegations it made in the Complaint. Plaintiff

seems to be asserting that venue over Lyttle in the Southern District of Indiana should be extended

to Moving Defendants. Plaintiff states that the Complaint alleges "that part of Lyttle's scheme

consisted of the transfer of investor money he had raised to Defendant Eldridge's company,

Defendant UTA-BVI, Ltd. (Compl ¶ 30)." The Complaint nowhere claims that a transfer of a

portion of funds raised by Lyttle to UTA-BVI was a "part of Lyttle's scheme," nor does the

Complaint allege that UTA-BVI is "Eldridge's company." It is nowhere alleged in the Complaint

that a transfer of funds was of material importance to consummation of Lyttle's scheme to defraud,

or that UTA-BVI was a co-conspirator in his scheme to defraud.

     Plaintiff has not met the statutory venue requirements to pursue the Advisers Act claim

Exhibit B

against Moving Defendants in this Court.  Plaintiff has provided no allegations of fact or

application of case law to support its proposition that the coconspirator theory of venue for the

Exchange Act should override the statutory provisions of the Advisers Act, and supporting case

law. Venue is not proper in this district with respect to the claim against Moving Defendants, and

therefore the Motion to Dismiss should be granted

    Dated: March 8, 2004

Respectfully Submitted,

Katherine Crase
Attorney for Defendants
UTA-BVI and Eldridge
and Relief Defendants
2804 Aquilla Street
Tampa Florida 33629
Telephone: 813-251-2684

9

DO NOT REMOVE FROM MAIN VOLUME

## § 1351 DEFENSES—OBJECTIONS—PRESENTATION   Ch. 4

A successful challenge under Rule 12(b)(2) normally will result in an order dismissing the action.[36] However, the denial of a motion to dismiss a complaint for a lack of jurisdiction over defendant's person or a lack of in rem or quasi-in-rem jurisdiction,[37] or the grant of such a motion that does not dispose of the entire action[38] is not a final adjudication and generally is not appealable. Nor does the grant of a Rule 12(b)(2) motion prejudice plaintiff's right to file another complaint in the expectation that

**36. Right to order**

"It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss." Read v. Ulmer, C.A.5th, 1962, 308 F.2d 915, 917 (Jones, J.).

Compare

When the complaint listed all 15 members of the board of directors of the community action agency individually as defendants but in fact served only one member with process, and when the other 14 members offered no evidence that they could not be properly served, a dismissal was not warranted but the case was retained and it was noted that defendants' objections to lack of personal jurisdiction were well taken. Hill v. Shanks, D.C.Ill.1975, 403 F.Supp. 1368, 1370, citing Wright & Miller.

But compare

Although the United States District Court for the Eastern District of Pennsylvania lacked personal jurisdiction over defendant physician, a Nebraska resident, and the professional corporation that employed him, in a medical malpractice action brought against them by a patient's widow, a citizen of Pennsylvania and administratrix of her husband's estate, based on the physician's alleged negligent treatment of her husband in Nebraska, the court would, as an alternative to dismissal, grant plaintiff's unopposed request for transfer of the case to Nebraska. Kurtz v. Draur, D.C.Pa.1977, 434 F.Supp. 958.

**37. Appealability of denial of motion**

American Concrete Agricultural Pipe Ass'n v. No-Joint Concrete Pipe Co., C.A.9th, 1964, 331 F.2d 706.

Shaheen v. Government of Guam, C.A. 9th, 1965, 223 F.2d 773.

An order denying a motion to dismiss the complaint for lack of personal jurisdiction is not a final order and is not appealable; a writ of prohibition cannot be used as a substitute for an appeal, nor should a writ of mandamus be used to circumvent the policy against appellate review of interlocutory orders. Columbia Boiler Co. v. Hutcheson, C.A.4th, 1965, 222 F.2d 718.

See also

Love v. Moore, 1982, 291 S.E.2d 141, 145, 305 N.C. 575, citing Wright & Miller.

**38. Grant of motion not dispositive**

When the original complaint was dismissed as to defendant but the action had never been planned, it remained pending, and the dismissal was not a final decision and was not appealable. Jones v. Coakley, C.A. 9th, 1969, 418 F.2d 1238.

An order quashing service of process on two nonresident defendants in a stockholders' derivative action to recover damages from certain directors for alleged mismanagement and fraud was not a final order from which an appeal would lie, as it would not fragment the action or be a final adjudication. Beury v. Beury, C.A.4th, 1965, 222 F.2d 4f<.

## Ch. 4   IMPROPER VENUE   § 1352

the court will be able to obtain jurisdiction.[39] A party who has unsuccessfully raised an objection under Rule 12(b)(2) may proceed to trial on the merits without waiving the challenge.[40]

### § 1352. —— Improper Venue

Rule 12(b)(3) requires the defense of improper venue to be raised either by a motion to dismiss,[1] or in a responsive pleading;[2] Objections to venue typically stem from a failure to adhere to the

**39. File another complaint**

Kendall v. Overseas Dev. Corp., C.A.9th, 1983, 700 F.2d 536, 539, citing Wright & Miller.

It was unwarranted for the district court to quash service with prejudice to the commencement of another action in the district or in any other district court within the state of California. Thomas v. Furness (Pac.) Ltd., C.A.9th, 1948, 171 F.2d 434, certiorari denied 69 S.Ct. 1022, 337 U.S. 960, 93 L.Ed. 1769.

