**Exhibit D**

Docket as of June 13, 2003 11:35 pm        Web PACER (v2.4)

---

# U.S. District Court

# Western District of Texas (Austin)

## CIVIL DOCKET FOR CASE #: 01-CV-141

### Jacoby v. Montana, et al

Filed: 03/01/01
Assigned to: Honorable James R. Nowlin
Jury demand: Plaintiff
Demand: $0,000
Nature of Suit: 470
Lead Docket: None
Jurisdiction: Diversity
Dkt# in other court: None
Cause: 28:1331 Fed. Question: Securities Violation

---

RANDAL K. JACOBY
    plaintiff

James W. Hill
(972)239-5722
[COR LD NTC]
17290 Preston Rd.
Suite 300
Dallas, TX 75252
(972)739-1504

Patrick D. West
(817) 923-9550
[COR LD NTC]
Vickery Station Office Bldg.
3901 West Vickery Blvd.
Suite 1
Fort Worth, TX 76107-5672
(817) 923-9525

    v.

JOHN L. MONTANA, JR.
    defendant
  [term  07/18/01]

WORLDWIDE T&P, INC.
    defendant
  [term  07/18/01]

MELVIN R. LYTTLE
    defendant

**Exhibit D**

```
FIRST NATIONAL EQUITY, LLC
D/B/A FIRST NATIONAL EQUITY,
LTD., □
□

     defendant

PAUL E. KNIGHT
     defendant

P.K. TRUST & HOLDING, INC.
     defendant

GAIL ELDRIDGE                  Joseph S. Babb
     defendant                 512/322-9274
                               [COR LD NTC]
                               Babb & Harbeson, P.C.
                               515 Congress Avenue, Ste 1515
                               P.O. Drawer 1963
                               Austin, TX 78767
                               (512) 473-8600

UNITED TRIBAL ALLIANCE         Joseph S. Babb
     defendant                 (See above)
                               [COR LD NTC]

□
```

---

# DOCKET   PROCEEDINGS

---

DATE    #          DOCKET   ENTRY


3/1/01   --    Case assigned to Honorable James R. Nowlin (nf)
               [Entry date 03/02/01]

3/1/01   1     Complaint filed.   Filing Fee: $ 150.00   Receipt # 303541
               (Pages: 50) (nf) [Entry date 03/02/01]

3/1/01   --    Summons issued for John L. Montana Jr., Paul E. Knight,
               P.K. Trust & Holding, Gail Eldridge, United Tribal (nf)
               [Entry date 03/02/01]

3/2/01   --    Case prepared and forwarded to Judge Nowlin (nf)
               [Entry date 03/02/01]

3/16/01  2     Return of service executed as to Paul E. Knight  on 3/8/01
               (mc2) [Entry date 03/16/01]

Exhibit D

3/23/01   3      Return of service executed as to Melvin R. Lyttle on 3/12/01 (td) [Entry date 03/26/01]

3/23/01   4      Return of service executed as to First Nat'l Equity on 3/12/01 (td) [Entry date 03/26/01]

3/23/01   5      Return of service executed as to Gail Eldridge on 3/8/01 (td) [Entry date 03/26/01]

3/23/01   6      Return of service executed as to United Tribal on 3/8/01 (td) [Entry date 03/26/01]

5/14/01   7      Motion by Randal K. Jacoby for Patrick D. West to appear pro hac vice. (Returned $25.00 check noted in certificate of service as tendered with motion to Mr. West.) (mc2) [Entry date 05/14/01] [Edit date 05/14/01]

5/16/01   8      Order granting motion for Patrick D. West to appear pro hac vice [7-1]. (Noticed 5/16/01.) (mc2) [Entry date 05/16/01]

6/22/01   9      Return of service executed as to P.K. Trust & Holding on 5/23/01 (mc2) [Entry date 06/22/01]

6/29/01   10      Ordered that Plaintiff shall, informal pleading ... show cause why he has failed to prosecute this case. Failure to respond to this order will result the dismissal of this action ntc 7/2/01 (td) [Entry date 07/02/01]

7/2/01   11      Motion by Randal K. Jacoby for interlocutory default judgment against Melvin R. Lyttle, First Nat'l Equity, Paul E. Knight (nf) [Entry date 07/05/01]

