Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 1 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 1 of 28
JUN-12-2006 15:02      Exhibit 1      OGC      202 220 9341      P.002

 

# IN THE CIRCUIT COURT OF BENTON COUNTY ARKANSAS

SHIMODA-ATLANTIC, INC.                                  PLAINTIFF
an Arkansas corporation,

vs.               No. CV 2006      001095 -1

                                    KEITH

TALON HOLDINGS, INC.,                                   DEFENDANTS
a Delaware corporation domesticated
in Texas; THE MIX GROUP OF SOUTH
FLORIDA, INC., a Florida corporation,
JOHN DOE #1 a/k/a "JOHN V. FIRO,"
a/k/a/ "THOMAS V. FARO," an individual,
ROBERT BETTES  a/k/a "ROBERT O. BREWER," an individual,
PATRICK JOSEPH LOCHRIE, an individual,
JOHN DOE #3, a/k/a "MOHAMMED GALANI," a/k/a
"MOHAMMED GILANI," an individual, and
THE NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC., a corporation, and
its wholly owned subsidiary, NASD REGULATION, INC.
a corporation

## COMPLAINT

Comes now the Plaintiff Shimoda-Atlantic, Inc., an Arkansas corporation, by and

through its attorney John Dodge, and for cause of action against the Defendants, herewith

alleges and says:

## VENUE & JURISDICTION

1.      Plaintiff is an Arkansas corporation in good standing with principal offices

situated in Benton County, Arkansas. The principal actions giving rise to this suit occurred

in Benton County, Arkansas.

2.      Defendant Talon Holdings, Inc., (hereafter, "TALON") is a corporate

defendant with a base of operations in Addison, Texas, and at times material to this lawsuit

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 2 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 2 of 28
JUN-12-2006 16:02   Exhibit 8   OGU                    202 220 9341   P.003

has conducted business activities in Benton County, Arkansas sufficient to establish the venue and jurisdiction of this Court over the subject matter and the Defendant TALON. At all times material, Defendant TALON was registered as a securities Broker-Dealer with both the United States Securities and Exchange Commission and the Defendant National Association of Securities Dealers.

3.      Defendant The Mix Group of South Florida, Inc. (hereafter "MIX GROUP") is a Florida corporation that engaged in actionable activities in Arkansas by and through its agents, defendants John V. Firo, Patrick Jopseph Lochrie and Mohammed Galani. Subsequently it engaged in the requisite wrongful conduct required to establish the venue and jurisdiction of this Court over it and the subject matter of the lawsuit. MIX GROUP has not domesticated in Arkansas.

4.      Defendant John Doe #1, a/k/a "John V. Firo," (hereafter, "FIRO") is alleged, upon information and belief, to be a resident of Florida with offices in Florida and Texas. Defendant FIRO initiated an unsolicited contact with a subsidiary of Plaintiff, ShimodaAtlantic Oncology Biosciences) on April 4, 2005, in which he held himself out as a registered representative (with Defendant National Association of Securities Dealers) and sought to do business with Plaintiff's subsidiary and later, Plaintiff. Defendant FIRO personally traveled to Benton County, Arkansas, on two occasions, one in March, 2006 and another in May, 2006, for the purposes of execution of the fraudulent scheme complained of below, thereby subjecting himself to the venue and jurisdiction of this Court for the purposes of the subject matter of this lawsuit.

5.      Defendant Robert BETTES, a/k/a "Robert O. Brewer," (hereafter, "BETTES") is alleged, upon information and belief, to be a resident of Texas. Defendant is

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 3 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 3 of 28
JUN-12-2006  Exhibit 4 :02      OGC                          202 220 9341    P.004

a co-principal with Defendant FIRO in Defendant TALON's registered Broker-Dealership.

Defendant BETTES participated, approved, supervised, counseled, aided, abetted or

instructed Defendant FIRO in his unsolicited contact with a subsidiary of Plaintiff,

ShimodaAtlantic Oncology Biosciences in April, 2005, for the purposes of execution of the

fraudulent scheme complained of below. At all times material, Defendant BETTES was the

Registered Principal or Co-Principal of Defendant TALON.  Under SEC and NASD rules

and regulations he has responsibility and liability for irregularities in the operations of the

broker-dealership (Defendant TALON). He has thereby subjected himself to the venue and

jurisdiction of this Court for the purposes of the subject matter of this lawsuit.

      6.     Defendant Patrick Joseph Locrhie, (hereafter, "LOCHRIE") is alleged, upon

information and belief, to be a resident of the state of Florida. Defendant LOCHRIE

participated in the creation  and perpetration of a sophisticated fraudulent scheme upon

Plaintiff and  personally traveled with Defendant FIRO to Benton County, Arkansas, on

two occasions, one in March, 2006 and another in May, 2006. He did so for the purposes of

execution of the fraudulent scheme complained of below, thereby subjecting himself to the

venue and jurisdiction of this Court for the purposes of the subject matter of this lawsuit.

