UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                                  05-CR-6116CJS

        v.

VIOLETTE GAIL ELDRIDGE, et. al

               Defendants.
_____

## GOVERNMENT'S RESPONSE TO DEFENDANT ELDRIDGE'S RENEWED MOTIONS FOR DISMISSAL, SEVERANCE AND IN THE ALTERNATIVE FOR A CONTINUANCE

Defendant Eldridge, on the eve of trial, renews her motions for dismissal, severance, preclusion of the use of the defendants' testimony before the Securities and Exchange Commission (SEC) and in the alternative requests a continuance until after the conclusion of a second criminal matter initiated against defendant Eldridge in the Southern District of Florida. The defendant's motion contains a panoply of spurious allegations of governmental bad faith and most notably lacks any evidentiary support. Defendant Eldridge alleges a conspiracy among all of the entities involved in her investigation including the Court in the Southern District of Indiana, as well as private plaintiffs that initiated civil actions against Eldridge in an attempt to recover their loss. Defendant Eldridge's allegations lack merit, rest on mere speculation and raise no basis for the relief demanded. Therefore her motions should be denied.

The government will individually address the issues raised in defendant Eldridge's motion.

1

**Motion for Continuance (Adjournment)**

Defendant Eldridge claims that the recent indictment of both she and her attorney Katherine Crase in the Southern District of Florida adversely affects her presentation of a defense in her New York trial.   Eldridge's allegation that the government intentionally timed this Florida indictment to interfere with her preparation for trial, while false, will be addressed *infra*.

The government did not withhold any information concerning Ms. Crase's involvement with defendant Eldridge in alleged criminal conduct in Florida and notice was provided to defense counsel as early as May of 2005 about a potential conflict of interest between Crase and defendant Eldridge.  Again at the time of her arraignment, defense counsel for defendant Eldridge was informed of the potential conflict of interest between his client and Katherine Crase and was told that any plea bargain offered to defendant Eldridge would include her cooperation in the Florida investigation, potentially including testimony against Crase.

Eldridge's defense counsel fails to appreciate the nature of the notice being provided and the potential adverse impact further discussions with Crase may have on his client's interest especially if Eldridge and Crase were later charged in a subsequent indictment as is currently the case.  Rather defense counsel portrays such discussions as the government's attempt to interfere with defendant Eldridge's Sixth Amendment right to consult with the counsel of her choice. Defense counsel attempts to turn the government's ethical disclosure into actions demonstrating bad faith.

Eldridge's defense counsel also fails to objectively measure the credibility of any testimony offered by Crase on behalf of Eldridge.  Such testimony would be subject to

impeachment based on Crase's continued relationship with Eldridge in subsequent criminal activities.  The character and relationship to the defendant (bias) of any witness is subject to impeachment.   It is far more likely that Crase's testimony would highly prejudice defendant Eldridge rather than present a meaningful defense.

## Defendants' Statements to the SEC

Defendant Eldridge again raises objection to the government's use of the defendants' sworn testimony before the SEC.  This matter was specifically argued pursuant to the defendants' omnibus pretrial motions and therefore resolved by the Court.  Defendant Eldridge has failed to raise any new basis for the exclusion of the defendants' sworn testimony.  This testimony, when offered by the government, would be subject to appropriate limiting instructions issued by the Court advising the jury as to which defendants such statements may be considered. These statements may also be admissible against all defendants under Fed.R.Evid 801(d)(2)(E) as statements made by the defendants in furtherance of the conspiracy as the majority of the statements occurred during the time frame of the charged conspiracy and were arguably designed to mislead the SEC, thereby allowing the conspiracy to continue.  Such a determination must await the trial.

## Collateral Estoppel and Res Judicata

Defendant Eldridge once again misstates the nature of the complaint and judicial proceedings in the SEC civil enforcement action filed in the Southern District of Indiana as was previously explained in the government's consolidated pretrial response (consolidated response

at page 10).


