1  exhibits 30 days before trial; and if there is the
2  possibility of this issue of a claim that the government
3  is attempting to withhold this information by hiding it
4  may, we may be able to hand it that way.
5      THE COURT: Let me see this. It is a legitimate
6  response in discovery, what I suggested, to the extent the
7  documents exist they are available for inspection at such
8  and such a location at a mutually convenient time. Is
9  that sufficient? Mr. Verillo is saying it is not. He is
10 saying you have to tell me whether the document exists.
11 If I asked for a record on widgets, it is not enough to
12 say if it is here you can look at it; you have to say
13 whether it does or does not exist.
14     MR. BOWNE: I think it is sufficient to say if it
15 exists, it is here; otherwise, you are putting the onus on
16 the government to do the discovery for the defendant. And
17 it would be to our prejudice to the extent we say we made
18 a good-faith effort, we tried to find the document, and we
19 can't find it, and later somebody else finds it. Now, it
20 has always been there, but in that event we're required to
21 do the searching rather than defense counsel.
22     MR. VERILLO: Your Honor, I just want to know. If
23 the Court -- I want to be able to access this material. I
24 believe it is relevant information I have asked for. If
25 it is not going to be produced by the government, it is

1    going to be incorporated in the later motion on subpoena
2    duces tecum. I am trying to make effective use of time,
3    cost. If the government has it, say so. I am not trying
4    to hold them to it. If it would expedite my acquiring
5    these documents, which we believe is relevant to our
6    defense, that's it. If they don't know about it, and it's
7    not something they have produced, we will have to get a
8    subpoena duces tecum.
9         THE COURT: Let's move to that. If you don't tell
10   me whether it exists, I am going to ask for a subpoena
11   duces tecum for all e-mails prior to 1999, serve it on the
12   government, and ask it be produced to the Court.
13        MR. BOWNE: I think what he is advocating is to
14   serve it on the originator and ask it be produced to the
15   Court. We're not withholding any information from him.
16   If he makes a demand for a computer file, we never seized
17   a computer and don't have a computer file.
18        A lot of these things or items he is requesting, if
19   they exist at all, they don't exist in a way that we have
20   isolated; and we're not intentionally saying we know it
21   exists and we know where it is and we're not providing it
22   to you. What we're saying is it may exist. If it does it
23   is in the -- for instance, he wants the DLJ records. We
24   subpoenaed DLJ. What were we received from DLJ is
25   available and segregated. If he wants to look through

1   those and find out whatever documents are in there, he is
2   certainly welcome to do that. Thereafter, if there is
3   something he believes exists which is not in that file and
4   he wants to issue a subpoena with the Court's permission
5   to DLJ or Credit Swiss Now, that's certainly fine and
6   appropriate. But this idea that is being intimated, that
7   we know it exists and we know where to find it but we're
8   intentionally not giving it to him --
9       THE COURT: No, I don't even know it is that. I
10   think you might have hit on it the first time. Maybe
11   you're right. Maybe Mr. Verillo feels it is the
12   government's responsibility to look and see if you have
13   the document, not that you're burying it at the bottom of
14   the stack, but to see if you have it. I am agreeing with
15   you on the discovery request. I think those are -- that
16   you have appropriately complied, but what he is now taking
17   is the next level. What if he serves upon you a subpoena
18   duces tecum that I want any and all records in the
19   government's possession pertaining to e-mails between Mr.
20   Knight and Ms. Eldridge for the period of 1988 through
21   1999. Let's say he did that.
22       MR. BOWNE: My response would be that, that would
23   be totally inappropriate, and I would hope that the Court
24   would not authorize such a subpoena, because basically
25   discovery is controlled by Rule 16; and we have complied

1  with Rule 16.
2     THE COURT: What's the government's position then,
3  so we're clear, and when -- for Mr. Verillo's benefit,
4  what can he use a subpoena duces tecum for? I hear what
5  you're saying loud and clear. You're saying you can't use
6  a subpoena duces tecum if you already had access to any of
7  the material via discovery. So what can he use a subpoena
8  duces tecum for in this case?
9     MR. BOWNE: I would think to gather evidence which
10 he believes exists but which the government hasn't --
11    THE COURT: Does not possess.
12    MR. BOWNE: Does not possess.
13    MR. VERILLO: I was focusing on third parties with
14 subpoena issues.
15    THE COURT: So good, then you're both on the same
16 page.
17    MR. VERILLO: Yes.
18    THE COURT: But I didn't know what you meant that
19 if you don't get the specification we want in discovery,
20 then it's going to lead --
21    MR. VERILLO: I will state for the record I spent a
22 number of hours reviewing the records, and I think the
23 agent would acknowledge that; and obviously these are the
24 records the government has. If they knew of something --
25 but the answer I have been getting is "the file is there."

```
 1  If they knew about it, if they knew the file would exist,
 2  if they would just help me.
 3          THE COURT: I understand that.
 4          MR. VERILLO: Yeah.
 5          THE COURT: I think their response is satisfactory.
 6  I want to curtail any issue that may arise such as they
 7  didn't tell us that, then we could have moved to the next
 8  step, a subpoena duces tecum.
 9          MR. VERILLO: I was talking third party.
10          THE COURT: Then there's no issue.
11          MR. VERILLO: There are other matters, your Honor.
12          THE COURT: Okay.
13          MR. VERILLO: There's a situation involving the
14  Florida sting operation, and as I understand it one of the
15  members of the operation from this bureau was acting as a
16  licensed securities dealer from a company which was
17  security brokers, and that was part of the setup they had,
18  that they were licensed as brokers. We would like
19  information related to any of this authorizations,
20  holdings, any of the licensing --
21          THE COURT: Help me out. Where are you in your
22  discovery demand?
23          MR. VERILLO: I believe that's (C)(9).
24          THE COURT: What page?
25          MR. VERILLO: Page 29, number 9.
```