UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -vs-                          **NOTICE OF MOTION**
                                         #05-CR-6116-CJS

VIOLETTE GAIL ELDRIDGE, et al

**PLEASE TAKE NOTICE**, that upon the declaration of Maurice J. Verrillo, Esq., attorney

for the defendant Gail Eldridge, and upon all the prior papers and proceedings in this case, the

undersigned will move this Court before the Hon. Charles J. Siragusa, at the United States

Courthouse for the Western District of New York located at 100 State Street, Rochester, New

York on a date and time to be fixed by the Court for an order granting the following relief

    A.  Granting the defendant leave for disclosure as to jury statistics and other information

          relative to the potential pool of jurors in the above-entitled proceeding and to preserve

          any potential challenges or objections to the jury selection process;

    B.  Suppression of evidence based on improper government activity and abuse of  the

          collateral civil SEC proceedings during the prosecution of this criminal case and the

          companion case in Florida, or in the alternative, for the dismissal of this indictment;

    C.  Renewal of the defendant's motion to dismiss the Indictment based on the lack of

          necessity for an extension of time to commence this criminal prosecution creating pre-

          indictment delays which  prejudiced the defendant;

    D.  Renewal of the Brady motion to obtain discovery as requested herein;

    E.  Dismissal of the Indictment due to a pattern of outrageous government conduct

          towards the defendant;

    F.  Dismissal of the Indictment due to Double Jeopardy;

**LAW OFFICES OF**
**MAURICE J. VERRILLO, P.C.**

**ONE EAST MAIN STREET**
**SUITE 711**
**ROCHESTER, NY 14614**

**TEL: (585) 232-2640**

G.  For such other and further relief as may be just and proper.

Dated: September 11, 2008                    Yours etc.,


/s/ Maurice Verrillo
Maurice J. Verrillo, Esq.

LAW OFFICE OF MAURICE J. VERRILLO, P.C.
Attorney for the Defendant Gail Eldridge
One East Main Street, Suite 711
Rochester, New York 14614
(585) 232-2640

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.


ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      vs.                                    **ATTORNEY DECLARATION**

VIOLETTE GAIL ELDRIDGE, et al

Maurice J. Verrillo, declares, pursuant to 28 U.S.C. Section 1746(2) that:

1. I am the attorney for the defendant Gail Eldridge.

2. I execute this declaration in support of the defendant's motion for jury data in advance of trial, for suppression of evidence, for renewal of her motion to dismiss the indictment, and for such other and further relief as may be just and proper.

3. For clarity's sake, your declarant will address these matters as follows.

## MOTION FOR JURY DISCLOSURE

4. In accordance with 28 U.S.C. 186e et seq. along with the defendant's constitutional right to due process of law and a fair trial under the Sixth Amendment of the U.S. Constitution, the defendant respectfully requests the following disclosure:

A. A copy of the sample juror questionnaire.

B. A copy of the Western District's procedures and policies relative to the selection of jurors in a Federal criminal trial. In accordance with federal law, the defendant requests disclosure of the person responsible for managing the jury selection process along with disclosure as to the standards, policies, and procedures relative to the selection of jurors and the use of a master list.

C. A list of the classes or groups of people who are exempted or excused from federal jury service.

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

D.  The defendant requests a copy of the jury information form used in the selection of potential jurors.

E.  Statistical information as to the makeup and composition of prior jury panels in federal trials.

5.  The defendant is entitled to a cross-section of individuals in the selection process.  As a Cherokee Indian, the defendant is concerned that a representative sampling of Native Americans are present as a part of the potential jury pool.

6.  The defendant respectfully requests that the Court grant pre-trial disclosure of the requested matters relative to jury selection, in anticipation of a Batson challenge to the jury panel.

## SUPPRESSION OF EVIDENCE

7.  The defendant has previously filed motions in October 2007 and March 2008 concerning the Government's prosecution activities in this case and the companion Florida case.

8.  The defendant asserts that some historical information is in order:

A.  Defendant Eldridge has been the recipient of substantial attention from the government.  To date, and to the knowledge of the defendant, she has had to defend herself in two civil cases, two criminal cases and a tax court case all of which involve the events for which she is under indictment in this current New York matter.  In addition, she has been the target of 6 distinct undercover operations, and has otherwise been investigated, all at the hands of our government.  Defendant had no prior criminal history or any other rational indicator of participating in any criminal activity which justifies such scrutiny.  Defendant Eldridge has a history of assisting law enforcement, reporting criminal behavior, and whistle-blowing, causing the actions of the

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

government toward her to appear mired in retribution and persecution rather than designed to apprehend a criminal.

