Ex B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES SECURITIES )
AND EXCHANGE COMMISSION, )
                          )
          Plaintiff,      )
                          )  Case No. 1:03-cv-1513SEC-VSS
       -vs-               )  Indianapolis, Indiana
                          )  April 27, 2007
JOHN L. MONTANA, MELVIN R.)
LYTTLE, PAUL E. KNIGHT, et al. )
                          )
          Defendants.     )

Before the

The Honorable Sarah Evans Barker

TRANSCRIPT OF HEARING


APPEARANCES:

For the Plaintiff:        United States Securities and
                          Exchange Commission
                          By:  John E. Birkenheier and
                          Jason Yonan
                          175 W. Jackson Blvd., Ste. 900
                          Chicago, IL  60604

For Defendant Lyttle:     Parad Law Offices, P.C.
                          By:  Boris Parad
                          910 Skokie Blvd., Ste. 109
                          Suite 109
                          Northbrook, IL  60062

                          Paul E. Knight
                          pro se

Court Reporter:           Frederick C. Pratt, CSR
                          290 U.S. Courthouse
                          Indianapolis, IN  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
COMPUTER-AIDED TRANSCRIPT

1    MR. KNIGHT: Yes, ma'am.

2    THE COURT: But no evidence for this hearing?

3    MR. KNIGHT: No, ma'am.

4    MR. BIRKENHEIER: Your Honor, the SEC does not object

5    to the exhibits, to Mr. Knight's brief coming into evidence.

6    THE COURT: All right. I'll show that.

7    MR. KNIGHT: Your Honor --

8    MR. PARAD: Mr. Lyttle also has no objection.

9    THE COURT: All right. Thank you.

10   Have the parties presented to the Court all the evidence

11   they intend to present? Has the government?

12   MR. BIRKENHEIER: Yes, Your Honor.

13   THE COURT: And have you, Mr. Parad, on behalf of

14   Lyttle?

15   MR. PARAD: Yes, Your Honor.

16   THE COURT: Mr. Knight, I received yours as well in

17   the written format and the letter from your doctor?

18   MR. KNIGHT: Yes, ma'am.

19   THE COURT: I'll hear your arguments.

20   MR. BIRKENHEIER: Thank you, Your Honor.

21   THE COURT: Mr. Birkenheier.

22   MR. BIRKENHEIER: Your Honor, the commission, through

23   its exhibits and testimony of Mr. Harris, has presented an

24   accounting of the flow of this 30 or $31,000,000 that came in

25   from investors.

1     MR. PARAD:  Excuse me, can you speak up?
2     MR. BIRKENHEIER:  Certainly.  I'm sorry about that.
3  And that accounting shows in its most pertinent points that
4  Mr. -- $7,000,000, approximately, was used for the benefit of
5  Mr. Lyttle and his shell company; moneys that he used to buy
6  industrial property, or to buy residential property, to improve
7  residential property; money that he sent to his accountant in
8  Budapest, Hungary; money that he sent to this wife and
9  daughter, among other uses.
10     THE COURT:  Is that who was in Hungary, the
11  accountant?
12     MR. BIRKENHEIER:  There was an accountant at ABM --
13  don't think it was a person -- must have been some person
14  there, but all we know is the records show the money goes to
15  Hungary and then back out of Hungary to, I believe the daughter
16  in Ohio -- or in Indiana, rather, and to Industrial Hardwoods.
17     Let me qualify.  There were -- it's Mr. -- FNE, First
18  National Equity's account in Hungary, that transfer in our view
19  is enough by itself for him to be held accountable for that
20  money.  But we did trace some of it farther back into the
21  United States.
22     THE COURT:  Okay.  I think your counsel wants to talk
23  to you.
24     MR. BIRKENHEIER:  Thank you.
25  The ABM transfers back into the U.S. are reflected in

*When do they get this evidence* →

1  Exhibit 3. It would take me a while to find those exhibits. I
2  can do that for you. I'm sensitive about using too much of
3  your time right now.
4          THE COURT: Go ahead.
5          MR. BIRKENHEIER: Likewise, with regard to Mr. Knight,
6  the bank records show that several hundred thousand dollars
7  were transferred from the accounts in which they investor funds
8  were held into his bank account at Tennessee State Bank. The
9  bank records, supplemented by other evidence in this case,
10 shows that 2.5 million dollars was transferred to one lawyer --
11 from DJL to a lawyer named Bach, and from Bach to a lawyer
12 named Fine.
13         In our Exhibit 3, tab 54, there is a document on the
14 letterhead of P K Trust and Holding, Inc., bearing the
15 signature of Paul E. Knight, addressed to Dear Mr. Fine, which
16 reads, "The undersigned hereby verifies and affirms that all
17 the funds in the amount of $2,500,000 deposited in attorney
18 trust account Michael Bach under my signatory control,
19 deposited in --" and there's an account number and an address
20 "-- have been derived by the depositor from noncriminal
21 activities. The undersigned also affirms that any and all
22 local, state and federal taxes due on these funds have been
23 paid in full."
24         This letter clearly shows Mr. Knight's claiming at least
25 enough knowledge to verify the origin and the source of the