UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

$Ex\ F$

Case No. 07-80123-Cr-Marra/Hopkins

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

VIOLETTE GAIL ELDRIDGE
KATHERINE CRASE
 and
PAUL D. KUHN
        Defendants.
_____/

## UNITED STATES' NOTICE OF INTENT TO OFFER CERTAIN EVIDENCE

The United States files this notice of intent to offer certain evidence at trial.[1] The evidence is admissible first as intrinsic to the charged crime, that is, evidence necessary to explain: (1) the origin and progress of the relationship between defendants Eldridge and Crase and the undercover FBI agent that led to the instant charges; and (2) why Crase and Eldridge concealed Eldridge's role in the investment opportunity presented to the undercover FBI agents, and why defendant Kuhn was brought in to make the fraudulent "pitch" to the undercover agent/investor. Second, any evidence that constitutes extrinsic acts falls squarely within Rule 404(b). Finally, under either analysis the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.

---

[1] In its first response to the standing discovery order, filed on September 7, 2007, the United States notified the defense of the existence of potential Rule 404(b) evidence including "evidence surrounding defendant Eldridge's Indictment in the Northern District of New York, as well as the Securities and Exchange Commission civil suit against defendant Eldridge in the Northern District of Georgia." The United States also notified the defense that "all evidence made available to them for inspection . . . may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine)."

A.  **Factual Background**

The charges in this case arose from an FBI undercover operation aimed at investigating securities fraud activities. An undercover FBI agent named John Osa first met Eldridge and Crase in the Spring of 2003 and portrayed himself to them as "John Firo," a corrupt manager of an investment fund located in Boca Raton, Florida. From May 2003 through approximately November 2003, Agent Osa met and spoke by telephone several times with Eldridge and Crase. The meetings and conversations were recorded.[2] In those discussions, Eldridge and Crase represented that they had access to large sums of money from investors that they wished to deposit into Osa's hedge fund. Among other things, Eldridge and Crase wanted Osa to create false cover documentation which would allow Eldridge and Crase to take some of the investors' money and use it for their own purposes without the investors' knowledge. These discussions ultimately did not result in any financial transactions between Eldridge, Crase and Agent Osa.

In approximately February 2004, Agent Osa told Eldridge and Crase that he had been retained as an investment advisor by a wealthy client (another undercover FBI agent) who was seeking to invest a large sum of money without using a bank and in a manner that would enable him to avoid reporting income from the investment. Agent Osa inquired whether Eldridge and Crase had any opportunities available for the investor. Agent Osa offered to steer the client to Eldridge and Crase in return for a kickback that would be concealed from the client. Eldridge and Crase then proposed that Osa direct his client to invest in a company they had formed called Precision Explorations, which they represented was seeking to raise $30 million through the sale of 60 unsecured debentures at $500,000 each.

---

[2] Recordings of these meetings and conversations have been provided in discovery.

As the Indictment alleges, through a series of telephone calls and meetings, Eldridge, Crase and Kuhn represented to Agent Osa and his client (undercover FBI agent Vince Pancoke acting as "Grant Colvin") that Precision Explorations was in the business of investing in real estate, government securities, hedge funds, banking projects, and other investments. Their aim was to convince "Grant Colvin" to invest at least $500,000 in Precision Explorations through the following materially false and fraudulent representations and promises, among others: (1) Precision Explorations' unsecured debentures were a good investment; (2) Crase and Kuhn had worked together in past successful business investments; (3) Colvin would not be the first investor in Precision Explorations' Limited Offering and money had already been raised from other investors; (4) the Limited Offering was filling up fast so Colvin needed to act quickly; (5) defendants Crase and Kuhn were closely connected to a Florida State Representative and other politicians and, as a result, had access to lucrative investment opportunities before the general public did; and (6) "John Firo" had no direct financial interest in Colvin's decision to invest with Precision Explorations.

Defendants Crase and Kuhn arranged a pitch meeting in the office of a Florida State Representative.[3] Defendant Eldridge did not attend the pitch meeting because she was embroiled in a lawsuit with the Securities and Exchange Commission, and, as defendant Crase said, if one were to "Google" Eldridge's name, the SEC lawsuit would come up.[4] Agent Osa did "Google"

---

[3] The Representative in whose office the meeting was held did not give the defendants permission to use her office, had no knowledge that the defendants were going to use her office, and, contrary to the defendants' representations, had not and would not offer lucrative investment opportunities to them.

[4] Defendant Crase, an attorney, was and still is counsel of record for defendant Eldridge in the SEC action.