In Orange Theatre Corp. v. Rayherstz Amusement Corp., C.A.3d, 1944, 139 F.2d 871, 875, certiorari denied 64 S.Ct. 1057, 322 U.S. 740, 88 L.Ed. 1573, the court said: "The dismissal of the complaint in such a situation, however, results solely from the lack of jurisdiction of the court and is, therefore, not an adjudication of the merits of the cause of action. Consequently such a dismissal does not prejudice the right of the plaintiff to file another complaint when and if it appears that the court may obtain jurisdiction of the person of the defendant." (Maris, J.)

Biechele v. Huton, D.C.Mont.1957, 153 F.Supp. 62, 68.

See also

When an association had not been served with process and moved to be dismissed from the proceeding, but service was accomplished before the district judge ruled on the motion, the association should not have been dismissed from the action. Consolidation Coal Co. v. Disabled Miners of Southern West Virginia, C.A.4th, 1971, 442 F.2d 1261, certiorari denied 92 S.Ct. 228, 404 U.S. 911, 30 L.Ed.2d 184.

Jurko v. Jobs Europe Agency, 1975, 334 N.E.2d 478, 484, 43 Ohio App.2d 79, 72 Ohio Op.2d 287, citing Wright & Miller.

**40. Trial not waiver**

Hunt v. BP Exploration Co. (Libya) Ltd., D.C.Tex.1980, 492 F.Supp. 885, 895, citing Wright & Miller.

Speir v. Robert C. Herd & Co., D.C.Md. 1960, 189 F.Supp. 436.

See also

In re Appeal in Maricopa County, Juvenile Action No. JS-734, 1975, 543 P.2d 454, 460, 25 Ariz.App. 333, citing Wright & Miller.

**1. Motion to dismiss**

Snyder v. Smith, C.A.7th, 1984, 736 F.2d 409, certiorari denied 105 S.Ct. 513, 469 U.S. 1037, 83 L.Ed.2d 403.

In Hoopeh Coal Co. v. Chaco Energy Co., C.A.10th, 1982, 673 F.2d 1161, certiorari denied 102 S.Ct. 2299, 456 U.S. 1007, 73 L.Ed.2d 1302, the court ruled that improper venue could not be raised by filing a suit for injunctive relief in a separate forum, but must be raised in compliance with Rule 12(b).

Moore v. Coats Co., C.A.3d, 1959, 270 F.2d 410.

**2. Responsive pleading**

It is error for a judge to dismiss for improper venue in the absence of a motion by a party. Concession Consultants, Inc. v. Mirisch, C.A.2d, 1966, 355 F.2d 369.

2. See note 2 on page 262.

DO NOT REMOVE FROM MAIN VOLUME

## § 1352 DEFENSES—OBJECTIONS—PRESENTATION Ch. 4
Rule 12

requirements specified in Section 1391 of Title 28 or some other statutory venue provision.[3] In recent years, however, there have

Blackmar v. Guerre, CA.5th, 1951, 190 F.2d 427, affirmed 1952, 72 S.Ct. 410, 342 U.S. 512, 96 L.Ed. 534.

Montgomery Ward & Co. v. Anderson Motor Serv., Inc., D.C.Mo.1971, 339 F.Supp. 713, 718 n. 3.

Motion to dismiss granted on condition that if the action is filed in another district within 60 days, the defendant will appear without further service of process. Rothenberg v. Silberman, D.C.N.Y.1968, 278 F.Supp. 116.

Ove Gustavsson Contracting Co. v. Floete, D.C.N.Y.1959, 176 F.Supp. 544, affirmed CA.2d, 1960, 278 F.2d 912, certiorari denied 81 S.Ct. 225, 364 U.S. 894, 5 L.Ed.2d 188.

Tuscarora Nation of Indians v. Power Authority of State of New York, D.C.N.Y.1958, 161 F.Supp. 702, modified CA.2d, 1958, 257 F.2d 885, certiorari denied 79 S.Ct. 66, 358 U.S. 841, 3 L.Ed.2d 76.

Walkinshaw v. Pennsylvania, D.C.Pa.1954, 119 F.Supp. 722.

Newmark v. Abeel, D.C.N.Y.1952, 106 F.Supp. 758.

An action in a New York district court was dismissed for improper venue as to a foreign corporation that was not licensed to do business in New York. Dewens v. M.A. Henry Co., D.C.N.Y. 1948, 8 F.R.D. 368.

See also

Spencer v. Dixon, D.C.La.1968, 290 F.Supp. 531.

2. Responsive pleading

Weigand v. Long Transp. Co., D.C.Pa.1960, 25 F.R.D. 496.

Friele v. Schafer, D.C.Mont.1959, 177 F.Supp. 654.

Heiss v. Nielsen, D.C.Neb.1955, 132 F.Supp. 541.

3. Plaintiffs' or defendant's residence

The fact that an Illinois company was a California distributor for California corporation, subject to the control of the California corporation in that it reserved the right to terminate the distributorship, did not constitute a "regular and established place of business" for the California corporation in Illinois for purposes of establishing venue under the patent action venue statute. Grantham v. Challenge-Cook Bros., Inc., CA.7th, 1969, 420 F.2d 1182.

Venue in a civil RICO action would not lie within the Southern District of California when the plaintiff failed to show that the defendants resided, could be found, had an agent, or transacted affairs in the district, as required by the RICO venue and jurisdiction statute. Damiani v. Adams, D.C.Cal.1987, 657 F.Supp. 1409.

Emmerling v. Cobb, D.C.Mass.1986, 642 F.Supp. 1075.