7/6/01   --      Mail addressed to Randal K. Jacoby: scheduling that Plaintiff shall, informal pleading ... show cause why he has failed to prosecute this case. Failure to respond to this order will result the dismissal of this action [10-1], order [10-2]: returned by post office marked old address. Updated address from pleadings in file and remailed. (mc2)

☐      [Entry date 07/06/01]

7/9/01   --      Copies of Correspondence submitted by Randal K. Jacoby regarding: notice of interlocutory default procedures to Melvin R. Lyttle, First Natl. Equity, Paul Knight, and P.K. Trust & Holding. (mc2) [Entry date 07/09/01]

7/18/01   12      Order granting motion for interlocutory default judgment against Melvin R. Lyttle, First Nat'l Equity, Paul E. Knight [11-1], and entering default judgment against defendants Melvin R. Lyttle, First National Equity, LLC d/b/a First National Equity, LTD, Paul E. Knight, P.K. Trust Holding, Inc., Gail Eldridge and United Tribal Alliance (no specifics included); further Ordered that claims against John Montana, Jr. and Worldwide T&P be dismissed without prejudice for failure to timely serve complaint... (Noticed 7/19/01.) (mc2) [Entry date 07/19/01]

8/24/01   --      Received, proposed interlocutory default judgment (re

**Exhibit D**

|  |  | Melvin R. Lyttle, 1st Natl. Equity, LLC, Paul E. Knight and P.K. Trust & Holding. (mc2) [Entry date 08/27/01] |
|---|---|---|
| 12/13/01 | 13 | Motion by Randal K. Jacoby for Patrick West to withdraw as attorney (mc2) [Entry date 12/14/01] |
| 1/16/02 | 14 | Motion by Gail Eldridge, United Tribal to set aside interlocutory judgment:, and to dismiss (mc2) [Entry date 01/16/02] [Edit date 01/16/02] |
| 1/29/02 | -- | Letter/Correspondence submitted by Randal K. Jacoby regarding: change of address for James W. Hill, attorney. (mc2) [Entry date 01/29/02] |
| 1/29/02 | 15 | Response by Randal K. Jacoby motion to set aside interlocutory judgment: [14-1], motion to dismiss [14-2] (mc2) [Entry date 01/29/02] |
| 1/30/02 | 16 | Order granting motion to set aside interlocutory judgment: [14-1], granting motion to dismiss [14-2], dismissing defendants Gail Eldridge and United Tribal Alliance without prejudice. (Noticed 1/31/02.) (mc2) [Entry date 01/31/02] |
| 1/30/02 | 17 | Default judgment against Melvin R. Lyttle, First Nat'l Equity, Paul E. Knight, P.K. Trust & Holding, jointly and severally for $1,000,000, pre and post-judgment interest..., reasonable attorney's fees and costs of court. (Noticed 1/31/02.) (mc2) [Entry date 01/31/02] |
| 1/30/02 | -- | Case closed (mc2) [Entry date 01/31/02] |
| 2/13/02 | 18 | Motion by Randal K. Jacoby for attorney fees (mc2) [Entry date 02/13/02] |
| 3/5/02 | 19 | Order granting motion for attorney fees [18-1], and that defendants pay plaintiff attorney's fees of $5,090.00. (Noticed 3/5/02.) (mc2) [Entry date 03/05/02] |
| 3/8/02 | 20 | Motion by Gail Eldridge, United Tribal to clarify order (of 3/4/02) (mc2) [Entry date 03/08/02] |
| 3/13/02 | 21 | Order granting motion to clarify order (of 3/4/02) [20-1], clarifying award of attorneys fees to plaintiff does not include defendants Gail Eldridge or United Tribal Alliance. (Noticed 3/13/02.) (mc2) [Entry date 03/13/02] |

---

**Case Flags:**
**CLOSED**

---

**END OF DOCKET: 1:01cv141**

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**ANTOINE HANNA FRANGIE,**

        *Plaintiff,*

        **Index No.**

        **v.**

**PK TRUST AND HOLDING, INC., PAUL E. KNIGHT, VIOLET GAIL ELDRIDGE, THE UNITED TRIBES OF THE AMERICAS, INC., UTA-BVI, LTD., MELVIN R. LYTTLE, FIRST NATIONAL EQUITY, LLC, and FIRST NATIONAL EQUITY, LLC d/b/a FIRST NATIONAL EQUITY, LTD.,**