      7.     Defendant Mohammed Galani (hereafter, "GALANI") is, upon information

and belief, a resident of Virginia. He is an associate of Defendants BETTES, FIRO and

LOCHRIE and in May 2006, traveled with Defendants LOCHRIE and FIRO  to Benton

County, Arkansas, to assist and aid Defendants FIRO and LOCHRIE as they perpetrated a

fraud on Plaintiff, thereby subjecting himself to the venue and jurisdiction of this Court for

the purposes of the subject matter of this lawsuit.

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 4 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 4 of 28
JUN-12-2Exhibit:02     OGu                                    202 220 9341    P.005

8.      Defendant National Association of Securities Dealers, Inc., and its wholly

owned subsidiary NASD Regulation, Inc., (hereafter collectively, "NASD") is a corporate

entity operating from New York and Washington, D.C. Both NASD corporations are

believed to be chartered in the state of Delaware. Defendant NASD Regulation, Inc. is

domesticated in Arkansas and maintains a registered office in Pulaski County, Arkansas,

with operations statewide including Benton County, Arkansas. It is a corporation that, as a

private body, regulates and licenses securities brokerages and their representatives. NASD

routinely does business in Arkansas and in Benton County, Arkansas, and is thereby

subjected to the venue and jurisdiction of this Court for the purposes of the subject matter

of this lawsuit.

9.      This Court has subject matter and personal jurisdiction over all the parties,

sufficient to render a final and binding verdict in this case.

## COUNT ONE

10.     Plaintiff readopts and realleges each paragraph 1-9 and alleges that from on

or about April 4, 2005 and continuing through the present, in Benton County, Arkansas,

and elsewhere, Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE and

GALANI devised a common scheme to mislead and defraud the Plaintiff. The deceptive

practices; the tricks, frauds and deceptions of theses Defendants resulted in the delivery by

Plaintiff to these Defendants of proprietary and trade-secret data related to pharmaceutical

products of Plaintiff; nutritional supplement products of the Plaintiff; ongoing

pharmaceutical and medical treatment research projects of the Plaintiff, and the timelines

and clinical endpoints of four proposed clinical trials of projects of the Plaintiff.

4

JUN-12-2006 1:02   Exhibit 4   OGK                                202 220 9341   P.006



11.     Defendant LOCHRIE, posing as a business associate of FIRO, concealed at all times material that he was or is actively engaged in competitive business operations through several non-defendant companies he owns or controls, including, Bioceutics, Inc., Amenni, Inc., and others. Defendant LOCHRIE has previously formed a corporate and business relationship with one Dr. David P. Summers and Dr. Summers wife, Dorothy in a venture called "Nutrapharmx, Inc.' Dr. Summers is formerly associated with a publicly traded venture called "Endovasc, Inc." which entity, and Dr. Summers, are engaged in oncology drug research and development. Defendant LOCHRIE has the means and methods whereby he can effectively sell, distribute or otherwise unlawfully profit from the theft of the Plaintiff's trade secrets.

12.     The acts of the Defendants of the theft of Plaintiff's trade secrets through means of trick, fraud and deception violates A.C.A. 5-36-107 and is made actionable in this Court by way of A.C.A. 5-41-106.

13.     Plaintiff is entitled to recover its damages, including loss of profits; for a permanent injunction prohibiting the Defendants from copying, disseminating, revealing, using, selling or giving away its trade secrets; together with an award of punitive damages to deter these Defendants from future such conduct. Plaintiff is entitled to all other relief the Court may find it entitled.

### COUNT TWO

14.     Plaintiff readopts and realleges each prior paragraph 1-13, and for additional cause of action states that from on or about April 4, 2005 and continuing through May 10, 2006, Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE and GALANI knowingly and deliberately contrived to create the impression that FIRO was a NASD

5

Case 6:05-cr-06116-CJS    Document 121-10    Filed 10/02/07    Page 6 of 28
Case 5:06-cv-05109-RTD    Document 1-2    Filed 06/16/2006    Page 6 of 28
JUN-12-2006    6:02    Ou...                        202 220 9341    P.007
Exhibit F

registered principal and representative of a NASD registered broker-dealership, either Defendant TALON, MIX GROUP or both.