Defendant Eldridge moved to dismiss the indictment against her alleging that the government is precluded from trying her under the doctrines of res judicata and collateral estoppel based on a civil ruling in the Southern District of Indiana that dismissed Eldridge from the SEC's civil enforcement proceeding after finding a lack of venue.  Exhibit 3 of the government's consolidated response provides a copy of the Indiana court's Dismissal Order.

The Supreme Court has stated that "collateral estoppel (issue preclusion) cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case."  Allen v. McCurry, 499 U.S. 90, 95, 101 S.Ct 411, 415 (1980). (internal quotations and citations omitted).  See also Harris v. Washington, 404 U.S. 55, 56, 92 S.Ct. 183, 184 (1972) (for collateral estoppel to apply, issue of ultimate fact has to be determined by a final judgement involving the same parties).

In Nevada v. United States, the Supreme Court stated "the doctrine of res judicata (claim preclusion) provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." 463 U.S. 110, 129, 103 S.Ct. 2906, 2918 (1983) (internal citation omitted).

The Court in the Southern District of Indiana did not address the merits of the SEC's civil action but rather, examined only the allegations in the SEC's Complaint to determine proper venue.  The Court determined that because the complaint failed to allege acts or transactions by

4

Eldridge occurring in the Southern District of Indiana, and <u>because a conspiracy among Eldridge</u> <u>and the other defendants was not alleged</u>, there was no basis to apply the coconspirator theory to establish venue.  Therefore the Court ruled that venue over defendant Eldridge was improper.  In the present Indictment, a conspiracy between Eldridge and the other defendants is alleged in Counts One and Ten and the Indictment is replete with alleged overt acts committed during and in furtherance of the conspiracy that directly involve the Western District of New York thereby establishing proper venue.

Nor was the government in privity with the SEC.  In the earlier civil proceeding the government was not represented in its capacity to prosecute defendant Eldridge for criminal violations, as the SEC does not have the authority to represent the United States in criminal matters, of which the defendant Eldridge was specifically informed during the SEC proceeding. <u>See</u> Exhibit 4 (SEC form 1662 at Paragraph 6, Rule 5f) filed with the government's earlier consolidated response.  Therefore, there was no joinder of parties, there was no final adjudication on the merits, and there is no basis to apply the principles of <u>res judicata</u> or <u>collateral</u> <u>estoppel</u>.

The defendant has failed to raise any new or additional facts which would require the Court to modify its earlier holding denying defendant Eldridge's request to dismiss the counts in the Indictment charging her with conspiracy and the Court's finding of proper venue.

**<u>Other Crimes Evidence</u>**

Counsel for defendant Eldridge in his earlier filed pretrial motion acknowledged the receipt of notice under Rule 404(b) relating to the Florida investigation.  <u>See</u> Defendant

Eldridge's pretrial motion at page 23.  As indicated in our consolidated response (at page 22), defense counsel was informed that  during the time period charged in the conspiracy, Eldridge had discussions with at least two individuals, identified by name to Eldridge's counsel, who defendant Eldridge instructed how to promote HYIP's other than the programs charged in the indictment.  Additionally, counsel was informed that defendant Eldridge was the subject of a FBI undercover operation investigating money laundering in the Southern District of Florida.  The government indicated that defendant Eldridge was provided with copies of her taped conversations created during the undercover investigation.  Eldridge was informed that the subject matter of the conversations related to future money laundering activity and would be used to prove defendant Eldridge's motive, opportunity, intent, preparation, plan, knowledge, identity and or absence of mistake or accident for the money laundering crimes charged in the current Indictment.

Eldridge's defense counsel mistakes the disclosure required for the introduction of "other crimes evidence" under Fed.R.Evid. 404(b) with that required under Rule 16.  United States v. Matera, 489 F.3d 115, 120 (2d Cir. 2007) (in RICO case, government provision of notice of its intention to offer evidence of other crimes not specifically alleged in the indictment represented adequate notice under Rule 404(b)); United States v. Barth, 219 F.R.D. 153, 155 (D.N.D. 2003) (Rule 404(b) requires that reasonable notice in advance of trial ... of the general nature of any [other crimes evidence] it intends to introduce at trial).