B.  Specifics of Defendant Eldridge's assistance to law enforcement, if required, are requested to be disclosed in camera as it often involved undercover roles and exposure could create additional unwanted problems .In her zeal to report nefarious activity, Eldridge has unwittingly reported the activities of cooperating witnesses and federal agents working on behalf of the government.

C.  Twice Eldridge has been involved in reporting the illegal activities of one Irish citizen, Patrick Lochrie to Federal authorities.  In 1997, Eldridge was introduced to Lochrie in what now appears to be a meeting orchestrated by the government.  Lochrie was also alleged to have involvement in an overseas terrorist plot targeting the US, and Eldridge arranged for the witnesses to his participation to share this information with the CIA, also in 1997.  For obvious reasons, Eldridge declined Lochrie's invitations to work together, and all communication ceased.  No action was taken by the government against Lochrie to the best of Eldridge's knowledge.  In 2003 Lochrie reappeared, again as orchestrated by the government, and reportedly based upon the factual nexus of the NY case, and proceeded to run four more distinct sting operations against Eldridge, one of which resulted in the indictment in Florida.

D.  Two other parties were introduced to Eldridge in 1997 who have since appear to be government operatives: George Bevre a/k/a George Hart and Richard Sowden.  All three were in attendance at a meeting devised by the government to entrap Eldridge. Soon thereafter Eldridge uncovered Lochrie's illegal activities, and he vanished until 2003.  Sowden maintained contact with Eldridge from 1997 through 2003 when he

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

introduced Lochrie to Eldridge a second time.  George Bevre infiltrated, detained, and

stole documents from Eldridge with Bevre alleging his actions were on behalf of the

government.  Eldridge had his actions reported to the Department of Justice and no

action was taken Bevre's interactions with Eldridge ceased in 1999.

E.  Bevre, again on behalf of the government, reappeared in 2000 interacting with

government witness Michael Fine, and co-defendants Lyttle and Knight and

unbeknownst to Eldridge.   Bevre interfered with Lyttle and Knight, advising them to

cease cooperating with Eldridge's efforts to legally resolve the situation.  Bevre

changed the course of events in order to create an appearance that Eldridge was

participating in a crime, and obtained statements from co-defendants regarding

Eldridge's participation in events reportedly in cooperation with the government.

Bevre also submitted affidavits in 2006 to the SEC, such affidavits withheld by the

SEC from counsel in Eldridge's SEC cases.  Bevre's affidavits also materially

misrepresent Eldridge's involvement in events.

9.  The defendant wishes to supplement her prior motions with the following information:

A.  The defendant has filed a joint motion with her prior attorney, Katherine Crase seeking

a dismissal of the Florida indictment due to law enforcement and government

misconduct.  Their joint motion in the Florida case is attached as Exhibit "A".

B.  An Indiana SEC transcript was also disclosed at the Florida trial  dated April 27, 2007

indicating that the SEC possessed information about the Hungary account of Mr.

Lyttle no later than June 2005, which preceded the August 2005 indictment and further

that Exhibit "3" referenced in the transcript establishes the existence of this

information.  Pages 107 to 109 of the transcript are attached as Exhibit "B" and the

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

ABN AMRO certification is attached as Exhibit "C". It is unclear from the transcript when these records first came into the possession of the government. The defendant further contends that the Government had the necessary Hungary information as early as the time of Mr. Lyttle's deposition in June 2001 and no later than June 2005, when ABN AMRO certified the Hungary records.

C. The defendant contends that the Government sought an extension for the statute of limitations not because it needed the Hungary records; but, that it was using the Grand Jury process to investigate Mrs. Eldridge and to use the grand jury subpoena process to pursue claims against her. The delay in filing the Indictment was excessive and unnecessary. The collateral SEC proceeding was improperly used as a discovery device to prosecute the defendant in the New York and subsequent Florida cases. **U.S. v. Thompson,** 104 F. Supp.2d 1303 (D.Ct. Kans. 2000).