3

Eldridge and found a press release posted on the SEC website that described the lawsuit.[5] From that point on (before the pitch meeting), it was agreed that Eldridge would stay in the background to avoid spooking the investor. Although she was represented to be on the advisory board of Precision Explorations, Eldridge's name would not appear on any of the Limited Offering documentation and Grant Colvin would not be told of her position with the company.

The SEC complaint alleged that Eldridge improperly diverted millions of dollars in investor money for her personal use. On March 20, 2007, U.S. District Judge Clarence Cooper, in the Northern District of Georgia, granted summary judgement in favor of the SEC, finding, among other things, that "the undisputed evidence in this case shows that approximately $3.02 million in funds were used either directly out of the various UTA-BVI brokerage accounts to pay for Eldridge's expenditures or were transferred to bank accounts in the name of the Relief Defendants. . . . These funds were not used for the benefit of FNE and P.K.T. and were not otherwise used in the best interest of the trust that FNE and P.K.T. entered into with UTA-BVI. Instead, the funds were misappropriated by UTA-BVI for its benefit or for the benefit of Eldridge and the Relief Defendants." Order at 26.[6] The misappropriated money included "[a]pproximately $55,000 . . . transferred to Katherine Crase." Order at 17.

The United States proposes to offer in evidence (1) the 2003 discussions in which Eldridge and Crase wanted Agent Osa to create false cover documentation which would allow Eldridge and Crase to take some of the investors' money and use it for their own purposes

---

[5] A copy of the SEC press release is attached as Exhibit 1.

[6] Judge Cooper's Order is 40 pages long. Rather than attach the Order to this pleading, the United States respectfully cites the court to United States Securities and Exchange Commission v. Violate Gail Eldridge and UTA-BVI, Ltd., Civil Action No. 1:05-CV-0735-CC in the Northern District of Georgia, at Dkt. 86.

4

without the investors' knowledge, (2) the factual allegations in the SEC civil action alleging that Eldridge misappropriated investor money for her personal use, including the fact that thousands of dollars were transferred to Crase, and (3) Judge Cooper's finding that investor funds were fraudulently misappropriated for Eldridge's personal use.

**B.      The Proffered Evidence Is Inextricably Intertwined with the Conduct Charged in the Indictment.**

Evidence of criminal activity other than the charged offense is admissible if it pertains to the chain of events explaining the context and set-up of the crime, forms an integral and natural part of the crime, or is necessary to complete the story of the crime for the jury. See, e.g., United States v. Prosperi, 201 F.3d 1335, 1345 (11th Cir. 2000) (upholding the admission of evidence about defendant's other counterfeit investments as inextricably intertwined with counterfeiting counts of the indictment); United States v. Calderon, 127 F.3d 1314, 1331 (11th Cir. 1997) (kidnaping evidence inextricably intertwined with drug trafficking charge when "only realistic way for government to explain" context of drug trafficking); United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992) (evidence of an uncharged murder an integral part of the charge of illegal possession of a firearm "and was reasonably necessary to complete the story of the crime"); United States v. Herre, 930 F.2d 836, 837 (11th Cir. 1991) (evidence of prior marijuana trafficking inextricably intertwined with the evidence of charged offense of criminal contempt).

Evidence of Eldridge's and Crase's initial plans to use Osa's hedge fund to misappropriate investor money establishes the beginnings of the relationship between those defendants and undercover agent Osa, and explains to the jury that the FBI did not simply pick the defendants out of a telephone book and target them for a sting operation. Evidence of the SEC enforcement action against Eldridge provides critical context for, and explains: (1) the

5

recorded discussions between Eldridge, Crase and Agent Osa about concealing Eldridge's role in Precision Explorations from Grant Colvin; (2) why Eldridge did not attend the fraudulent pitch meeting in the State Representative's office; and (3) why Crase brought defendant Kuhn into the group as a pitch man. All of this evidence is, first and foremost, inextricably intertwined with the fraudulent conduct charged in the Indictment. The proffered evidence establishes the chain of events explaining the context and set-up of the crime, forms an integral and natural part of the crime, is necessary to complete the story of the crime for the jury.

**C.     The Proffered Evidence Is Admissible under Federal Rule of Evidence 404(b).**

Federal Rule of Evidence 404(b) states, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

The rule is one of inclusion which allows the use of such evidence unless it tends to prove only criminal propensity. United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989); see also United States v. Perez-Tosta, 36 F.3d 1552, 1561 (11th Cir. 1994) (Rule 404(b) evidence should not lightly be excluded when it is central to the prosecution's case.).