Venue in a stockholder's derivative suit would not lie within the Southern District of New York under the statute authorizing suits in the judicial district in which all plaintiffs or all defendants reside, when plaintiffs were residents of Ohio, and two defendants were residents of New Jersey, and another defendant was a resident of Massachusetts. Industrial Waxes, Inc. v. International Rys. of Cent. America, D.C.N.Y.1961, 193 F.Supp. 783.

Marshall v. Mole Constructors, D.C.Pa.1961, 193 F.Supp. 617.

When plaintiff resided in the Eastern District of New York, venue of his action against a North Carolina corporation for breach of employment agreement lay in that district, and whether defendant resided in the Eastern or Southern District of New York was immaterial. Bartlett v.

## Ch. 4 IMPROPER VENUE § 1352
Rule 12

been a number of venue motions based on forum selection clauses in contracts.[4]

On a motion under Rule 12(b)(3), facts must be shown that will defeat plaintiff's assertion of venue.[5] A number of courts

Hudson Hosiery Co., D.C.N.Y.1960, 183 F.Supp. 1.

Roark v. Bauer, D.C.Ohio 1960, 181 F.Supp. 330.

Wolkstein v. Port of New York Authority, D.C.N.J.1959, 178 F.Supp. 209.

28 U.S.C.A. § 1391(e)

A federal savings and loan association was not "an agency of the United States" within the statute providing that civil actions in which the defendant is an agency of the United States may be brought in any judicial district in which plaintiff resides if no real property is involved and therefore the proper venue of the suit against the association was not the district in which plaintiff resided, but the suit would have to be dismissed. Masterson v. First Fed. Sav. & Loan Ass'n of Torrington, D.C.N.Y.1971, 53 F.R.D. 313.

4. Forum selection clause

Commerce Consultants Int'l, Inc. v. Veterite Runite, S.P.A., CA.1989, 867 F.2d 697, 276 U.S.App.D.C. 81.

Defendant in a suit to compel arbitration sufficiently raised in the motion to dismiss his contention that the district court in Illinois could not enter an order to compel arbitration because of the forum selection clause in the parties' agreement requiring arbitration in Texas, even though the defense, asserting lack of personal jurisdiction, was not labeled as one of venue, when the argument was clearly laid out in the discussion of personal jurisdiction. Snyder v. Smith, CA.7th, 1984, 736 F.2d 409, certiorari denied 105 S.Ct. 513, 469 U.S. 1037, 83 L.Ed.2d 403.

Grossman v. Citrus Associates of the New York Cotton Exchange, Inc., D.C.N.Y.1988, 706 F.Supp. 221 (Rule

5. Facts shown

It was not error to overrule a motion to dismiss a diversity action commenced in Oregon for improper venue under a statute providing for the California residence of the suit is laid in the wrong district when facts showed that defendants were residents of Oregon and citizens of Nevada. Arley v. United Pac. Ins. Co., CA.9th, 1967, 379 F.2d 183, certiorari denied 88 S.Ct. 1008, 390 U.S. 950, 19 L.Ed.2d 1140.

Totalplan Corp. of America v. Lure Camera, Ltd., D.C.N.Y.1985, 613 F.Supp. 451.

When plaintiff resided in South Carolina, and defendant had its residences in North Carolina, a motion to dismiss for improper venue was denied since the venue of the action to recover damages sustained by defendants to plaintiff under a licensing agreement was where the payment was to be performed, which was in the county where plaintiff maintained its offices. Deering Milliken Research Corp. v. Textured Fibres, Inc., D.C.N.Y.1970, 310 F.Supp. 491.

When citizens and residents of Connecticut instituted a diversity action for damage sustained in an automobile collision on the Pennsylvania turnpike in the Middle District of Pennsylvania, one defendant was a corporation organized under the laws of Pennsylvania and the other defendant was a corporation organized under the laws of Ohio, the action should have been brought in the District of Connecticut where plaintiffs resided or the Middle District of Pennsylvania where the collision occurred, and it was not

DO NOT REMOVE FROM MAIN VOLUME

## § 1352 DEFENSES—OBJECTIONS—PRESENTATION   Ch. 4
Rule 12

have concluded that the burden of doing so is on defendant, since venue is a "personal privilege" and a lack of venue should be established by the party asserting it.[4] On the other hand, several courts have imposed the burden on plaintiff[5] in

properly instituted in the Eastern District of Pennsylvania. Granger v. Kemm, Inc., D.C.Pa.1966, 250 F.Supp. 644.

U.S. for Use & Benefit of M.G.M. Constr. Co. v. Aetna Cas. & Sur. Co., D.C. Cal.1963, 38 F.R.D. 418.

Facts disclosed by an uncontroverted affidavit submitted by one of the defendants in support of motions to dismiss the actions on the ground that venue was improper would be accepted as true by the federal district court. Ohio-Midland Light & Power Co. v. Ohio Brass Co., D.C.Ohio 1982, 221 F.Supp. 405.

Defendant who failed to offer even an affidavit to show that it was not doing business in the district, as it asserted in its motion to dismiss for lack of jurisdiction, although not in its motion to dismiss for improper venue, did not meet the burden of proving the defense of improper venue. Goldberg v. Wharf Constructers, D.C.Ala. 1962, 209 F.Supp. 499.

### 6. Defendant's burden

The defendant, ordinarily should bear the burden of showing improper venue in connection with a motion to dismiss. Myers v. American Dental Ass'n, C.A.3d, 1982, 695 F.2d 716, certiorari denied 103 S.Ct. 2453, 462 U.S. 1106, 77 L.Ed.2d 1333.