        **COMPLAINT**

        *Defendants.*

Plaintiff, Antoine Hanna Frangie, for his complaint against defendants PK Trust and Holding, Inc. ("PK Trust"), Paul E. Knight, Violet Gail Eldridge, The United Tribes of the Americas, Inc. ("UTA"), UTA-BVI, Ltd. ("UTA-BVI"), Melvin R. Lyttle and First National Equity, LLC d/b/a First National Equity, Ltd. ("FNE" and together with PK Trust, Knight, Eldridge, UTA, UTA-BVI and Lyttle "Defendants") hereby alleges:

### NATURE OF THE ACTION

1.      Plaintiff Frangie is the victim of an unlawful scheme by Defendants through which they obtain investment capital from individuals, make substantial, high-yield investments with this money, and keep all of the proceeds for themselves. Defendants are currently under investigation in connection with this scheme by the Securities Exchange Commission.

2.      Pursuant to a series of written agreements, Plaintiff entrusted Defendants with $1 million to invest on his behalf in a discretionary trading program.  By their own written admission, Defendants parlayed this investment into some $15 million.  However, despite repeated demands by Plaintiff, and repeated promises by Defendants that Plaintiff would receive his profits, Defendants have failed to pay him this money.

3.      As a result of this conduct, Defendants are liable to Plaintiff for breach of the various written agreements, breach of fiduciary duty and unjust enrichment.

## PARTIES

4.      Plaintiff is an a lawyer, banker and businessman in Beirut, Lebanon.

5.      Defendant PK Trust is a purported investment management company located in Kodak, Tennessee.  It was the recipient of Plaintiff's $1 million investment, and made the trades with this money that generated the $15 million in profits.

6.      Defendant Paul E. Knight is a resident of Kodak, Tennessee.  He is the CEO of Defendant PK Trust.  Knight holds himself out as an investment advisor.  However, upon information and belief, he is not registered with the Securities Exchange Commission, pursuant to the federal securities laws and regulations.

7.      Defendant Violet Gail Eldridge nominally served as the trustee of customer funds for Defendant PK Trust.  This is, ostensibly how she obtained the control of the funds, including Plaintiff's funds.  Upon information and belief, she placed the funds in the custody of two companies under her domination and control, Defendants UTA and UTA-BVI.

8.      Defendant UTA is purportedly a non-profit corporation located in Georgia,

2

organized for the purpose of facilitating Native American culture and tribal unity. In fact, Defendants have, upon information and belief, used it as one of the vehicles for holding and transferring funds pursuant to their unlawful scheme.

9.      Defendant UTA-BVI is a British Virgin Islands corporation. Upon information and belief, it is an affiliate of Defendant UTA. Defendants use UTA-BVI as the repository of funds. Among other reasons, they use UTA-BVI for this purpose because of the ease with which it can move assets to the British Virgin Islands, and take advantage of the bank secrecy laws there, and other laws of the BVI that thwart judgment enforcement.

10.      Defendant Melvin R. Lyttle is a purported investment advisor, who resides in Indiana. He is the titular head of Defendant FNE, which first took in Plaintiff's investment, and which forfeit on its contractual obligations to invest Plaintiff's money.

11.      Defendant FNE is a limited liability company located in Indiana. Like PK Trust, FNE is purportedly an investment company. FNE was the vehicle Defendants used to initially take in Plaintiff's investment, with promises of large returns.

## BACKGROUND

12.      Plaintiff is a sixty-five year old citizen of Beirut, Lebanon. He has been a practicing attorney, with degrees in both Lebanese and French law, for over forty years.

13.      For the past twenty-six years, Plaintiff has also served as a director of the Syrian Lebanese Commercial Bank. In that capacity, as well as in Plaintiff's role as attorney, he has participated in substantial commercial transactions throughout the middle east.