15.    On May 9, 2006, Defendant FIRO, with the knowledge and assistance of Defendants MIX GROUP, TALON, BETTES, LOCHRIE and GALANI knowingly, deliberately, willfully, wrongfully and with an intent to injure Plaintiff, caused to be made then entered into the execution of a specific "Broker Engagement Agreement," (**EXHIBIT** 1) wherein FIRO, executing the agreement for Defendant MIX GROUP, fraudulently represented a series of statements, all of which statements were materially false and untrue at the time of their making. All of such statements violated the Arkansas Securities Act in connection with the attempt of the Defendants to purchase securities from Plaintiff. Such statements included, but are not necessarily limited to:

1.  MIX GROUP was a lawful broker-dealership; and,

2.  FIRO was either a registered broker or a representative of a registered broker; and,

3.  That the registered broker dealer had lawful authority in Arkansas and elsewhere to make and enter into a "Broker Engagement Agreement."

4.  The proposed transaction by the [broker-dealer] would be structured by FIRO et al to fully comply with all applicable local, state, federal or international laws, rules, regulations or statutes that would apply to such transaction as was contracted for.

As Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI well knew, all of such representations were false and all of their actions were intended to and did violate the Arkansas Securities Act, A.C.A. 23-42-301, et seq. Such actions were taken with the objective of purchasing securities from Plaintiff, and, furthering their ability to conduct the theft of trade secrets by way of trick, fraud and deception.

JUN-12-2006  Exhibit 9:02   OGC   202 220 9341   P.008

16.     Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and
GALANI incurred civil liability under A.C.A. 23-42-106 for this conduct through their
fraudulent attempt to purchase a security from Plaintiff.

17.     Plaintiff has been injured through the conduct of the Defendants TALON,
MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI and is entitled to recover for its
damages; for punitive damages to deter future such conduct, for an attorney fee, costs of
the action and all other relief the Court may find Plaintiff entitled to.

### COUNT THREE

18.     Plaintiff readopts and realleges each prior paragraph 1-17, and for additional
cause of action states that from on or about April 4, 2005 and through May 10, 2006,
Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI devised
and intended to devise a common scheme to induce the Plaintiff to enter into a contract.
The contract is appended hereto as **EXHIBIT 2**.

19.     No consideration has been given by TALON, MIX GROUP, FIRO,
BETTES, LOCHRIE, and GALANI for this contract.

20.     Notice of and a demand for rescission was made upon Defendants TALON,
MIX GROUP, BETTES, FIRO, LOCHRIE and GALANI, none of whom have responded
to the demand.

21.     But for the fraudulent inducement of the defendants TALON, MIX GROUP,
FIRO, BETTES, LOCHRIE, and GALANI, Plaintiff would not have entered into this
contract.

7

Case 6:05-cr-06116-C-JS   Document 121-10   Filed 10/02/07   Page 8 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 8 of 28
JUN-12-2006  16:03                                                    202 220 9341    P.009



22.    Upon credible information and belief, these same Defendants have engaged in, and are presently engaging in similar confidence schemes affecting other Benton County, Arkansas based businesses including Wal Mart, Inc.

23.    Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI have demonstrated a pattern and plan of organized criminally fraudulent activity that includes the creation of fictitious companies; the filing of false, incomplete, and fraudulent documents and statements with Defendant NASD; with the U.S. Securities and Exchange Commission; with other federal agencies; the use of fraudulent press releases; the use of fictitious names and false identities and similar conduct, all of which is dispositive of any claim of good faith in the inducement and creation of the contract set forth in **EXHIBIT 2**.

24.    As a result of the frauds of the defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI, Plaintiff has been injured in its business; has experienced tortuous interference with its business operations; its clients and customers; has suffered lost business opportunities and has been exposed to third-party claims for personal injury occasioned by the actions of the Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI.

25.    Plaintiff is entitled to its damages; for punitive damages to deter the Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI from future such conduct; for declaratory relief that the contract was fraudulently induced and that Plaintiff should be excused from any obligation thereunder.

26.    The conduct of the Defendants TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI is ongoing and affects like situated businesses in Benton County,

8

Case 6:05-cr-06116-CJS    Document 121-10    Filed 10/02/07    Page 9 of 28
Case 5:06-cv-05109-RTD    Document 1-2    Filed 06/16/2006    Page 9 of 28
JUN-12-2006 9:03        Exhibit 1    OUR OFFICE FROM    202 220 9341    P.010

Arkansas. Plaintiff is entitled to separate permanent injunctive relief against each

Defendant TALON, MIX GROUP, FIRO, BETTES, LOCHRIE, and GALANI, prohibiting

them from engaging in future such conduct against Plaintiff.

## COUNT FOUR

27.    Plaintiff readopts and realleges each prior paragraph 1-26, and for additional

cause of action states that from at least 1999 and continuing through the present, Defendant

NASD issued registrations to Defendants FIRO, BETTES, and TALON (including a

predecessor fraudulent entity Defendants FIRO & BETTES created called, "The

Investment Group.").