As indicated in our earlier consolidated response, defendant Eldridge was provided with more than the mere  nature of the material to be offered against her under Rule 404(b) regarding the "Florida Sting" investigation.  Eldridge was provided not only with recordings of her

statements, but also with the recordings of others also under investigation.  Clearly defendant

Eldridge received notice as to the subject matter to be presented.  Now defense counsel alleges

that the government should be sanctioned for its failure to provide email and other evidence of

the crimes alleged in the Florida indictment.  Such materials may be producible under Rule 16 in

the Florida case but their production is not required under Rule 404(b) in this case.  All that is

required under the federal rules of evidence is notice to the defendant of the general nature and

subject matter of the other crimes evidence to be introduced, information counsel for defendant

Eldridge has already acknowledged receiving.

Again, defendant Eldridge has failed to identify any legal or evidentiary basis that would

support the legality of her demand for the production of the described  materials or the need to

sanction the government for their lack of production.  Nor has defendant Eldridge indicated how

the requested materials are material to her defense of the crimes charged in the current

Indictment.  Therefore, her request should be summarily denied.

**Outstanding Document Requests**

Counsel for defendant Eldridge alleges that the government intentionally withheld

documents from the defendant during its discovery.  Again, the defendant provides mere

speculation rather than evidentiary proof.   As the government has stated on numerous occasions,

it has provided the defendant open access during discovery to documents in its possession that

relate to the investigation that culminated in the Indictment of the defendants in the Western

District of New York.  However, discovery has not been reciprocal.  To date the government has

not received notice of, or access to, even one document from any of the defendants pursuant to

their discovery obligations under Rule 16 despite repeated requests.

Counsel for defendant Eldridge attributes his recent need to issue subpoenas duces tecum under Rule 17 to the intentional withholding of such documents by the government. Again counsel's allegation lacks factual support. On a routine basis, the government has provided defense counsel access to all documents in the government's possession produced by third parties during the investigation and has provided copies of documents on request.

Defendant Eldridge appears to be aware of additional financial documents which existed at one time but are not in the possession of the government. Such knowledge appears to be the driving force behind the recent flurry of subpoenas. Defense counsel for Eldridge alleges, without the offer of any supporting proof, that such documents are necessary for her defense and their lack of production further justifies Eldridge's need for a continuance. The question that begs to be answered is why did defense counsel wait until May of 2007 to initiate the subpoena process to obtain materials. From the day of arraignment in September of 2005, Eldridge's defense counsel had the ability to petition the Court for subpoenas but failed to do so. Instead, counsel chose to initiate the massive subpoena process requiring the production of business records dating back to 1999 after the Court and all counsel determined a mutually agreeable trial date. Any delay in subpoena production is directly attributable to the lack of diligence by Eldridge's defense counsel rather than any bad faith on the part of the government.

Eldridge's defense counsel also failed to provide any evidentiary basis to demonstrate how the outstanding records are material to his client's defense. Rather as repeatedly raised throughout his motion, counsel merely speculates as to the need for the materials being subpoenaed and makes derogatory allegations against the government.

8

**Governmental Bad Faith**

Throughout his pleading Eldridge's defense counsel attributes an evil motive and bad faith to all actions involving his client.  Eldridge's defense counsel maintains that there is a global conspiracy which involves not only the prosecutors and the FBI, but also involves actions taken by private citizens (defrauded investors) as well as the Court in the Southern District of Indiana.

Defendant Eldridge also attributes bad faith to the government's *Giglio* disclosure that James Ozmer, a government witness who worked with, and was an officer of, the UTA during the relevant time period, was the subject of an undercover investigation into investment fraud. At the time, Ozmer was promoting High Yield Investment Programs on behalf of the UTA.  The undercover investigation was completely independent of the current investigation, conducted in a different district and merely demonstrates that fraudulent promotions are subject to investigative scrutiny rather than a global campaign against his client.