D. The affidavit of Chris Larsen dated August 5, 2008 is attached as Exhibit "D". Mr. Larsen attests to his knowledge of activities purportedly on behalf of the United States Government in mid 1998 wherein Mrs. Eldridge was alleged to have been detained and denied her freedom by George Bevre, an alleged CIA operative.

E. The Government failed to disclose to Mrs. Eldridge prior to the time of her SEC testimony that the Government was actively cooperating with the SEC in its investigation of Mrs. Eldridge and that criminal charges were contemplated against her. The failure to disclose the existence of an actual criminal investigation in coordination with the SEC was highly prejudicial to Mrs. Eldridge.

10. The defendant seeks the suppression of evidence arising from the SEC investigation, suppression of her SEC testimony and all evidence derived from her testimony.

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

## **DISMISSAL OF INDICTMENT**

11. The defendant further seeks a dismissal of the Indictment for the following reasons:

A. The abusive and unlawful activities of Government agents justifies the dismissal of this case.

B. The new evidence resulting from disclosure in the Florida case further establishes that the request for an extension of time for statute of limitations purposes was unnecessary and was utilized to pursue criminal investigations of the defendant in the Florida case.

C. As a part of the Florida Jencks disclosure, it was learned that Patrick Lochrie, a cooperating Government witness, stole documents from Mrs. Eldridge's office during the course of the Florida sting operation.

D. The affidavit of Chris Larsen dated August 5, 2008 is attached as Exhibit "D".  Mr. Larsen attests to his knowledge of activities purportedly on behalf of the United States Government in mid 1998 wherein Mrs. Eldridge was alleged to have been detained and denied her freedom by George Bevre, an alleged CIA operative.

E. Use of privileged information before the grand jury to obtain indictment; Prosecution obtained the testimony of Eldridge's former attorney Michael Bach.  His testimony related directly to his role as attorney for Eldridge.  This is a violation of the sixth amendment right to counsel and the fifth  amendment rights to due process and defendant's attorney-client privilege guaranteed thereunder.

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

F.  Abuse of grand jury process in New York and/or Florida.  The prosecution in New York and Florida operate out of the same office in Washington, D.C..  The timing of the Florida grand jury indictment was delayed for over three years and the timing was designed to severely prejudice Defendant Eldridge by arresting her counsel in the SEC case, who was also slated to be a fact witness in the NY case.  The NY grand jury  was also deliberately delayed and further extended beyond the statute of limitations based on incorrect and immaterial pretext to cause prejudice to Defendant Eldridge.  During the delay of the indictment, the government ran sting operations against Eldridge and her SEC counsel, enjoyed extensive civil discovery that would not have been available had the indictment proceeded in a timely fashion, and secured a summary judgment against Eldridge in one of the civil cases which was used to prejudice Eldridge in the Florida trial.  Delaying indictments to pursue a collateral civil matter is not a legitimate prosecutorial objective.  **US v. Thompson**, 104 F. Supp. 2d. 1303, 1309 (D. Kan. 2000);  **US v. Cormielle**, 171 F. 3d 748, 752 (CA 2 NY 1999) additionally addresses the delayed indictments issues as follows:

"An indictment brought within the time constraints of the statute may nevertheless violate due process where pre-indictment delay has been shown to cause "substantial prejudice" and "the delay was an intentional device to gain [a] tactical advantage over the accused." **Marion**, 404 U.S. at 324, 92 S.Ct. 455.  As the Supreme Court further has explained, where delay prejudices the presentation of a defense and is engage in for an improper purpose it violates the Due Process Clause because such conduct departs from fundamental notions of "fair play." **United States v. Lovasco**, 431 U.S. 783, 795, 97 S.Ct. 2044, 52L.Ed.2d 752 (1977).

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

G.  Deploying illegal sting operations with no valid prosecutorial basis; Courts reluctantly

support the distasteful undercover operations whereby law enforcement involves itself

in criminal activity to backstop assumed identities and thereby infiltrate and apprehend

the participants who are not law enforcement officers or operatives.  However, as

described above, Defendant Eldridge more than once reported criminal activity that

was sanctioned by law enforcement.  A new undercover tactic has arisen and it is of

questionable legality.  Instead of posing as criminals, law enforcement agents are

posing as licensed professionals in positions of trust. .  In five of the stings targeting

defendant Eldridge, licensed securities brokers were actually undercover FBI agents.