The standard for admission of evidence under Rule 404(b) in the Eleventh Circuit was first announced in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978). Under Beechum and subsequent decisions, to be admissible, the evidence in question (1) must be relevant to an issue other than the defendant's character; (2) must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice. United States v. Giordano, 261 F.3d 1134, 1140 (11th Cir. 2001). The third factor brings into play the balancing test of Rule

403. "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Betancourt, 734 F.2d 750, 757 (11th Cir. 1984). "'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "'unfair.'" Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir. 1977). All three Beechum factors are easily met in this case.

First, all of this evidence is relevant to an issue other than the defendant's character. As described above, the proffered evidence, being inextricably intertwined, establishes the chain of events explaining the context and set-up of the crime, forms an integral and natural part of the crime, is necessary to complete the story of the crime for the jury. Under Rule 404(b), the evidence is relevant to demonstrate a modus operandi, a plan, and fraudulent motive and intent, that is, to induce Colvin to invest in a bogus company through material misrepresentations and omissions in order to misappropriate some or all of his money.

Second, the proffered evidence is established by sufficient proof to permit a jury finding that the defendant committed the extrinsic acts. The discussions of Eldridge's and Crase's initial plans to use Osa's hedge fund to misappropriate investor money were recorded and Agent Osa can summarize and explain those discussions. The SEC complaint allegations were sufficiently established for Judge Cooper to grant summary judgment: "the *undisputed* evidence in this case shows that approximately $3.02 million in funds were . . . misappropriated by UTA-BVI for its benefit or for the benefit of Eldridge . . . ." Order at 26 (emphasis added).

Finally, the probative value of the proffered evidence is extremely high and there is no *unfair* prejudicial effect. The discussions in 2003 about misappropriating investor money are

7

consistent with the allegations in the SEC complaint, and all of this is part and parcel of the conduct charged in the Indictment.

Although the defendants have not yet clearly articulated a defense, entrapment is often used as a defense to FBI sting operations. The entrapment defense has "'two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct.'" United States v. Costales, 5 F.3d 480, 487 (11th Cir. 1993) (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)). Predisposition is the principal element of the defense. United States v. Costales, 5 F.3d at 487. Eldridge's and Crase's initial plans to use Agent Osa's hedge fund to rip off investors, and the fraudulent conduct alleged and proven in the SEC case, dispel any notion that they were not predisposed to commit this crime.

C.  **Conclusion**

The recorded conversations are graphic. The defendants will not be able to duck their words. Therefore, the defendants' intent will be a central issue in this case. By simply entering pleas of not guilty, the defendants automatically make their intent a material issue at trial. See United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995). Absent affirmative steps by Eldridge and Crase to remove intent as a trial issue, the government may meet its burden of proof with Rule 404(b) evidence. See id. at 1365.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By:  *s/Edward C. Nucci*
Edward C. Nucci
Assistant U.S. Attorney
Florida Bar No: 0794406
500 South Australian Avenue, Suite 400
West Palm Beach, Florida  33401
Tel:  (561) 209-1068
Fax:  (561) 659-4526
edward.nucci@usdoj.gov

*s/Joseph A. Capone*
Joseph Capone, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W., Rm. 3422
Washington, D.C.  20530
Tel: (202) 353-3462
Fax: (202) 514-0152
joe.capone@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using CM/ECF.

>   *s/ Edward C. Nucci*
>   Edward C. Nucci
>   Assistant United States Attorney

## SERVICE LIST

<u>United States v. Eldridge, et.al</u>, Case No. 07-80123-Cr-Marra/Hopkins

<u>Counsel for the United States</u>:
Edward C. Nucci, Assistant U.S. Attorney
U.S. Attorneys Office
500 S. Australian Ave., Ste. 400
West Palm Beach, FL 33401
Tel: (561) 820-8711
Fax: (561) 659-4526
edward.nucci@usdoj.gov

Joseph A. Capone, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W., Rm 3422
Washington, D.C. 20530
Tel: (202) 353-3462  Fax: (202) 514-0152
joe.capone@usdoj.gov

<u>Counsel for Violette Gail Eldridge</u>:
Neison Max Marks, Esq.
Assistant Federal Public Defender
One East Broward Boulevard, Suite 1100
Fort Lauderdale, FL 33301
Tel: (954) 356-7436
Fax: (954) 356-7556
Neison_Marks@fd.org

<u>Counsel for Paul D. Kuhn</u>:
Michael Metz, Esq.
1217 South Flagler Drive, 2nd Floor
West Palm Beach, FL 33401
Tel: (561) 655-2040
Fax: (561) 655-2182
metzlawl@aol.com, debi@lubinlaw.com

<u>Counsel for Katherine Crase</u>:
Steven R. Romines, Esq.
600 W. Main Street, Suite 100
Louisville, KY 40202
Tel: (502) 587-8822
Fax: (502) 568-3600
sromines@rominesweisyoung.com

11