When defendants filed a motion to dismiss the complaint for improper venue, the burden was on them to show that neither of them was a resident of a division of the district in which the action was filed. U.S. v. Orshek, C.A. 8th, 1947, 164 F.2d 741.

United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO, Local 102 v. Lee Rubber & Tire Corp., D.C.N.J.1967, 269 F.Supp. 708, 715, affirmed C.A.3d, 1968, 394 F.2d 362, certiorari denied 89 S.Ct. 705, 393 U.S. 835, 21 L.Ed.2d 105.

S.D. Warren Co. v. Engleman, D.C.Pa. 1988, WESTLAW—1988 WL 115700.

When defendant introduced a deposition supporting his claim that a one-room office was maintained primarily as a telephone convenience and a place to receive mail, plaintiff must indicate the volume of sales to show that defendant was "doing business" in the district. Sohl v. Interstate Folding Box Co., D.C.Pa.1954, 123 F.Supp. 376, vacated on other grounds D.C.Pa.1955, 133 F.Supp. 7.

When defendant had the legal capacity as a corporation to do business in a certain district, it must prove its failure to exercise that capacity. Hintz v. Austenal Labs., Inc., D.C.N.Y.1952, 105 F.Supp. 187.

### 7. Burden on plaintiff

Bartholomew v. Virginia Chiropractors Ass'n, Inc., C.A.4th, 1979, 612 F.2d 812, certiorari denied 100 S.Ct. 2158, 446 U.S. 938, 64 L.Ed.2d 791.

Weller v. Cromwell Oil Co., C.A.6th, 1974, 504 F.2d 927.

Grantham v. Challenge-Cook Bros., Inc., C.A.7th, 1969, 420 F.2d 1182.

First Financial Leasing Corp. v. Hartge, D.C.Ill.1987, 671 F.Supp. 538.

Wood v. Barnette, Inc., D.C.Va.1966, 648 F.Supp. 936.

Payne v. Marketing Showcase, Inc., D.C.Ill.1985, 602 F.Supp. 656.

Pfeiffer v. International Academy of Biomagnetic Medicine, D.C.Mo.1981,

## Ch. 4   IMPROPER VENUE   § 1352
Rule 12

keeping with the rule applied in the context of jurisdiction defenses.[8] The latter view seems correct inasmuch as it is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue. There seems to be little justification for distinguishing between the two in determining the placing of the burden. If a defect in venue is not demonstrated, the court will deny the motion to dismiss. However, motions under Rule 12(b)(3) also may be denied or held in abeyance whenever the court determines that further information is needed in order to establish clearly whether venue is proper.[9] The court cannot raise a venue objection on

521 F.Supp. 1331, 1336, citing Wright & Miller.

Pocahontas Supreme Coal Co. v. National Mines Corp., D.C.N.Y.1981, 90 F.R.D. 67.

Holfield v. Power Chem. Co., D.C.Md. 1974, 382 F.Supp. 388.

The burden of showing proper venue is on plaintiff in a patent infringement action. Archer Daniels Midland Co. v. Ralston Purina Co., D.C.Ill.1971, 321 F.Supp. 262.

Ryan v. Glenn, D.C.Miss.1971, 52 F.R.D. 185.

United Indus. Corp. v. Nuclear Corp. of America, D.C.Del.1964, 237 F.Supp. 971.

Bruner v. Republic Acceptance Corp., D.C.Ark.1961, 191 F.Supp. 200.

Wentling v. Popular Science Publishing Co., D.C.Pa.1959, 176 F.Supp. 652.

When the only evidence introduced by plaintiff to show that the action was brought in a district of proper venue was obtained by abuse of process so that the evidence was suppressed, defendant's motion to dismiss was granted. Newmark v. Abeel, D.C. N.Y.1952, 106 F.Supp. 758.

Pfeiffer v. United Booking Office, D.C. Ill.1950, 93 F.Supp. 363.

See generally

McGhan v. F.C. Hayer Co., D.C.Minn. 1949, 84 F.Supp. 540 (involving 15 U.S.C.A. § 15) (semble).

### § 1352
Rule 12

### 8. Burden regarding jurisdiction

See vol. 5, § 1206, and §§ 1350, 1351 in this volume.

### 9. More information necessary

When defendant failed to specify the names and addresses of witnesses for whose convenience transfer was sought, the motion would not be precluded from making a subsequent motion to transfer on a new representation of facts. Tenpenny v. U.S., C.A.6th, 1960, 285 F.2d 213.

Ingram Indus., Inc. v. Nowicki, D.C.Ky. 1981, 527 F.Supp. 683, 685, 687, quoting Wright & Miller.

Phoenix Canada Oil Co. v. Texaco, Inc., D.C.Del.1978, 78 F.R.D. 445, 452, citing Wright & Miller.

A motion to sever and dismiss for improper venue would be denied without prejudice to renew at the close of pretrial discovery when further discovery might show that an alleged trust that was not actually a trust but an incorporated association which could be sued directly, when a ruling was anticipated in a case involving the issue whether the Securities Exchange Act would take precedence over the narrow venue provision of the National Bank Act and when the court had been designated by the Judicial Panel on Multidistrict Litigation to conduct consolidated pretrial proceedings. In re National Student Marketing Litigation, D.C.D.C.1976, 413 F.Supp. 1159.

**Exhibit B**

DO NOT REMOVE FROM MAIN VOLUME

## § 1351    DEFENSES—OBJECTIONS—PRESENTATION    Ch. 4
Rule 12

greater detail in a later section of this chapter[28] and under Rule 13.[29] On the motion, plaintiff bears the burden to establish the court's jurisdiction, which normally is not a heavy one, although the standard of proof may vary depending on the procedure used by the court in making its determination.[27]

**25.  Effect of asserting counterclaim**

See § 1397.