14.      In or about early 1999, in a series of conversations with certain of the bank's

3

clients, Plaintiff learned of a type of super-high yield investment opportunities available to citizens of underdeveloped nations in connection with their funding of commercial and humanitarian projects in their home countries. One extremely wealthy individual, in particular, described how he had successfully participated in this type of investment, earning returns of some 100% per week. However, he informed Plaintiff, the minimum investment was $10 million to $100 million.

15.    Unlike the individuals who participated in these investment programs, Plaintiff did not have anything like $10 million or $100 million to invest -- or otherwise. However, the client referred Plaintiff to a financial consultant who might be able to place Plaintiff in a block investment, with similarly qualified persons.

16.    In or about May 1999, after a string of referrals that took Plaintiff from Beirut to London to Canada, Plaintiff was contacted by John Montana of Worldwide T. & P. Investments, Inc., a broker/dealer located in Staten Island, New York.

**The FNE Contract**

17.    Mr. Montana informed Plaintiff that he was working with a company called First National Equity, Ltd., which was headed by Melvin R. Lyttle. Both FNE and Lyttle are located in the State of Indiana. FNE, Mr. Montana said, offered precisely the type of investment program of which Plaintiff had been told. The "Exclusive Asset Management Agreement," as it was called, required that the investor be a person in the developing world, and that he also undertake humanitarian or commercial projects in his own country. In return, the program, called the Buy and Sell program, would pay 120% simple interest on Plaintiff's investment for the approximately 50 weeks of the program. The investment

4

would be secured by treasury bills in the amount of 196% of the investment, and was thus totally safe.

18.     The program Mr. Lyttle described was, in its returns, its requirement of investment in Lebanon, and the involvement of the government, almost exactly in line with what Plaintiff had been told about such programs by Plaintiff's own contacts. However, this program would require an investment of only $1 million. Montana, working for and with FNE and Lyttle, was putting together an investment syndicate to meet the $100 million minimum to participate in the trade.

19.     The transaction was possible, Montana reported, because of Lyttle's high level connections.

20.     The actual transaction was a series of investments in medium term bank debt. Essentially, those eligible for this program were given the opportunity to arbitrage and roll over this medium term debt to various banks over and over, at a guaranteed spread of approximately 12% per trade.

21.     On Lyttle's instructions, the FNE contract was negotiated through Montana in New York, acting as the disclosed agent and representative of FNE. Thus, Plaintiff's negotiations with FNE all took place in New York, either by fax or e-mail with Montana in New York, or in person there. Plaintiff personally met with Montana in New York on at least 8 occasions in connection with the transaction.

22.     Moreover, the contract was to be performed in New York. Plaintiff was required to wire Plaintiff's fund to the Bank of New York branch at 20 Broad Street, New York, New York. The funds of the investment syndicate were to be held in and processed

5

through New York banks.

23.    On or about August 10, 1999, Plaintiff executed the FNE contract, and received a copy executed by Mr. Lyttle on behalf of FNE.

24.    As the Court can see from the contract, all of the terms, such as the rate of return per trade, were as Mr. Montana had represented. In addition, Plaintiff was again assured that the investment was "196%" secured.

25.    Plaintiff promptly performed all of his obligations under the FNE contract. Plaintiff supplied the $1 million investment required and filled out the extensive paperwork Defendants demanded to establish that Plaintiff was the lawful owner of the funds. In addition, Plaintiff began exploring and organizing a number of civic projects in Lebanon, as required by the Agreement.

26.    However, FNE did not perform.    While FNE had discretion in the management of the funds, it was required to invest the funds in a program of the type agreed upon. Yet, Plaintiff received on communication after another either from or on behalf of Lyttle and FNE giving reasons why the transaction had not been set up, and therefore no returns were being generated. In each instance, Defendants promised that the trade was about to begin, and that the enormous promised returns would begin to flow.

**The PK Trust Contract**

27.    Without warning, in or about January 2000, Lyttle and FNE abrogated our agreement. Claiming that the Fed had suddenly blackballed Lyttle, Montana informed Plaintiff that FNE would no longer be in a position to carry out its obligations under the agreement. Plaintiff was outraged, because FNE had already held Plaintiff's $1 million for

6

months, with nothing to show for it.