28.    Upon credible information and belief, Plaintiff alleges that Defendant

NASD senior managers and/or Directors instructed subordinate staff at NASD in Dallas,

Texas, in Washington D.C., and in New York City, New York, to create false registrations

for these defendants, all the while knowing that they were intentionally facilitating bogus

operations and operators, regardless of their ulterior motives.

29.    NASD, with wanton and reckless disregard for the consequences, and well

knowing that the Defendants TALON, FIRO and BETTES would and did solicit the

general public for business at all times material since 1999, allowed these Defendants to

operate without a fidelity bond in place, in deliberate violation of NASD Rule 3020, and

further permitting them to operate in violation of other applicable NASD rules and

regulations, and assuring that recovery from a bonding company by an injured third party

such as Plaintiff would be impossible. FIRO was issued CRD# 4654582 by Defendant

NASD and Defendant TALON was issued CRD# 126778 by Defendant NASD.

9

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 10 of 28
Case 5:06-cv-05109-RTD   Document T-2   Filed 06/16/2006   Page 10 of 28
JUN-12-2006 14:03      Exhibit 4      OGC                    202 220 9341    P.011



30.     It is directly contrary to the general operating rules, regulations and customary practices of NASD to allow a broker-dealership or a registered representative of a broker dealership to engage in the securities business without a fidelity bond.

31.     By allowing this situation to occur, NASD was well aware that Defendants TALON, FIRO and BETTES would likely cause irreparable injury or harm to the general public; for years, NASD deliberately withheld material information about those Defendants from the general public, and, for years, Defendant NASD purposely disseminated false and misleading information on its NASD "Broker Check" website[1] that vouched for the credentials of TALON, BETTES and FIRO. NASD never conducted the required periodic examinations of TALON as required by its own internal governance.

32.     Prior to engaging in any transaction with any of the other Defendants, Plaintiff undertook to repeatedly contact NASD to check the credentials of TALON, BETTES and FIRO, and received repeated assurances from Defendant NASD that they were in good standing with no disciplinary history. While fully knowing that TALON, FIRO and BETTES were fraudulent, NASD deliberately withheld vital information that would have given Plaintiff fair notice that Defendants FIRO and BETTES were registered under false names; they were conducting frauds and fraudulent transactions and that the firm, Defendant TALON, was being allowed to operate without a fidelity bond in place. As a result of the wanton, reckless, unconscionable, and outrageous conduct of NASD, Plaintiff has been injured. Defendant NASD has demonstrated deliberate indifference to the

---

[1] When contacted by Plaintiff prior to the filing of this suit regarding these matters, Defendant NASD attempted to systematically eradicate, erase, sequester, or hide various electronic files from both the general public and most NASD employees that deal with the general public in an effort to convey the false impression that Defendants TALON, FIRO and BREWER never had any sanction by the NASD. Prior to that event, Plaintiff and others did in fact obtain irrefutable evidence from the NASD that the Defendants TALON, FIRO and BREWER were in fact licensed by the NASD and issued credentials. Prior to filing suit, and after being tipped that the records destruction was occurring, Plaintiff's counsel contacted the General Counsel for the NASD, notified the NASD of the destruction of evidence, and requested abatement pending this suit.

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 11 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 11 of 28
JUN-12-2006 9:03       Exhibit 4      Ou~                    202 220 9341    P.012



substantial likelihood of injury resulting from its facilitating the fraudulent operations of
TALON, FIRO and BETTES.

33.    Plaintiff demands judgment against Defendant NASD for the full amount of
the contract set out as **EXHIBIT 2**. The conduct of NASD is so willful, wrongful,
deliberate, reckless, and indifferent as to warrant imposition of punitive damages. Plaintiff
prays for punitive damages in such sum as may be determined by the Court or at trial; for
permanent injunctive relief barring NASD from participating in any such future fraudulent
scheme or activity in Benton County, Arkansas, if it has the likelihood of injuring Plaintiff,
and for all other relief to which the Court may find Plaintiff entitled.

### DEMAND FOR JURY TRIAL

34.    Plaintiff demands trial by jury as to each count.

35.    WHEREFORE, premises considered, the Plaintiff demands judgment,
jointly and severally against the Defendants NASD, FIRO, BETTES, GALANI,
LOCHRIE, and TALON for its damages as set out above; for punitive damages in such
amounts as will deter the Defendants from similar future conduct; for injunctive relief, for
its attorney fees and costs where allowable by law and all other relief to which the Plaintiff
is entitled.