The government prosecutors again represent that they were not involved in directing the investigations conducted by the SEC, nor were actions undertaken by the government's criminal investigators at the request of, or at the direction of,  the SEC.  While the SEC provided the government with copies of its investigative documents and evidence, the process was not reciprocal in that investigative information did not flow back to the SEC.  All representations to the contrary are false.

Defendant Eldridge also alleges that the government has acted in bad faith by failing to

provide information relating to coconspirator Marc Robinson.  The government has already

provided *Giglio* information concerning Marc Robinson's prior criminal convictions and his

current conviction for the charged offense is a matter of public record.  The remainder of the

material defendant Eldridge requests concerning Marc Robinson prior criminal activities is also a

matter of public record and directly available to her counsel.

The attorneys involved in the matter indicted in the Western District of New York were

not involved in the investigation or any prosecutive decisions involving the criminal

investigation and indictment returned in the Southern District of Florida.  Rather the timing

decisions involving that case were made solely by the attorneys assigned to the prosecution of

that matter.


**<u>Conclusion</u>**

In his motions to the Court, counsel for defendant Eldridge has failed to raise new any

issues not previously addressed by the Court, nor has he provided any factual support or legal

authority that would warrant the Court's granting the requested relief.  Defendant Eldridge is

properly charged as a coconspirator in the pending Indictment and neither dismissal or severance

is warranted.  Defendant Eldridge has failed to identify any factual basis to demonstrate that the

materials outstanding under the Rule 17 subpoenas are material to her defense nor has she

explained the excessive delay in initiating the subpoena requests.  Defendant Eldridge has failed

to provide any evidence that the government failed to provide proper notice of "other crimes

evidence" to be offered in her trial.  Finally, defendant Eldridge has failed to demonstrate bad

faith on the part of the government in providing notice to defense counsel that Eldridge's

attorney, Katherine Crase, and Eldridge were the subjects of an ongoing investigation and the incubating conflict of interest that could occur if the investigation culminated in an indictment charging both parties.   As the defendant has failed to raise any basis for the relief requested, her motions should be denied.

        DATED:      Rochester, New York, October 10, 2007.

                                      TERRANCE P. FLYNN
                                      United States Attorney
                                      Western District of New York

                            BY:   S/WILLIAM H. BOWNE, III
                                      William H. Bowne, III
                                      Trial Attorney
                                      Dept. of Justice,
                                      Criminal Division,
                                      Fraud Section
                                      Tel: 585-263-6760
                                      Fax: 585-263-6420
                                      William.Bowne2@usdoj.gov

                                      S/BRADLEY E. TYLER
                                      BRADLEY E. TYLER
                                      Assistant U.S. Attorney
                                      United States Attorney's Office
                                      100 State Street, Suite 620
                                      Rochester, New York 14614
                                      Tel: 585-263-6760
                                      Fax: 585-263-6420
                                      Bradley.E.Tyler@usdoj.gov

To:

Christopher S. Ciaccio, Esq,
Scott A. Garretson, Esq.
Mark D. Hosken, Esq.
James P. Vacca, Esq.
Maurice J. Verrillo, Esq.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

              v.

                                          05-CR-6116CJS

VIOLETTE GAIL ELDRIDGE, et. al

                    Defendants.

_____


## CERTIFICATE OF SERVICE


       I hereby certify that on October 10, 2007, I electronically filed the foregoing with the

Clerk of the District Court using its CM/ECF system, which would then electronically notify the

following CM/ECF participant(s) on this case:

               Christopher S. Ciaccio, Esq,

               Scott A. Garretson, Esq.

               Mark D. Hosken, Esq.

               James P. Vacca, Esq.

               Maurice J. Verrillo, Esq.


                                    S/ANNA M. SEDOR
                                    ANNA M. SEDOR