The licenses for both the brokers and the companies with which they were employed

were obtained from NASD, now FINRA whereby DOJ arranged to have FINRA

violate federal and state statutes and its own regulations by issuing fake licenses and

advertising them as fully legitimate, providing false work history and credentials to the

public at large.

An insidious aspect of these stings, other than encouraging FINRA to violate laws, is

that there is an assumption that when dealing with a licensed professional there are

regulatory and oversight mechanisms in place, and also a standard of knowledge of the

field in which the license has been obtained.  This engenders trust and reliance.  In the

stings against Eldridge the government created entire scenarios and staffed the roles

with FBI agents and cooperating witnesses.  The design is not to catch criminal

behavior, but to create it, or even to merely create the illusion of criminal behavior so

that a prosecution can be made.  This is no longer in the realm of law enforcement, but

**LAW OFFICES OF**
**MAURICE J. VERRILLO, P.C.**

**ONE EAST MAIN STREET**
**SUITE 711**
**ROCHESTER, NY 14614**

**TEL: (585) 232-2640**

has become nothing more than an illegal prosecution tool.  Deploying these sting operations during a delayed indictment amounts to double jeopardy and persecution. As in this matter, it can be used to create tactical advantages for the government and severely prejudice the target.

H.  Equally disturbing is the deployment of criminals, such as Bevre and Lochrie, as de facto government agents.  Bevre used the color of the law, even while under indictment, to gain the confidence of witnesses and co-defendants and coerced their actions in an effort to create the appearance that Eldridge was involved in criminal behavior.  .  Bevre elicited illegal actions with his assurances of government protection for the offenders.  Lochrie's past is riddled with unprosecuted and apparently government sanctioned questionable activity.  Again, this role playing on behalf of the government is not designed to discover criminal activity, but to encourage and create it, both in their cooperating criminals, witnesses and targets

I.  Using government operatives to steal from defendant and then use stolen documents as basis for investigations; in the FL Jencks material and in the FL trial one of the justifications for the 4 sting operations run with Lochrie against Eldridge was a stack of documents belonging to Eldridge that Lochrie provided to the government in early 2003.  Lochrie was a long running government operative, and one court has held that his activities involving the FBI make him an employee.  These documents were stolen from Eldridge.  Some of the documents relate to the facts at issue in the NY case.  It is unknown how many documents were stolen by Lochrie and how much evidence was thus illegally obtained by the prosecution.  The fact that any of it was used makes both indictments fruit of the poisonous tree.

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

J.  Bevre also stole documents from Eldridge and on at least one occasion one of these stolen documents ended up in the hands of law enforcement.    It is unknown how much information that Bevre provided to the government that was stolen, but his affidavits show that he provided significant volumes of documents.

## DOUBLE JEOPARDY

12. A claim of possible double jeopardy must be decided before the second trial.  See **Abney v. United States**, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

13. "The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amdt. 5.  We have explained that "the Clause serves the function of preventing both successive punishment and successive prosecution," **United States v. Dixon**, 509 U.S. ----, ----, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (citing **North Carolina v. Pearce**, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)), and that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it," **Ex parte Lange**, 18 Wall. 163, 173, 21 L.Ed. 872 (1874). See also **Schiro v. Farley**, 510 U.S. ----, ----, 114 S.Ct. 783, ----, 127 L.Ed.2d 47 (1994); **United States v. Halper**, 490 U.S. 435, 440, 451, n. 10, 109 S.Ct. 1892, 1897, 1903, n. 10, 104 L.Ed.2d 487 (1989). Significantly, the language of the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. See **Price v. Georgia**, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970)." **Witte v. U.S.**, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

14. The defendant Eldridge makes the following contentions.  In July 2008, a trial was held in

**LAW OFFICES OF**
**MAURICE J. VERRILLO, P.C.**

**ONE EAST MAIN STREET**
**SUITE 711**
**ROCHESTER, NY 14614**

**TEL: (585) 232-2640**

the Southern District of Florida where there was a conviction after trial.  Defendant

Eldridge has been put on trial in the Southern District of Florida for the charges of mail

fraud and conspiracy to commit mail fraud. US v. Eldridge, 07cr80123, S.D. FL.  As of

the date of this motion, sentencing has not yet occurred.  The crimes of conspiracy to

commit mail fraud and mail fraud are also charged in the current Western District of New