**26.  Rule 13**

Rule 13 is discussed in vol. 6, §§ 1401–1437.

**27.  Burden on plaintiff**

In ruling on a motion to dismiss for lack of personal jurisdiction, if the district court chooses to rely on pleadings and affidavits alone, plaintiff need make only a prima facie showing of jurisdiction, while if the court holds an evidentiary hearing plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. CutCo Indus., Inc. v. Naughton, C.A.2d, 1986, 806 F.2d 361.

If the trial court rules on the issue without an evidentiary hearing, dismissal for lack of jurisdiction over the person of a nonresident defendant is appropriate only if plaintiff has failed to make a prima facie showing of jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., C.A.9th, 1986, 796 F.2d 299.

Reuber v. U.S., C.A.1986, 787 F.2d 599, 252 U.S.App.D.C. 43, citing Wright & Miller.

To defeat a motion to dismiss for lack of personal jurisdiction, plaintiff must demonstrate by a preponderance of the evidence that in personam jurisdiction exists. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., C.A.2d, 1984, 751 F.2d 117.

If the district court chooses not to conduct a full-blown evidentiary hearing on a pretrial motion to dismiss for lack of personal jurisdiction, plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials, even though plaintiff eventually must

establish jurisdiction by a preponderance of the evidence either at a trial evidentiary hearing or at trial and, before the hearing is held, a prima facie showing suffices notwithstanding any controverting presentation by the moving party to defeat the motion. Marine Midland Bank v. Miller, C.A.2d, 1981, 664 F.2d 899.

Welsh v. Gibbs, C.A.6th, 1980, 631 F.2d 436, certiorari denied 101 S.Ct. 1517, 450 U.S. 981, 67 L.Ed.2d 816.

Upon a motion to dismiss for lack of personal jurisdiction, the burden varies according to the nature of the pretrial proceedings in which the jurisdiction question is required initially, plaintiff must have proved by the end of the trial jurisdictional facts by the preponderance of the evidence. Forsythe v. Overmyer, C.A. 9th, 1978, 576 F.2d 779, certiorari denied 99 S.Ct. 188, 439 U.S. 864, 58 L.Ed.2d 174.

Uston v. Grand Resorts, Inc., C.A.9th, 1977, 564 F.2d 1217.

Block v. Acme Markets, Inc., C.A.8th, 1977, 564 F.2d 681, 683 n. 3.

Amba Marketing Sys., Inc. v. Jobar Int'l, Inc., C.A.9th, 1977, 551 F.2d 784.

In a suit for the breach of lumber purchase agreement brought by the seller against the alleged buyer, a nonresident foreign corporation, and against an agent thereof, the findings of the district judge, who dismissed as to the corporation for want of personal jurisdiction, determining that plaintiff failed to show by a preponderance of the evidence that the acts of defendant corporation placed it within the reach of North Carolina's long-arm statutes were not "clearly

## § 1351
Rule 12

erroneous." Marshall Exports, Inc. v. Phillips, C.A.4th, 1974, 507 F.2d 47.

Product Promotions, Inc. v. Cousteau, C.A.5th, 1974, 495 F.2d 483, 491, citing Wright & Miller.

Mosley v. Nationwide Purchasing, Inc., Temp.Em.Ct.App.1973, 485 F.2d 418.

Plaintiff may meet his burden of proof on a Rule 12(b)(2) motion by a prima facie showing that jurisdiction was conferred by service under a long-arm statute. O'Hare Int'l Bank v. Hampton, C.A.7th, 1971, 437 F.2d 1173.

McClelland v. Watling Ladder Co., D.C.Okl.1990, 729 F.Supp. 1316.

Cable News Network, Inc. v. Video Monitoring Servs. of America, Inc., D.C.Ga.1989, 723 F.Supp. 765.

Perez-Rubio v. Wyckoff, D.C.N.Y.1989, 718 F.Supp. 217.

A motion under Rule 12(b)(2) should be denied if the plaintiff's showing can support a reasonable inference that the defendant is subject to jurisdiction. Stephens v. Coleman, D.C.Ga. 1989, 712 F.Supp. 1571.

LaRose v. Sponco Mfg. Inc., D.C.N.J. 1989, 712 F.Supp. 455.

Picard v. Elbaum, D.C.N.Y.1989, 707 F.Supp. 144 fall plaintiff need do is make out a prima facie case of jurisdiction).

On a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to show by a preponderance of the evidence that the court has personal jurisdiction over the defendant. Combs v. Bakker, D.C.N.C. 1986, 692 F.Supp. 596, vacated on other grounds C.A.4th, 1988, 886 F.2d 673.

Cavalier Label Co. v. Polytam, Ltd., D.C. N.Y.1988, 687 F.Supp. 872 (absent evidentiary hearing plaintiff needs only to make prima facie case).

Atlanta Corp. v. Polskie Linie Oceaniczne, D.C.N.Y.1988, 683 F.Supp. 347 (prima facie showing).

Newport Components, Inc. v. NBC Home Elecs. Inc., D.C.Cal.1987, 671 F.Supp. 1525 (prima facie showing).

Huang v. Sentinel Government Secs., D.C.N.Y.1987, 657 F.Supp. 485 (prima facie case if no evidentiary hearing).

Mac's Eggs, Inc. v. Rite-Way Agri Distributors, D.C.Ind.1986, 656 F.Supp. 720.