28.     However, Lyttle stated through Montana, the obligations of FNE under the contract would be taken up by a corporate affiliate of FNE, PK Trust and Holding, Inc., headed by Paul E. Knight. PK Trust and Knight were both located in Kodak, Tennessee. In addition, Plaintiff spoke to Mr. Knight a number of times, and met him in New York to discuss the progress of the transactions.

29.     Under this new arrangement, Plaintiff entered into a written agreement with PK Trust, on or about March 6, 2000. It was expressly agreed that PK Trust would simply fulfill the obligations of FNE under the prior agreement. The PK Trust agreement is consistent with this. Unlike the FNE agreement, it specified almost none of the material terms of the transaction. Indeed, it refers repeatedly to the capitol "T" "Transaction," but nowhere defines that term. This is because it was merely a continuation of the FNE transaction, with a new, non-blackballed entity, PK Trust.

30.     Plaintiff had already performed his obligations under the PK Trust agreement, because they were the same as under the FNE agreement. In addition, Plaintiff again provided the required paperwork to establish that Plaintiff was the legitimate owner of the invested funds. Further, Plaintiff confirmed to PK Trust that Plaintiff had undertaken a project to purchase and renovate a building in Beirut as an office building, and to create and endow a library on human rights. In order to launch this project, Plaintiff undertook obligations totaling approximately $4 million, which has just recently again been demanded from Plaintiff.

31.     As Plaintiff later learned, PK Trust did make one change in its arrangements.

7

While FNE had used the securities firm Baird Patrick & Co. as trustee of the investors funds, on or about August 29, 2000, PK Trust used Violet Gail Eldridge, and her companies United Tribes of the Americas – ostensibly an organization dedicated to marketing Native American crafts – and UTA-BVI, a British Virgin Islands company, as trustee of the funds. Upon information and belief, Plaintiff was and is a third-party beneficiary of that trust agreement between PK Trust and Eldridge/UTA-BVI/UTA. Eldridge is to hold the funds and the profits for each in segregated accounts and to release them only to the rightful owners.

32.     One thing did not change with the new manager: the trade was not consummated. Again, Plaintiff received written and verbal excuses and assurances that the trade would commence imminently. Finally, Plaintiff lost patience and began demanding the return of Plaintiff's investment.

## The July 2000 Trade and Defendants' Admissions of Liability

33.     The first half of 2000 brought a reprise of Defendants' delays, excuses and failure to perform. However, on or about July 17, 2000, Knight offered to place Plaintiff's funds in a short term program. This short program was identical to the Asset Enhancement Program, but would last only three months. It was to begin in July 2000 and end in September 2000. The rate of return was to be $5 million per month, almost identical to the rate of $1.2 million per week for the Asset Enhancement Program. Thus, under the three month short program, Plaintiff would have gross returns of $15 million. Of this amount, Plaintiff would owe $3 million (20%) in commissions.

34.     Plaintiff agreed, and Knight told Plaintiff that he invested Plaintiff's funds in

8

this program.

35.    In September 2000, Plaintiff received written confirmation from Knight that the short program had succeeded, and that PK Trust owed Plaintiff $12 million. He confirmed that Plaintiff would receive Plaintiff's funds on September 25, 2000.

36.    However, each time the date for payment arrived, Knight provided some excuse, either directly or through Mr. Montana, as to why there would be a slight delay in disbursement of the funds. These delays continued through the Fall of 2000.

37.    Eventually, Plaintiff retained counsel to assist Plaintiff in recovering Plaintiff's principal and Plaintiff's returns. Plaintiff made demands via Plaintiff's counsel for the return of the funds on December 7, 2000, January 3 and January 31, 2001 and February 16, 2001. On each occasion, Knight reiterated that PK Trust owed Plaintiff this money, and that it would pay imminently. On or about December 22, 2000, Plaintiff received Plaintiff's principal, plus 5% interest. Again, Knight stated that Plaintiff would receive Plaintiff's $12 million returns in a matter of days.

38.    Most recently, Knight promised Plaintiff would receive Plaintiff's profits by January 31, February 10 and February 17, 2001. Plaintiff have never been paid.