SHIMODA-ATLANTIC, INC., Plaintiff, by:

John Dodge
Ark/Bar. 78041
P.O. Box 912
Rogers, Arkansas 72756-0912
479-531-8975
479-631-3894 (facsimile)



SHIMODA-ATLANTIC v. TALON et al

# PLAINTIFF'S EXHIBIT 1

JUN-12-2~~~~:03       OG~                                    202 220 9341     P.014

Exhibit:

# Broker Engagement Agreement

## Between Shimoda-Atlantic, Inc., and The Mix Group of South Florida

This Engagement Agreement establishes the Terms and Conditions under which the Issuing Company, Shimoda-Atlantic (the "Company") agrees to engage Mix Group of South Florida, (the "Firm") to assist the Company in obtaining financing through a private placement of its securities. The Firm is a registered broker/dealer licensed to provide private placement services, or, a principal of The Firm is a NASD registered Broker Dealer with the lawful capacity requisite to the accomplishment of this transaction.

This placement is anticipated as being accomplished offshore and is cognizable as a securities transaction solely in a foreign nation, but not the United States nor any geographic subdivision thereof.

The Firm is to provide a qualified a private placement investor with minimum funding of $2,500,00.

The Company and The Firm agree to the following Terms and Conditions:

1.    The Company represents that the information, projections, pro forma operating statements and other materials provided to The Firm was prepared by the Company in good faith and does not to its knowledge contain any misrepresentation or false statement or fail to disclose any information necessary to prevent the information disclosed from being misleading. If any such information becomes inaccurate in any material respect, the Company will promptly notify The Firm and take appropriate steps to correct the inaccuracy. All financial statements/projections provided by the Company are unaudited. The Company and its legal counsel are solely responsible for

assuring that there are no conflicts with or violation of the rights of any present or former stockholders, employees or employer of any of the Company's officers, directors, employees or consultants, nor will any be created by the anticipated financing of the Company.

2.     The Company is relying on a private placement exemption from registration, the Company agrees that it will conduct itself so as to preserve such exemption. The Company agrees to indemnify The Firm and its Member Investors against damages and other costs resulting from any violations by the Company of federal or state securities laws.  The Firm agrees to indemnify the Company against damages and other costs resulting from any violations by The Firm of federal or state securities laws.

3.     The Company understands that The Firm may be liable (as a "statutory seller") for the losses if the offering is held not to be exempt from registration requirements imposed by the applicable jurisdictions. In addition, the Company understands that The Firm is responsible for ensuring that the offering meets certain regulatory requirements imposed by the SEC and NASD As a consequence, the Company agrees that with respect to any offering contemplated in this Agreement:

     (a) All funds secured from investors introduced through The Firm to the Company shall be held in escrow until the close of the offering.  The escrow account will meet all the criteria required by the applicable laws or regulatory authorities.

     (b) The Company will restrict or prohibit transfer of any securities purchased in the offering for whatever period is required to ensure that the offering remains exempt from federal registration and from registration in the applicable states or foreign countries.

JUN-12-2006   16:04            OL                                202 220 9341     P.016

**Exhibit**

(c) The Company will provide adequate assurances, by contract or otherwise, that it will not engage in future offerings that may endanger the exemption from federal, state or foreign registration of the offering.

4.      The Company will pay to The Firm a placement fee of ten percent (10%) of the total cash raised or other value received through the sale of equity, by the Company from the date the Company has raised a total of $2,500,000 from the sale of securities, or by other means.  Such payments of placement fees shall be made the same business day that the funds are cleared by the depository bank. In the event that funds clearance occurs too late in the banking day to originate an outbound wire, said funds will be transferred on the morning of the next banking business day following clearance of the received funds. In the event the total amount raised is $3,000,000, the Company will pay The Firm ten percent (10%) of the total cash raised plus an additional five percent (5%) on the additional $500,000 raised.

5.      If any provision of this Agreement is or should become inconsistent with any present or future law, rule or regulation of any governmental or regulatory body having jurisdiction over the subject matter of this Agreement, such provision will be deemed to be rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement will continue and remain in full force and effect. Either party's failure to insist at any time on strict compliance with this Agreement or with any of the terms hereunder or any continued course of such conduct on its part will in no event constitute or be considered a waiver by such party of any of its rights or privileges. This Agreement and the rights and obligations created under it will be binding on and inure solely to the benefit of the parties hereto and their respective successors and permitted assigns.

6.      This Agreement may only be amended or waived by written agreement of the parties (which may take the form of email messages), and shall be

Shimoda-Atlantic, Inc. and The Mix Group.                              Page    3





governed by the internal laws of the State of Arkansas without regard to conflicts or laws principles thereof. Notices shall be in writing and shall be sent by email or telecopy, delivered in person or deposited in the U. S. mail. The Company's and The Form's address for notices are shown below. Should legal action arise concerning this Engagement Agreement, the prevailing party shall be entitled to recover its legal fees and costs.