York case.  The facts alleged in this New York case are the same facts which are the nexus

of two civil cases, **SEC v. Montana et al,** 03cv0735 S.D. IN., and **SEC v. Eldridge**

05cv0715 N.D. Ga..  The defendant further contends that the  facts alleged in the 2 civil

and 1 NY criminal cases were presented before the Grand Jury in the Florida case and an

indictment was obtained based on these allegations. ATTACHMENT "E" The facts were

described to the Grand Jury as relating to the SEC civil cases, but the NY case and the

SEC cases are based upon the exact same facts.  Though the facts of the NY case were

used to obtain the indictment, the actual charges in the FL indictment were for activities of

Eldridge related to a government sting operation that was one of five known sting

operations instituted against Eldridge based upon the two civil cases and the current NY

case alleged facts.


Eldridge is being twice prosecuted and punished for the same offense.  The sting

operations were concocted as a means to criminally punish Eldridge based on NY facts.

The basis of the stings are admitted as being based on the NY facts.  ATTACHMENT "F"

In essence, the sting operations were efforts by the government to find a way to criminally

punish Eldridge.  The rationale for running sting operation after failed sting operation in

hopes of snagging Eldridge is not clear, and cannot be known without additional discovery

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

being granted.  The sting operation that resulted in the FL indictment was not a matter of

infiltrating Eldridge's activities, but involved scenarios created by the government,

patterned after the facts in the NY case, and peopled solely with government agents and

cooperating witnesses.  The prosecution resorted to using the NY facts before the FL

grand jury in order to obtain the indictment.  Additionally, despite the ruling to keep the

facts of the SEC and NY cases out of the FL trial, the government proceeded to make the

ongoing cases a vital element of their prosecution.  Significantly, both the FL and the NY

prosecutors work in the same office in Washington DC, which is also the office that

coordinated all sting operations.  The use of sting operations as prosecution tools, as well

as using the same facts to indict in two cases, is criminal prosecution and punishment for

the same offense. The government conduct involves criminal punishment. **Hudson v.US**,

522 U.S. 93, 101, 1189 S.Ct. 488. 494, 139 L.Ed.2d 480 (1997).


A dismissal of the charges in the current indictment is warranted as it violates the Double

Jeopardy clause of the constitution.


Attachment E: Page 14 & 15 of Grand Jury Testimony of Waldo Longa, August 9, 2007;

Attachment F: United States' Notice of Intent to Offer Certain Evidence   P. 7,8.  " The

discussions in 2003 about misappropriating investor money are consistent with the

allegations in the SEC complaint, and all of this is part and parcel of the conduct charged

in the Indictment." P. 1 "The evidence is admissible, first as intrinsic to the charged

crime."  P. 1 footnote one, argues that the "evidence surrounding defendant Eldridge's

Indictment in the Northern District of New York" is inextricably intertwined with the facts

LAW OFFICES OF
MAURICE J. VERRILLO, P.C.

ONE EAST MAIN STREET
SUITE 711
ROCHESTER, NY 14614

TEL: (585) 232-2640

of the Florida case.

## MOTION FOR ADDITIONAL DISCOVERY

To support the Motion for Dismiss due to Double Jeopardy, Defendant requires that the government reveal the justifications and authorizations for all sting operations and investigations against Eldridge, (including the sting the government claims to be targeting Ozmer, and the "investigations" conducted by Bevre, Lochrie, Sowden and/or unknown others) the grand jury transcripts for both the FL and NY grand juries, all internal communications relating to the joint prosecutions, joint SEC operations, and the sting operations. All recordings, reports, written documentation obtained from all sting operations. This information cannot be obtained through any other third party.  This information may be necessary to further substantiate the dismissal.

**WHEREFORE**, the defendant Gail Eldridge respectfully requests that her motion be granted in its entirety.

Affirmed under the penalties of perjury.

Dated: September 11, 2008

**LAW OFFICES OF**
**MAURICE J. VERRILLO, P.C.**

/s/ Maurice Verrillo
MAURICE J. VERRILLO

LAW OFFICE OF MAURICE J. VERRILLO, P.C.
**ONE EAST MAIN STREET**
Attorney for the Defendant Gail Eldridge
**SUITE 711**
One East Main Street, Suite 711
**ROCHESTER, NY 14614**
Rochester, New York 14614
(585) 232-2640

**TEL: (585) 232-2640**

-15-