NI. Industries, Inc. v. Gulf & Western Indus., Inc., D.C.Kan.1986, 650 F.Supp. 1115.

In the context of a motion to dismiss for lack of personal jurisdiction, the plaintiff must go beyond the pleadings and make an affirmative proof, by affidavits or otherwise, showing that the court has jurisdiction. Catrone v. Ogden Suffolk Downs, Inc., D.C.Mass.1986, 647 F.Supp. 850.

S & S Screw Mach. Co. v. Cosa Corp., D.C.Tenn.1986, 647 F.Supp. 600.

Sayers v. Automated Transp., Inc., D.C. Pa.1986, 645 F.Supp. 194.

Dixon v. Ashley, D.C.Pa.1986, 640 F.Supp. 1310.

Bowers v. Weisman, D.C.N.Y.1986, 639 F.Supp. 532, 536 (only prima facie showing needed).

Morse Typewriter Co. v. Samanda Office Communications Ltd., D.C.N.Y. 1986, 629 F.Supp. 1150 (prima facie showing based on discovery limited to jurisdictional question did not relieve plaintiff of burden of showing personal jurisdiction at trial by preponderance of evidence).

Dynamic Concepts, Inc. v. Modern Chain Mfg. Co., D.C.R.I.1985, 610 F.Supp. 285.

Guardino v. American Savs. & Loan Ass'n of Florida, D.C.N.Y.1984, 593 F.Supp. 691.

Chenco Int'l Leasing, Inc. v. Meridian Engineering, Inc., D.C.N.Y.1984, 590 F.Supp. 539.

Bucks County Playhouse v. Bradshaw, D.C.Pa.1983, 577 F.Supp. 1203.

248                                                                        249

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:03-CV-1513-SEB-VSS |
| JOHN L. MONTANA, JR., MELVIN R. LYTTLE, PAUL E. KNIGHT, VIOLET GAIL ELDRIDGE, WORLDWIDE T&P, INC., FIRST NATIONAL EQUITY, LLC, P.K. TRUST & HOLDING, INC., and UTA-BVI, LTD., | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| THE UNITED TRIBES OF THE AMERICAS, INC. and EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC., | ) ) ) ) | |
| Relief Defendants. | ) | |

## ENTRY GRANTING DEFENDANTS UTA-BVI, LTD. AND VIOLET GAIL ELDRIDGE AND RELIEF DEFENDANTS UNITED TRIBES OF THE AMERICAS, INC. AND EXECUTIVE BUREAU OF RESEARCH AND RECOVERY, INC.'S MOTION TO DISMISS

This matter comes before the Court on the Motion to Dismiss filed by Defendants

UTA-BVI, LTD. ("UTA-BVI") and Violet Gail Eldridge ("Eldridge") and Relief

Defendants, the United Tribes of the Americas, Inc. ("United Tribes"), as well as

Executive Bureau of Research and Recovery, Inc.'s ("Executive Bureau") (collectively

the "Moving Defendants") directed towards Plaintiff United States Securities and

Exchange Commission's (the "SEC") claims alleging that the Moving Defendants

violated the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. § 80b-1 et

seq.  In two counts, the SEC claims that UTA-BVI, with the assistance of Eldridge,

knowingly, willingly or recklessly defrauded its clients, in violation of the Advisers Act.

The Moving Defendants moved to dismiss these claims under Rules 12(b)(1), (2), (3), and

(6), F.R.Civ. P., for lack of subject matter jurisdiction, lack of personal jurisdiction,

improper venue, and for failure to state a claim.  For the reasons explained below, we

agree venue is improper and to that extent GRANT Moving Defendants' Motion to

Dismiss.

BACKGROUND

On October 14, 2003, the SEC filed an action against four individuals and four

entities for their involvement in various schemes relating to the fraudulent sale of

approximately $30 million in investment contract securities to approximately 29 investors

in several states.  The Complaint alleges that from August 1999 until April 2000,

Defendants John L. Montana, Jr. ("Montana"), Melvin R. Lyttle ("Lyttle"), and Paul E.

Knight ("Knight") sold interests in a bank trading program which purported to invest

money in the trading of various instruments including medium term notes (the "Trading

Program").  Montana, Lyttle and Knight raised funds for the Trading Program through the

2

entities that they controlled: Lyttle's First National Equity, LLC ("First National Equity"), Knight's P.K. Trust & Holding, Inc. ("P.K. Trust") and Montana's Worldwide T&P, Inc. ("Worldwide T&P"). The SEC contends that Montana, Lyttle and Knight told investors that they could earn significant returns risk-free through the Trading Program. Approximately $24 million of the investor funds raised by Montana, Lyttle and Knight were transferred to UTA-BVI, a British Virgin Islands corporation.

The SEC asserts that, in turn, UTA-BVI and Eldridge ("Eldridge"), President of UTA-BVI, defrauded First National Equity and P.K. Trust. The alleged fraud was perpetrated through "trust management agreements," whereby UTA-BVI agreed to serve as trustee over the $24 million in investor funds transferred to it from First National Equity and P.K. Trust. Under the trust agreements, UTA-BVI was to receive compensation for services rendered plus a 0.50% participation fee in the profits generated from the trust property. Additionally, the trust agreements identified First National Equity and P.K. Trust as beneficiaries of the trust and provided that UTA-BVI would manage the trust funds for the benefit of the beneficiaries. The SEC asserts that the only investment instruction provided by the trust agreements was that UTA-BVI was to either hold uninvested trust property or invest trust property in any manner deemed in the best interest of the trust.[1]

---

[1] The trust agreements did not include provisions discussing, for example, a return on investor funds, the security of investor funds or any of the assurances that Montana, Lyttle and Knight had given to investors.