## DEFENDANTS' CRIMINAL SCHEME

39.    After the first few excuses for non-payment in the Fall of 2000, Plaintiff began an investigation into Defendants activities. Plaintiff learned that Knight, Eldridge, Lyttle, FNE, PK Trust, UTA and UTA-BVI are all in league in an overarching criminal scheme. The corporate defendants are merely instrumentalities through which the individual defendants operate this scheme.  Upon information and belief, Defendants took in

9

investments like mine from some three dozen individuals. Their scheme was to invest these funds and then retain the proceeds. Indeed, except in a few cases, they have also kept the principal.

40. Most recently, Plaintiff learned that the SEC is investigating the Defendants, and Montana, in connection with this scheme to unjustly enrich themselves at the expense of their investment clients.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract Against Defendant FNE)

41. Plaintiff repeats and realleges each of the foregoing allegations as if each were set forth fully herein.

42. The Exclusive Asset Management Agreement is a valid, binding and enforceable agreement between FNE and Plaintiff.

43. Pursuant to that agreement, Plaintiff was required to and did commit himself to humanitarian projects in Lebanon, incurring many millions of dollars in obligations.

44. Pursuant to that agreement, FNE was required to use its best efforts to effectuate certain trades with Plaintiff's funds to provide a return to Plaintiff of $1.2 million per week. FNE failed to take any of the requisite steps to perform the contract. Eventually, FNE repudiate the agreement, stated that it could or would not fulfill any of its obligations, and turned the management of the funds and the investment over to Defendant PK Trust.

45. Plaintiff at all times fully performed all of his all of his obligations under the agreement.

10

46.     By reason of the foregoing, Defendant FNE is liable to Plaintiff for breach of contract in an amount to be determined at trial, but believed to exceed $19 million, plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Against Defendant PK Trust)

47.     Plaintiff repeats and realleges each of the foregoing allegations as if each were set forth fully herein.

48.     The Private Management Agreement is a valid, binding and enforceable agreement between PK Trust and Plaintiff.

49.     Pursuant to that agreement, Plaintiff was required to and did commit himself to humanitarian projects in Lebanon, incurring many millions of dollars in obligations.

50.     Pursuant to that agreement, PK Trust was required to use its best efforts to effectuate certain trades with Plaintiff's funds to provide a return to Plaintiff of $1.2 million per week.   PK Trust failed to take any of the requisite steps to perform the contract.

51.     Eventually, PK Trust, in an attempt to mitigate its failure to arrange the trades required under the contract, placed Plaintiff's funds in a three month trading program, under which he was to pay 20% of the returns as commission.

52.     The program succeeded, and PK Trust made $15 million on the trades, but, in violation of its contractual obligations to Plaintiff, it has failed to pay any of the profits to Plaintiff.

53.     Plaintiff at all times fully performed all of his all of his obligations under the agreement.

11

54.   By reason of the foregoing, Defendant PK Trust is liable to Plaintiff for breach of contract in an amount to be determined at trial, but believed to exceed $19 million, plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract Against UTA-BVI)

55.   Plaintiff repeats and realleges each of the foregoing allegations as if each were set forth fully herein.

56.   Upon information and belief, UTA-BVI entered into an a trust agreement with FNE on or about August 29, 1999. Under the terms of this agreement, UTA-BVI was to hold the investments and profits of each investor, including Plaintiff, for the sole benefit of and to be disbursed to each investor, including Plaintiff.

57.   On or about April 9, 2000, PK Trust entered into the same agreement with UTA-BVI, through a written addendum.

58.   Plaintiff is a third-party beneficiary of the trust agreement and the addendum thereto.

59.   UTA-BVI, upon information and belief, currently holds some or all of the profits earned on Plaintiff's investment, but despite demands therefore refuses to release the funds to Plaintiff, in violation of its contractual obligations under the trust agreement and addendum.

60.   By reason of the foregoing, Defendant UTA-BVI is liable to Plaintiff for breach of contact in an amount to be determined at trial, but believed to exceed $15 million, plus interest.

12

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against All Defendants except UTA)

61.     Plaintiff repeats and realleges each of the foregoing allegations as if each were set forth fully herein.

62.     Each of the Defendants, except UTA, owed Plaintiff fiduciary duties of care and loyalty.

63.     Defendants PK Trust, Knight, Lyttle and FNE were all investment advisors or companies empowered by Plaintiff to make discretionary investments with his funds.