7.    The Company represents that it has been represented by suitably qualified legal counsel in the review and execution of this Agreement.

IN WITNESS WHEREOF, the undersigned, through their duly authorized officers, have executed this Agreement as of March 27, 2006.

**For the Company:**                                    **For Broker**

By: _____          By: _____

_____                  _____

John Dodge                                        John Firo

Title                                                     Title

Vice President                                      CEO

State of Incorporation: Arkansas          State of Incorporation: Florida

Address:                                             Address:

504 N. 13th Street                               102 N.E. 2nd Street, Ste. 276
Rogers, Arkansas 72756                      Boca Raton, Florida  33432

JUN-12-2   Exhibit 1 04        OGC                                      202 220 9341      P.018

SHIMODA-ATLANTIC v. TALON et al

PLAINTIFF'S EXHIBIT 2

Case 6:05-cr-06116-CJS  Document 121-10  Filed 10/02/07  Page 18 of 28
Case 5:06-cv-05109-RTD  Document T-2  Filed 06/16/2006  Page 18 of 28
JUN-12-**Exhibit** 6:04     OG       202 220 9341    P.019

## OFFER TO SELL & STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement, dated as of May 9, 2006 (this "Agreement") is entered into by and among Shimoda-Atlantic, Inc., an Arkansas corporation, (the "Company") and Mohammed Galani (the "Purchaser"). The parties, intending to be legally bound, hereby agree as follows:

1. **Sale of Common Stock.** Subject to the terms and conditions of this Agreement, Company hereby agrees to sell to Purchaser and Purchaser hereby agrees to purchase from Company an aggregate of 20,000,000 (twenty million) shares of Company's fully paid, non-assessable Common Stock (the "Shares"), at the purchase price of $0.15 per share for an aggregate purchase price of $3,000,000.

2. **Payment of Purchase Price.** The purchase price for the Shares shall be paid by delivery to Company at the time of execution of this Agreement of a check, wire transfer, or any combination thereof, in the amount of $3,000,000 payable to Company in four (4) installments of $750,000 each. The first installment shall be due and payable not more than thirty (30) days following the signing of this agreement.

3. **Installments.** In consideration of Purchaser's commitment to purchase up to an aggregate principal amount of $3,000,000 of Common Stock from Company, Company shall agree to accept payment for said shares on an installment basis thirty (30) days following the subscription of this agreement with like installments every six (6) weeks until the final installment is paid and the final closing then occurs (the "Closing Date").

4. **Representations and Warranties of Company.** Company hereby represents and warrants to Purchaser that, the statements contained in the following paragraphs of this Section 4 are all true and correct as of the Closing Date:

(a) **Organization and Standing: Articles and Bylaws.** Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Arkansas and has all requisite corporate power and authority to carry on its business as now conducted.

(b) **Corporate Power.** Company has all requisite legal and corporate power to enter into, execute and deliver this Agreement. This Agreement will be valid and binding obligations of Company, enforceable in accordance with their terms, except

1



JUN-12-2005 04      OGC                                    202 220 9341      P.020

as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(c) Authorization.

(1) Corporate Action. All corporate and legal action on the part of Company, its officers, directors and shareholders necessary for the execution and delivery of this Agreement, the sale and issuance of the Shares and the performance of Company's obligations hereunder have been taken.

(2) Valid Issuance. The shares of Common Stock issued pursuant to this agreement (collectively, the "Securities"), when issued will be validly issued and will be free of any liens or encumbrances; provided, however, that the Securities may be subject to restrictions on transfer under state and/or federal securities laws of the United States or the United Arab Emirates, or both, as set forth herein, and as may be required by future changes in such laws.

(d) Government Consent, etc. No consent, approval, order or authorization of, or designation, registration, declaration or filing with, any federal, state, local or other governmental authority on the part of Company is required in connection with the valid execution and delivery of this Agreement, or the offer, sale or issuance of the Securities, other than, if required, filings or qualifications under a claim to a federal transactional exemption which filings or qualifications, if required, will be timely filed or obtained by Company.

5. Representations and Warranties by Purchaser. Purchaser represents and warrants to Company as of the Closing Date as follows:

(a) Investment Intent: Authority. This Agreement is made with Purchaser in reliance upon Purchaser's representation to Company, evidenced by Purchaser's execution of this Agreement, that Purchaser is acquiring the Securities for investment for Purchaser's own account, not as nominee or agent, for investment and not with a view to, or for resale in connection with, any distribution or public offering thereof within the meaning of the Securities Act of 1933, as amended, (the "Securities Act") or any corresponding law of the United Arab Emirates. Purchaser has the full right, power, authority and capacity to enter into and perform this Agreement and the Agreement will constitute a valid and binding obligation upon



2

Purchaser, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(b) Transfer Restrictions. Purchaser covenants that in no event will it sell, transfer or otherwise dispose of any of the Securities other than in conjunction with an effective registration statement for the Securities under the Securities Act or pursuant to an exemption therefrom, or in compliance with Rule 144 promulgated under the Securities Act or to a person related to or an entity affiliated with said Purchaser and other than in compliance with the applicable securities regulation laws of any state.