The SEC contends that UTA-BVI used its discretionary authority under the trust agreements to distribute the $24 million in investor funds among several UTA-BVI brokerage accounts controlled by Eldridge and gave sole trading authority to a broker who used the funds to engage in highly leveraged stock trading in margin accounts. The Complaint alleges that instead of managing the funds for the benefit of First National Equity and P.K. Trust, UTA-BVI used the trust funds to pay Eldridge's personal expenses and transferred funds to several bank accounts including ones she controlled in the name of the Relief Defendants, United Tribes and Executive Bureau, who the SEC asserts had no right to receive these funds.

<u>Legal Analysis</u>

A.    *Subject Matter Jurisdiction.*

Moving Defendants seek to dismiss this action with respect to themselves only. Before we consider the issues of personal jurisdiction and venue, we address the Moving Defendants' challenge to this court's subject matter jurisdiction. <u>Cook v. Winfrey</u>, 141 F.3d 322, 324 (7th Cir.1998) (finding that "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action"). The Moving Defendants argue that this court lacks subject matter jurisdiction because the SEC has failed to allege sufficient facts to constitute a violation of the Advisers Act.

In ruling on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), we accept as true all material allegations of the complaint and draw all reasonable inferences

4

in the plaintiff's favor. <u>Retired Chicago Police Assoc. v. City of Chicago</u>, 76 F.3d 856,

862 (7th Cir. 1996). The plaintiff, here the SEC, bears the burden of establishing that it

meets the required elements of standing. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

561 (1992). The Advisers Act confers jurisdiction on the district courts of the United

States to resolve "all suits in equity and actions at law brought to enforce any liability or

duty created by, or to enjoin any violation of this subchapter or the rules, regulations, or

orders thereunder." 15 U.S.C. § 80b-14. To determine subject matter jurisdiction,

therefore, we examine the Complaint to determine whether it has adequately pled a

violation of the Advisers Act; in this case we conclude it has.

Moving Defendants assertion that the Advisers Act does not apply to them as

trustees is unavailing. We agree with the reasoning of the Second Circuit in <u>Abrahamson

v. Fleschner</u> that "the SEC Report, together with the House and Senate Reports, make it

clear that [in the Advisers Act] Congress intended to reach persons who receive

compensation for investing funds of their clients. 568 F.2d 862, 871 (2d Cir. 1977).[2] The

allegations in the Complaint indicate that the trust arrangement between UTA-BVI and

National Equity Trust and P.K. Trust was established to allow UTA-BVI to manage and

invest the funds of National Equity Trust and P.K. Trust and that UTA-BVI would

receive compensation for performing this service. Consequently, this relationship falls

---

[2] The Second Circuit found that several provisions of the Advisers Act "reflect the fact
that many investment advisers 'advise' their customers by exercising control over what
purchases and sales are made with their clients' funds." <u>Id.</u>

within the type of arrangements that Congress intended to conclude under the Advisers

Act.  See Id.  The Complaint also alleges that by diverting funds from the trust for

personal use, UTA-BVI/Eldridge violated their duty to manage the trust funds for the

benefit of First National Equity and P.K. Trust, thus committing fraud under the Advisers

Act.[3]  Accordingly, we find that the Complaint adequately pleads violations of the

Advisers Act with respect to UTA-BVI and Eldridge, effectively establishing our subject

matter jurisdiction over this dispute.

     B.    *Venue.*

We next address whether the Southern District of Indiana constitutes a proper

judicial venue in which the SEC can bring charges under the Advisers Act against UTA-

BVI and Eldridge.  To determine proper venue, we first look to the language of the

Advisers Act, which provides that a civil suit "may be brought [in the district wherein any

act or transaction constituting the violation occurred] or in the district wherein the

defendant is an inhabitant or transacts business."  15 U.S.C. § 80b-14.[4]

As there are no allegations that Moving Defendants either inhabit or transact

---

[3] We also find that the facts alleged in the Complaint, if true, indicate UTA-BVI and Eldridge acted knowingly and with scienter.

[4] The Advisers Act venue provision is nearly identical to the venue provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a-43, and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and the meaning of the phrase, "wherein any act or transaction constituting the violation occurred" has been construed to be the same in all the Acts.  Abramson v. INA Capital Management Corp., 459 F. Supp. 917, 919 n.2 (E.D.N.Y. 1978) (Citing Zorn v. Anderson, 263 F.Supp. 745, 747 (S.D.N.Y. 1966)).  Accordingly, we look for guidance in the cases interpreting this same language in the Securities Exchange Act.  Id.