64.     Defendants UTA-BVI was the trustee of the funds, and Eldridge was the principal officer of the trust.

65.     Defendants breach these duties to Plaintiff in a number of ways, including: (a) failing to invest the funds pursuant to the agreements; (b) retaining for themselves the profits earned on investing Plaintiff's funds; and (c) lying to Plaintiff concerning the status of trades, his investment and when he would be paid.

66.     By reason of the foregoing, Defendants, except UTA, are liable to Plaintiff for breach of fiduciary duty in an amount to be determined at trial, but believed to exceed $19 million, plus interest and attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants)

67.     Plaintiff repeats and realleges each of the foregoing allegations as if each were set forth fully herein.

68.     Defendants consist of a group of individuals who, together, dominate and control the corporate defendants. These corporate defendants are mere instrumentalities

13

**Exhibit D**

through which the individual defendants perpetrate their criminal schemes.

69.   Upon information and belief, Defendants have kept the profits earned from trades and investments using Plaintiff's capital. They have disbursed these monies among each of the Defendants, both to hide the funds, and to share the ill-gotten gains of their unlawful scheme.

70.   By reason of the foregoing, the Defendants are liable to Plaintiff in an amount to be determined at trial, but believed to exceed $15 million, plus interest.

Exhibit D

**WHEREFORE**, plaintiff Antoine Hanna Frangie demands judgment in his favor and against Defendants:

On the First Cause of Action, against Defendant FNE, in an amount to be determined at trial but believed to exceed $19 million, plus interest.

On the Second Cause of Action, against Defendant PK Trust, in an amount to be determined at trial, but believed to exceed $19 million, plus interest.

On the Third Cause of Action, against Defendant UTA-BVI, in an amount to be determined at trial, but believed to exceed $15 million, plus interest.

On the Fourth Cause of Action, against Defendants PK Trust, Knight, Eldridge, UTA-BVI, Lyttle and FNE, in an amount to be determined at trial, but believed to exceed $19 million, plus interest and attorney's fees.

On the Fifth Cause of Action, against all Defendants, in an amount to be determined at trial, but believed to exceed $15 million, plus interest.

Dated:  June 13, 2001
    New York, New York

John J. D. McFerrin-Clancy
Jeffrey M. Eilender
**SCHLAM STONE & DOLAN**
**A Limited Liability Partnership**
26 Broadway
New York, New York  10004
(212) 344-5400

*Attorneys for Plaintiff*

15

Exhibit D                    **MEYERS, MEYERS & TONACHIO**

                                        AT IAS PART 53 OF THE SUPREME COURT
                                        OF THE STATE OF NEW YORK HELD IN AND
                                        FOR THE COUNTY OF NEW YORK AT THE
                                        COURTHOUSE, 60 CENTRE STREET, NEW
                                        YORK, NEW YORK ON MARCH 24, 2003

**PRESENT:** HON. CHARLES EDWARD RAMOS, J.S.C.,

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 53**
------------------------------------------------------------X
ANTOINE HANNA FRANGIE                          :        Index No. 111735/01
                                               :        (Ramos, J.)
                            Plaintiff.         :
                                               :        **COUNTER-ORDER**
        - against -                            :        $(009)$
                                               :
PK TRUST AND HOLDING, INC., PAUL               :
KNIGHT, VIOLET GAIL ELDRIDGE, THE              :
UNITED TRIBES OF THE AMERICAS, INC.,           :
U.T.A., B.V.I., LTD., MELVIN LYTTLE, FIRST     :
NATIONAL EQUITY, LLC d/b/a FIRST               :
NATIONAL EQUITY, LTD.                          :
                                               :
                            Defendants.        :
------------------------------------------------------------X

**WHEREAS** this action was commenced by Order to Show Cause dated July 5, 2001, which sought, *inter alia*, restraints against all accounts (including personal) of all Defendants and "emergency expedited discovery" of all Defendants; and