(c) Knowledge and Experience. Purchaser (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of Purchaser's prospective investment in the Securities; (ii) has the ability to bear the economic risks of Purchaser's prospective investment; (iii) has had all questions which have been asked by Purchaser satisfactorily answered by Company; and (iv) has not been offered the Securities by any form of advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio, or any seminar or meeting whose attendees have been invited by any such media. Purchaser represents and warrants that it is an "accredited investor" within the meaning of Rule 501 of Regulation D of the Securities Act and/or any corresponding law, rule or regulation of the United Arab Emirates.

6.  Registration of the Shares to be Purchased.  The Company reserves the right to register the shares being purchased under this agreement at any time after the execution of the agreement, and warrants that it will include such shares under "piggyback" registration at no cost or liability to the Purchaser.

7.  Legends.  Company will place the following legends on each certificate representing Securities:

> THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED ("ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS ("BLUE SKY LAWS"). ANY TRANSFER OF SUCH SECURITIES WILL BE INVALID UNLESS A REGISTRATION STATEMENT UNDER THE

3

ACT OR AS REQUIRED BY BLUE SKY LAWS IS IN EFFECT AS TO SUCH TRANSFER OR IN THE OPINION OF COUNSEL SATISFACTORY TO THE COMPANY SUCH REGISTRATION IS UNNECESSARY IN ORDER FOR SUCH TRANSFER TO COMPLY WITH THE ACT OR BLUE SKY LAWS.

8. Miscellaneous.

(a) Waivers and Amendments. Any provision of this Agreement may be amended, waived or modified upon the written consent of Company and Purchaser.

(b) Governing Law. This Agreement, and all actions arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of Arkansas, without regard to the conflicts of law provisions of the State of Arkansas or of any other state. The parties acknowledge and agree that the exclusive venue and jurisdiction of any dispute arising out of this Agreement shall be a federal court located in the Western District of Arkansas.

(c) Entire Agreement. This Agreement together with any exhibits or codicils attached hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.

(d) Survival. The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(e) Notices, etc. Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given (i) upon receipt if personally delivered, (ii) three (3) days after being mailed by registered or certified mail, postage prepaid, or (iii) one day after being sent by recognized overnight courier or by facsimile, if to Purchaser, at such address or number as Purchaser shall have furnished to Company in writing and made a part hereof as a codicil, or if to Company, at 504 N. 13th St., Rogers, Arkansas, 72756 (facsimile 479-636-6161) or at such other address or number as Company shall later furnish to Purchaser in writing.

(f) Validity. If any provision of this Agreement, or the shares shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the

4

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 22 of 28
Case 5:06-cv-05109-RTD   Document T-2   Filed 06/16/2006   Page 22 of 28
JUN-12-EXHIBIT B:05         OGC              202 220 9341     P.023

remaining provisions shall not in any way be affected or impaired thereby.

(g) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(h) Assignment. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

SHIMODA-ATLANTIC, INC.

By: _____

Its: John Dodge, Vice President

PURCHASER:

By: _____
Mohammed Galani

Case 6:05-cr-06116-CJS Document 121-10 Filed 10/02/07 Page 23 of 28
Case 5:06-cv-05109-RTD Document 1-2 Filed 06/16/2006 Page 23 of 28
JUN-12-2006 6:05    OG_    202 220 9341    P.024

Exhibit 6 

**APPENDIX A**

## SCHEDULE OF CORPORATE DIRECTORS OF
## SHIMODA-ATLANTIC, INC. AS OF May 1, 2006

Chairman/Director       Leroy Hoback
Director       John Dodge
Outside Director       Loren Pederson[1]
Outside Director       Catherine Reed[2]
Outside Director       Jacki Ivy

Directors are elected according to the bylaws of the corporation and hold two (2) year terms. The terms of all directors will expire at the next annual meeting of the corporation (December 31, 2006) at which time directors will be elected by the shareholders.