business in the Southern District of Indiana, venue in this district is proper only if "an act or transaction constituting the violation occurred" in this district. Under the Advisers Act, all that is necessary to confer venue on a district court is one act or transaction "within the district which represents more than an immaterial part of the allegedly illegal events." <u>Securities and Exchange Commission v. Diversified Industries, Inc.</u>, 465 F.Supp. 104, 111 (D.D.C. 1979) (citing <u>Securities and Exchange Commission v. National Student Mktg. Corp.</u>, 360 F.Supp. 284, 293 (D.D.C.1973)). Proper venue can also be established through the acts of co-conspirators such that "any allegation of a securities act violation is sufficient for venue purposes even as to a defendant who did not commit an act within the district if that defendant is *in league* with a defendant who did act within the district." <u>Levin v. Great Western Sugar Co.</u>, 274 F.Supp. 974, 978 (D.N.J. 1967) (emphasis added) (citing <u>Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey</u>, 226 F.Supp. 972 (S.D.N.Y. 1964); <u>Clapp v. Stearns & Co.</u>, 229 F.Supp. 305 (S.D.N.Y. 1964); <u>Townsend Corp. of America v. Davidson</u>, 222 F.Supp. 1 (D.N.J.1963); <u>Dauphin Corp. v. Redwall Corp.</u>, 201 F.Supp. 466 (D.Del.1962)); <u>see</u> <u>also</u> <u>Securities and Exchange Commission v. Wallace</u>, 94 F.Supp.2d 1, 2 (D.D.C. 2000) (affirming that "any material act committed by one defendant . . . in furtherance of a multi-defendant fraudulent scheme satisfies venue under the Securities Exchange Act of 1934 as to all defendants whether or not the other defendants ever committed a violation in the district").

Since the Complaint omits any allegation of an act committed within the Southern District of Indiana which was a material part of the scheme by UTA-BVI /Eldridge to

defraud First National Equity and P.K. Trust, the only basis on which this district

constitutes proper venue with respect to the Moving Defendants is through the co-

conspirator theory.  The SEC argues that venue is proper because defendant Lyttle resides

in the Southern District[5] and, through the co-conspirator theory, acts committed by Lyttle

can establish venue with respect to the Moving Defendants.  The Moving Defendants

argue that the Complaint does not indicate that UTA-BVI/Eldridge were ever "in league"

with any of the other defendants, including Lyttle, and therefore on the face of the

pleading the co-conspirator theory is not applicable in this case.  We agree with the

Moving Defendants' analysis.

The Complaint reveals that, between and among the separate groups of defendants,

there was no overarching scheme to defraud investors; instead, the Complaint alleges that

there were two distinct fraudulent schemes.  The first scheme involves efforts by

Montana, Lyttle, and Knight, through their respective companies,[6] to defraud investors.

The second scheme implicates UTA-BVI and Eldridge in defrauding First National

Equity and P.K. Trust.  The Complaint contains no allegations that the Moving

Defendants conspired or were "in league" with the other defendants with respect to either

scheme; indeed, it appears that the defendants from the first fraudulent scheme were, in

---

[5] Also, Lyttle's company, First National Equity, is an Indiana corporation.

[6] Montana's Worldwide T&P,  Lyttle's First National Equity, and Knight's P.K. Trust.

8

turn, defrauded by the Moving Defendants in the second scheme.[7]  Indeed, the Complaint

acknowledges that the two schemes were separate and only related to each other through

the tenuous connection of the funds that were allegedly embezzled during each scheme

having been taken from the same investors.[8]  The link between these two schemes, as

argued by the SEC – that the common thread is the investors' funds – is even more

attenuated in light of the fact that the investors, themselves, were not the victims of the

second scheme.[9]  Under these facts, we conclude there is no basis for applying the co-

conspirator theory to establish venue over the Moving Defendants.  We conclude that the

Complaint contains no allegations of acts or transactions taking place in the Southern

District of Indiana which constitute a material part of the purported scheme by UTA-

BVI/Eldridge to defraud First National Equity and P.K. Trust and, therefore, proper venue

over the claims against the Moving Defendants does not lie here.

Conclusion

---

[7] The SEC, paradoxically, appears to the argue that the Moving Defendants were "in league" with the other defendants, essentially claiming that Lyttle/First National Equity Trust conspired with the Moving Defendants to defraud First National Equity.  See Pl.'s Surreply Brief at 4.  This novel argument turns the concept of fraud on its head.  See United States v. Bates, 96 F.3d 964, 969 (7th Cir. 1996) (explaining that to "act with the intent to defraud means to act with an intent to deceive or cheat someone, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to oneself") (citation omitted).

[8] The Complaint explains: "The two phases of this scheme were united through the use of investor funds.  Most of the investor funds solicited by Montana, Lyttle, and Knight ended up at brokerage accounts in the name of UTA-BVI and controlled by Eldridge."  Compl. ¶ 29.

[9] The Complaint makes clear that under the trust agreement between UTA-BVI and First National Equity/P.K. Trust the funds that UTA-BVI and Eldridge allegedly mismanaged were "owned by First National Equity and P.K. Trust and not by the investors who had provided the funds to First National Equity and P.K. Trust for investment."  Compl. ¶ 46.

9

Because the Southern District of Indiana is not a proper venue to resolve the claims against the Moving Defendants, we GRANT the Moving Defendants' Motion to Dismiss without prejudice.[10]

Date: _02/15/2005_

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:

John E. Birkenheier
SECURITIES AND EXCHANGE
COMMISSION
birkenheierj@sec.gov

Steven Lee Klawans
US SECURITIES & EXCHANGE
COMMISSION
klawanss@sec.gov

Boris Parad
PARAD LAW OFFICES P.C.
goto@paradfirm.com

Jason Yonan
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
yonanj@sec.gov

PAUL E. KNIGHT
917 Palmer Court
Kodak, TN 37764

MELVIN R. LYTTLE
FIRST NATIONAL EQUITY, LLC
502 Fifth Street
P.O. Box 007
Aurora, IN 47001-0007

PAUL E. KNIGHT
917 Palmer Court
Kodak, TN 37764

---

[10] Because we grant the Motion to Dismiss on the basis of improper venue, we decline to address the other grounds for dismissal raised by the Moving Defendants.

**Exhibit B**