**WHEREAS** by Order entered on July 10, 2001, the assets of all Defendants were restrained; and

**WHEREAS** by Memorandum Decision and Order signed on October 1, 2001, the assets of all Defendants except Violet Gail Eldridge were attached upon the posting of an undertaking of $10,000 per defendant; and

~~WHEREAS~~ by Notice of Motion dated January 14, 2003 Plaintiff's then counsel, Allegaert Berger & Vogel LLP, moved for an Order pursuant to CPLR 321(b)(2) permitting such law firm to withdraw as counsel, based upon Plaintiff's having paid such counsel no funds since the initial retainer and owing such counsel substantial outstanding fees and expenses; and

*and Affirmation of Christopher Accebart dated 1/14/03, and the exhibits annexed thereto*

~~WHEREAS~~ Defendants John L. Montana Jr. and Worldwide T&P Investments, Inc. having cross-moved by Cross-Motion dated January 27, 2003 for an Order vacating all restraints and attachments imposed upon said Defendants; and

*and the Affirmation of Howard G. Meyers III dated 1/23/03 - and the exhibits annexed thereto*

Case 6:05-cr-06116-CJS   Document 121-5   Filed 10/02/07   Page 21 of 21

**Exhibit D**

*Reese Order*

**WHEREAS** Defendants Gail Eldridge, The United Tribes of the Americas, Inc., and UTA-BVI,
Ltd having cross-moved by Cross-Motion dated January 21, 2003 for an Order vacating all
restraints and attachments imposed upon said Defendants; and *And the Affirmation of Edwards*
*Feldman, dated 1/21/03;* and the exhibits annexed thereto

~~**WHEREAS** said Motion and Cross-Motions were returnable on January 30, 2003; and~~

**WHEREAS** Plaintiff having failed to oppose the Motion to withdraw, and having heard oral
argument, this Court granted Allegaert Berger & Vogel LLP's Motion to withdraw on January
30, 2003; and adjourned oral argument on said Cross-Motions until February 27, 2003; and
directed counsel for Defendants to serve Plaintiff with the Cross-Motions pursuant to the CPLR;
and

~~**WHEREAS** the Cross-Motions were duly served upon Plaintiff;~~

~~**WHEREAS** Plaintiff failed to appear on February 27, 2003; and~~

~~**WHEREAS** Defendants' Cross-Motions were again adjourned until March 12, 2003; and~~

~~**WHEREAS** Plaintiff failed to appear on March 12, 2003; and~~

**WHEREAS**, the Court having considered the Motion dated January 14, 2003; The Cross-Motion
of Defendants Gail Eldridge, The United Tribes of the Americas, Inc., and UTA-BVI, Ltd. dated
January 21, 2003; and The Cross-Motion of Defendants John L. Montana Jr. and Worldwide
T&P Investments, Inc. dated January 27, 2003; and having heard argument, ~~and good cause~~
~~appearing;~~ *And Issued A Decision on March 13, 2003.*

**NOW**, upon the motion of Allegaert Berger & Vogel LLP and the Cross-Motions of Defendants
Gail Eldridge, The United Tribes of the Americas, Inc., UTA-BVI, Ltd., John L. Montana Jr. and
Worldwide T&P Investments, Inc., *And the court Directing no motion be settled*
*by long form order, IT IS*
~~It is on this 24th day of March 2003~~

**ORDERED** that:

1.  Allegaert Berger & Vogel LLP's Motion to withdraw as counsel is granted ~~in all~~
    ~~respects.~~ *On Default. The substitution of counsel shall be effective*
    *30 days. After service on a copy of this order.*
2.  Any and all restraints and/or attachments imposed against Defendants Gail
    Eldridge, The United Tribes of the Americas, Inc., UTA-BVI, Ltd., John L.
    Montana Jr, and Worldwide T&P Investments, Inc. are vacated immediately.
3.  Plaintiff has thirty (30) days ~~from the date of this Order in which to retain new~~
    ~~counsel and file a Notice of Appearance.~~ *After service of a copy of this*
    *order, to retain new counsel and file a notice of appearance.*

**FILED**

**APR 03 2003**

*COUNTY CLERK'S OFFICE*

**ENTER:**

_____
**CHARLES EDWARD RAMOS, J.S.C.**

CHARLES E. RAMOS