---

[1] Mr. Pederson is also the chairman of the Audit Committee.
[2] Ms. Reed is also the chairwoman of the Executive Compensation Committee

6

JUN-12-2006 19:05        OGC                          202 220 9341      P.025

**APPENDIX B**

## SCHEDULE OF CORPORATE OFFICERS OF
## SHIMODA-ATLANTIC, INC.

President & CEO          Leroy Hoback

Vice President &
        Sec.-Tres.       John Dodge

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 25 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 25 of 28
JUN-12-2006 6:05          OGU                     202 220 9341     P.025

Exhibit 6

## APPENDIX C

### STATEMENT OF ISSUED & OUTSTANDING SHARES OF SHIMODA-ATLANTIC, INC.

Total Class(es) of Shares
Authorized by Corporate Charter                    One (1) Class

Type of Authorized Shares                          Fully paid, non-
                                                   assessable voting
                                                   Common Stock

Total Shares Authorized by Corporate Charter       100,000,000[3]

Issued & Outstanding Shares as of April 1, 2006    80,000,000

Shares Available for Issue as of April 1, 2006     20,000,000

---

[3] Only one class of shares is authorized: *Class A Common Stock*. There are no provisions for preferred stock at this time and none are authorized by way of the corporate charter.

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 26 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 26 of 28
JUN-12-2006 13:05      OGC                     202 220 9341      P.027

## APPENDIX D

### SCHEDULE OF MAJOR SHAREHOLDERS OF
### SHIMODA-ATLANTIC, INC.

| Shareholder | Shares Held | Percent of Total Owned |
|---|---|---|
| Leroy Hoback | 20,000,000 | 20% |
| John Dodge | 20,000,000 | 20% |
| David James Bolt Irrevocable Trust[4] | 40,000,000 | 40% |

---

[4] John Dodge is the Trustee of the David James Bolt Irrevocable Trust. Under the terms of the Trust Indenture, Mr. Dodge, or his successor, has voting control of the shares described. The beneficiary of the Trust will be entitled to exercise control of the Trust assets upon reaching the age of 26, or, on August 8, 2025.

**APPENDIX E**

## U.S. FOOD & DRUG ADMINISTRATION
## REGULATORY STATUS OF
## SHIMODA-ATLANTIC, INC.

Shimoda-Atlantic, Inc., is the listed sole-owner of ShimodaAtlantic Oncology Biosciences LLC (an Arkansas LLC) on the current FDA Form 2656 registration statement.

The following information items are relevant to the registration:

| | |
|---|---|
| Status of Registration | Current |
| NDC Labeler Code | 14213 |
| Number of Registered Prescription Items | 03 |
| Number of Registered OTC Items | 01 |
| FDA Facility Number | 3005098607 |
| Date of Last FDA Inspection | December 5, 2005 |
| Results of Inspection | In full compliance |
| Deficiencies Found at Last Inspection | None |
| cGMP Manufacturing Facility | Yes |
| Registered Address | 504 N. 13th St. Rogers, AR 72756 |

Case 6:05-cr-06116-CJS   Document 121-10   Filed 10/02/07   Page 28 of 28
Case 5:06-cv-05109-RTD   Document 1-2   Filed 06/16/2006   Page 28 of 28
Exhibit I

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

# S U M M O N S

SHIMODA-ATLANTIC, INC.                    )
        Plaintiff,                         )
                                 )
v.                                        )     **No. C V 2006 - 1095-1**
                                 )

TALON HOLDINGS, INC.,                                              **DEFENDANTS**
a Delaware corporation domesticated
in Texas; THE MIX GROUP OF SOUTH
FLORIDA, INC., a Florida corporation,
JOHN DOE #1 a/k/a "JOHN V. FIRO,"
a/k/a/ "THOMAS V. FARO," an individual,
ROBERT BETES a/k/a "ROBERT O. BREWER," an individual,
PATRICK JOSEPH LOCHRIE, an individual,
JOHN DOE #3, a/k/a "MOHAMMED GALANI," a/k/a
"MOHAMMED GILANI," an individual, and
THE NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC., a corporation, and
its wholly owned subsidiary, NASD REGULATION. INC.
a corporation,

THE STATE OF ARKANSAS TO DEFENDANT: **NASD REGULATION, INC.**
                                         **c/o Corporate Creations Network Inc.**
                                         **3208 Asher Ave.**
                                         Little Rock, AR 72204

You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached Complaint.

1.  The attached Complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the Petition unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

    A.  It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
    B.  It must be filed in the Court Clerk's Office within 20 days from the day you were served with this Summons.

2.  If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed within the time allowed.

3.  Additional Notices: None

WITNESS my hand and seal of the Court this _6th_ day of _June_, 2006.

ADDRESS OF CLERK'S OFFICE:
Benton County Courthouse
Bentonville, AR 72712

                                Brenda DeShields, CLERK

> **ATTORNEY FOR PLAINTFF:**
> John Dodge
> Attorney at Law
> P.O. Box 912
> Rogers, AR 72756-0912
> 479-531-8975

                           By: _Kathy Cartwright_ D.C.